UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE STEINMETZ,

               Plaintiff,

   -against-

SHUTTERSTOCK, INC.,

               Defendant.

Case No. 1:21-cv-7100 (AKH)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT SHUTTERSTOCK, INC.'S MOTION FOR SUMMARY JUDGMENT

MITCHELL SILBERBERG & KNUPP LLP
Eleanor M. Lackman (eml@msk.com)
Elaine Nguyen (eln@msk.com)
Samantha W. Frankel (swf@msk.com)
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendant Shutterstock, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................... 1

SUMMARY OF RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................. 2

      A.      Shutterstock's Website, Contributor Platform, and Copyright Policies ........................ 2

      B.      Plaintiff's Takedown Notice ................................................................................. 3

      C.      Plaintiff's Complaint ........................................................................................... 4

ARGUMENT .......................................................................................................... 4

I.      LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT ......................... 4

II.     THE COURT SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK
      ON PLAINTIFF'S DIRECT COPYRIGHT INFRINGEMENT CLAIM ...................... 5

      A.      The DMCA Shields Shutterstock From Liability for Copyright Infringement ................ 5

            1.      Shutterstock Meets the Threshold Requirements for DMCA Safe Harbor. ......... 6

            2.      Shutterstock Meets the Specific Conditions For § 512(c) Safe Harbor. .............. 8

      B.      Shutterstock Cannot Be Held Directly Liable For Copyright Infringement Because
            It Did Not Engage In Any Volitional Conduct. ......................................................... 14

      C.      Shutterstock Cannot Be Held Liable For Copyright Infringement Because Its Display Of
            The Image Is Protected Under The Fair Use Doctrine................................................. 15

            1.      Shutterstock's Alleged Use of The Image Is Highly Transformative............... 16

            2.      The Nature of Plaintiff's Image Favors Fair Use. ........................................... 17

            3.      The Amount and Substantiality Used Favors Fair Use. ................................... 18

            4.      The Effect of the Use on The Potential Market Favors Fair Use ...................... 19

III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK ON
      PLAINTIFF'S SECONDARY COPYRIGHT INFRINGEMENT CLAIM.................... 20

      A.      Shutterstock Cannot Be Secondarily Liable Absent Direct Infringement By A
            Third Party. ..................................................................................................... 20

      B.      The Evidence Does Not Support Plaintiff's Contributory Infringement Claim.............. 21

      C.      The Evidence Does Not Support Plaintiff's Vicarious Infringement Claim. ................ 22

**TABLE OF CONTENTS**
(continued)

**Page**

IV.     THE SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK ON
        PLAINTIFF'S COPYRIGHT MANAGEMENT INFORMATION CLAIM ................. 22

        A.     Plaintiff Cannot Establish A Violation of § 1202(a). .................................... 23

        B.     Plaintiff Cannot Establish A Violation of § 1202(b). .................................... 24

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................................5

*Arica Inst., Inc. v. Palmer*,
970 F.2d 1067 (2d Cir. 1992).....................................................................................18

*Arista Records LLC v. Lime Grp. LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011)........................................................................22

*Authors Guild, Inc. v. HathiTrust*,
755 F.3d 87 (2d Cir. 2014).............................................................................16, 18, 19

*Authors Guild, Inc. v. HathiTrust*,
902 F. Supp. 2d 445 (S.D.N.Y. 2012), *aff'd in part, vacated in part*, 755 F.3d
87 (2d Cir. 2014)..........................................................................................................16

*Bell v. Wilmott Storage Servs., LLC*,
12 F.4th 1065 (9th Cir. 2021) .....................................................................................14

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006).......................................................................16, 17, 18, 19

*Blanch v. Koons*,
467 F.3d 244 (2d Cir. 2006)...................................................................................16, 19

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342 (S.D.N.Y. 2014)..........................................................................21

*Campbell v. Acuff–Rose Music, Inc.*,
510 U.S. 569 (1994).....................................................................................................16

*Capitol Records, Inc. v. MP3tunes, LLC*,
821 F. Supp. 2d 627 (S.D.N.Y. 2011).....................................................................7, 10

*Capitol Records, LLC v. Vimeo, LLC*,
826 F.3d 78 (2d Cir. 2016)..........................................................................6, 9, 10, 11

*Cariou v. Prince*,
714 F.3d 694 (2d Cir. 2013)........................................................................................17

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008)...................................................................................14, 15

*CoStar Grp., Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) ......................................................................................15

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Craig v. UMG Recordings, Inc.*,
    380 F. Supp. 3d 324 (S.D.N.Y. 2019)........................................................................25

*Disney Enters., Inc. v. Hotfile Corp.*,
    798 F. Supp. 2d 1303 (S.D. Fla. 2011) ...............................................................15

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991).......................................................................................5

*Gattoni v. Tibi, LLC*,
    254 F. Supp. 3d 659 (S.D.N.Y. 2017)......................................................................25

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir. 1971)...............................................................................22

*Grecco v. Age Fotostock Am., Inc.*,
    No. 21 Civ. 423 (JSR), 2021 WL 4555599 (S.D.N.Y. Oct. 5, 2021) .....................................25

*Hartmann v. Amazon.com, Inc.*,
    No. 20 Civ. 4928 (PAE), 2021 WL 3683510 (S.D.N.Y. Aug. 19, 2021) ...............................20

*Hendrickson v. Amazon.Com, Inc.*,
    298 F.Supp.2d 914 (C.D. Cal. 2003) ..........................................................7, 10, 13

*Hosseinzadeh v. Klein*,
    276 F. Supp. 3d 34 (S.D.N.Y. 2017).......................................................................15

*In re Aimster Copyright Litig.*,
    252 F. Supp. 2d 634 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003) ..............................7

*Infinity Broad. Corp. v. Kirkwood*,
    150 F.3d 104 (2d Cir. 1998)...............................................................................18

*Keeling v. Hars*,
    809 F.3d 43 (2d Cir. 2015)................................................................................16

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) .......................................................................17, 18, 19

*Krechmer v. Tantaros*,
    747 F. App'x 6 (2d Cir. 2018) ........................................................................23, 25

*Leibovitz v. Paramount Pictures Corp.*,
    137 F.3d 109 (2d Cir. 1998)...............................................................................16

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Leonard v. Stemtech Health Scis., Inc.*,
  No. 08 Civ. 67 (LPS) (CJB), 2013 WL 5288266 (D. Del. Sept. 19, 2013) ............................20

*Livnat v. Lavi*,
  No. 96 Civ. 4967 (RWS), 1998 WL 43221 (S.D.N.Y. Feb. 2, 1998).....................................21

*Magnum Photos Int'l, Inc. v. Houk Gallery, Inc.*,
  No. 16 Civ. 7030 (VSB), 2018 WL 4538902 (S.D.N.Y. Sept. 21, 2018) ..............................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)........................................................................................................5

*Matthew Bender & Co. v. West Publ'g Co.*,
  158 F.3d 693 (2d Cir. 1998)........................................................................................20, 21

*NXIVM Corp. v. Ross Inst.*,
  364 F.3d 471 (2d Cir. 2004)...................................................................................16, 17, 19

*Obodai v. Demand Media, Inc.*,
  No. 11 Civ. 2503 (PKC), 2012 WL 2189740 (S.D.N.Y. June 13, 2012), *aff'd*
  *sub nom. Obodai v. Cracked Ent. Inc.*, 522 F. App'x 41 (2d Cir. 2013)..................................7

*On Davis v. Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001)..........................................................................................17

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) .......................................................................................12

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) .........................................................................................14

*Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
  975 F. Supp. 2d 920 (N.D. Ill. 2013) ...............................................................................23

*Pickholtz v. Rainbow Techs., Inc.*,
  260 F. Supp. 2d 980 (N.D. Cal. 2003) ..............................................................................21

*Rosen v. eBay, Inc.*,
  No. 13 Civ. 6801 (MWF) (EX), 2015 WL 1600081 (C.D. Cal. Jan. 16, 2015) ....................17

*Sid Avery & Assocs., Inc. v. Pixels.com, LLC*,
  479 F. Supp. 3d 859 (C.D. Cal. Aug. 18, 2020) .................................................................24

*Sony Corp. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984)......................................................................................................21

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014)..............................................................................16, 18

*Tomelleri v. Zazzle, Inc.*,
  No. 13 Civ. 02576 (EFC) (TJJ), 2015 WL 8375083 (D. Kan. Dec. 9, 2015)...................23, 24

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
  718 F.3d 1006 (9th Cir. 2013) .....................................................................................11

*Ventura Content, Ltd. v. Motherless, Inc.*,
  No. 11 Civ. 912 (SVW) (FMO), 2013 WL 11237204 (C.D. Cal. July 3, 2013),
  *aff'd*, 885 F.3d 597 (9th Cir. 2018)........................................................................10, 11

*Viacom Int'l Inc. v. YouTube, Inc.*,
  718 F. Supp. 2d 514 (S.D.N.Y. 2010), *aff'd in relevant part*, 676 F.3d 19 (2d
  Cir. 2012) ........................................................................................................... *passim*

*Wolk v. Kodak Imaging Network, Inc.*,
  840 F. Supp. 2d 724 (S.D.N.Y. 2010), *aff'd sub nom. Wolk v.*
  *Photobucket.com, Inc*., 569 F. App'x 51 (2d Cir. 2014).................................... *passim*

*Wright v. Warner Books, Inc.*,
  953 F.2d 731 (2d Cir. 1991)............................................................................................16

*Yang v. Mic Network, Inc.*,
  405 F. Supp. 3d 537 (S.D.N.Y. 2019)............................................................................18

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
  349 F. Supp. 3d 369 (S.D.N.Y. 2018), *aff'd*, 845 F. App'x 54 (2d Cir. 2021).......................24

### RULES & STATUTES

17 U.S.C. § 107.............................................................................................16, 18, 19

17 U.S.C. § 512(i)..................................................................................................6, 8

17 U.S.C. § 512(c) ......................................................................................... *passim*

17 U.S.C. § 512(m).................................................................................................10

17 U.S.C. § 1202 ........................................................................................... *passim*

Fed. R. Civ. P. 56(a) ...............................................................................................4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

### OTHER AUTHORITIES

H.R. Rep. No. 105-551, pt. 2 (1998) ...........................................................................6, 20

S. Rep. No. 105-190 (1998) ................................................................................................5

Standard Technical Measures & Section 512: Notice of Inquiry, U.S. Copyright
Office, 60 Fed. Reg. 25050 (Apr. 27, 2022) ...............................................................8

## PRELIMINARY STATEMENT

Every day, millions of transactions take place between buyers and sellers through internet platforms.  eBay, Amazon, Etsy, Facebook Marketplace, and even Getty Images and Adobe Stock, all are able to operate because of the protection provided by the Digital Millennium Copyright Act (DMCA), which provides those platforms with protection in the event that a user lists an item that a third party claims is infringing.  Without the DMCA, marketplaces would shut down for fear of endless litigation brought about by the dishonesty, or simple confusion, of the occasional bad actor.  As a result of the DMCA, these marketplaces have flourished and become a vital part of the American economy.

Defendant Shutterstock, Inc. ("Shutterstock"), too, operates in part as a marketplace.  Just like with its competitors' sites, contributors upload their images via Shutterstock.com, and after a quick review for issues like pornography, hate speech, and other violations that would damage the marketplace (also similar to other platforms' review), the images become available to buyers.  A single fee is charged for any image that the customer chooses to use.  Like other platforms, Shutterstock takes a cut of the sale and pays the contributor the rest.  As a result of the DMCA's protections, Shutterstock has paid over $1 billion to visual artists who likely would not ordinarily have the opportunity to monetize their creative works but for Shutterstock's wide reach and broad customer base.  And, like Apple's iTunes did with music, Shutterstock and its competitors have developed a channel to obtain high-quality, digital images for use legally, which cuts down on the practice of the public resorting to low-quality material of questionable provenance floating online.

Plaintiff George Steinmetz ("Plaintiff") admits he does not know how Shutterstock's platform works and that he never even looked at Shutterstock's website.  Rather, he is angry that someone uploaded a heavily cropped version of one of his images to the platform.  As a trusted

provider of over 415 million images, Shutterstock does not tolerate abuse of its site; indeed, it generally terminates those who violate Shutterstock's terms of service much faster than the "six strikes" proposed by the motion picture industry around the time Shutterstock's platform launched.

Here, there is no dispute that Shutterstock disabled the image after receiving notice.  The image was not even licensed by any customer.  Plaintiff also claims Shutterstock deleted Plaintiff's copyright management information, but as Plaintiff has known since mid-July (when Shutterstock produced a report of the metadata embedded in the contributor's image file), there was none.

What Plaintiff complains about is exactly what Congress anticipated in enacting the DMCA a quarter-century ago.  It therefore is little wonder that Shutterstock's contributor platform has operated for nearly twenty years without a single lawsuit being filed against it—at least not until a small cohort of frequent-filing attorneys a few months ago envisioned an opportunity that does not exist.  Had they looked at the law, they would know that it unequivocally anticipates and bars their claims.  Shutterstock's acts fall squarely within the protections of copyright law, and Plaintiff's misguided lawsuit should be dismissed as a matter of law accordingly.

### SUMMARY OF RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

A.    Shutterstock's Website, Contributor Platform, and Copyright Policies

Shutterstock operates a leading global online marketplace for photographic images and other content (such as video footage and music) at the website www.shutterstock.com.  SUF ¶ 1. There are currently more than 415 million images available for license on Shutterstock's website and 200,000 images are added every day.  *Id.*, ¶ 2.  One way that Shutterstock obtains images for license is through its community of over two million third-party "contributors."  *Id.*, ¶ 3.  Anyone

---

[1] Shutterstock's accompanying Local Rule 56.1 Statement of Undisputed Material Facts ("SUF") contains a full recitation of the relevant factual background.

can sign up to be a contributor and upload content directly into the Shutterstock online marketplace to be offered for license to Shutterstock's broad customer base. *Id.*, ¶¶ 4-6.

Before uploading any content, a contributor must agree to Shutterstock's "Contributor Terms of Service" (*id.*, ¶ 13), which requires, *inter alia*, that contributors to affirm that "the Content [that it submits to Shutterstock] does not infringe the copyright or any other rights of any third party" (*id.*, ¶ 14). It further informs contributors that "Shutterstock may suspend access to [the contributor's] Content and terminate [the contributor's] account" in the event that Shutterstock "receives a [copyright infringement] complaint about [the contributor's] Content." *Id.*, ¶ 17.

    B.    <u>Plaintiff's Takedown Notice</u>

On or about April 1, 2021, Plaintiff sent a notice to Shutterstock indicating that his allegedly copyrighted image ("Image") had been posted on Shutterstock's website without his authorization. SUF ¶¶ 30, 33, 45. He identified one URL and requested that it be removed. *Id.* ¶ 45; *see also id.*, ¶¶ 30-33. The allegedly infringing image is a heavily cropped copy of Plaintiff's Image ("Contributor Image"), which was uploaded to Shutterstock's website by a third-party contributor in India named "Arun Lodhi" ("Contributor"). *Id.*, ¶¶ 36, 46-47. Plaintiff's Image and the Contributor Image are shown side-by-side below, with the Contributor Image including the watermark that Shutterstock applies to every image available for license on its website. *Id.*, ¶ 40.

| <u>Plaintiff's Image</u> | <u>Contributor Image</u> |
| --- | --- |
|  |  |

Upon review of Plaintiff's takedown notice, Shutterstock acted expeditiously per its usual processes to remove the Contributor Image from the identified URL and to de-index and withdraw it from licensing. *Id.*, ¶¶ 22, 50. As of May 11, 2021, the Contributor Image was not visible at the identified URL or in the contributor platform, nor searchable on Shutterstock's website. *Id.*, ¶ 51. When Plaintiff later claimed that the Contributor Image was still up on Shutterstock's website yet refused to specify the location, Shutterstock voluntarily undertook a search of its vast image collection and removed the thumbnails of the Contributor Image that it managed to find on its edge cache servers. *Id.*, ¶¶ 58-61. By September 22, 2021, Shutterstock had removed all traces of the Contributor Image and terminated the Contributor's account. *Id.*, ¶ 63. The Contributor Image was rarely viewed and never licensed; thus, the high-resolution, unwatermarked copy of the Contributor Image was never accessible or provided to anyone. *Id.*, ¶¶ 43, 52-54.

C.    Plaintiff's Complaint

Plaintiff filed his initial Complaint on August 23, 2021. *See* Dkt. No. 1. On October 6, 2021, Plaintiff filed the operative First Amended Complaint ("FAC") for (1) direct copyright infringement; (2) contributory and/or vicarious copyright infringement; and (3) falsification and/or removal of copyright management information ("CMI") in violation of 17 U.S.C. § 1202. *See* Dkt. No. 14. Shutterstock now moves for summary judgment on each of these claims because the undisputed record, taken as a whole, establishes that Plaintiff cannot prevail.

**ARGUMENT**

I.    **LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT**

Summary judgment must be granted when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a properly supported motion for summary judgment, the nonmoving party must come forward with "specific

facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The factual evidence must be "of such a character that it would warrant the jury in finding a verdict in favor of" the nonmoving party.  *Id.* at 251; *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'").  Summary judgment cannot be defeated simply by raising "metaphysical doubt as to the material facts," *id.* at 586, or by adducing evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249.

## II.   THE COURT SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK ON PLAINTIFF'S DIRECT COPYRIGHT INFRINGEMENT CLAIM

Plaintiff seeks to hold Shutterstock directly liable for purportedly infringing his alleged copyright in the Image.  *See* FAC ¶¶ 21-28.  To prevail on a copyright infringement claim, the plaintiff must establish "ownership of a valid copyright" and "copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

This claim is not actionable as a matter of law for multiple independent reasons.  First, as an online service provider, the DMCA provides Shutterstock with a complete defense to copyright infringement for content supplied by third-party contributors.  Next, Shutterstock did not undertake any volitional act that caused the alleged copying, display, and/or distribution of Plaintiff's Image, which is an important element of directly liability.   Finally, undisputed facts establish that Shutterstock's use of Plaintiff's Image is a classic, non-infringing fair use.

### A.   The DMCA Shields Shutterstock From Liability for Copyright Infringement.

Congress enacted the DMCA to "clarif[y] the liability faced by [online] service providers who transmit potentially infringing material over their networks."  S. Rep. No. 105-190, at 2 (1998).  To do so, it created a series of statutory "safe harbors" that "protect qualifying service

providers from liability for all monetary relief for direct, vicarious, and contributory infringement" based on certain common internet activities.  H.R. Rep. No. 105-551, pt. 2, at 50 (1998).  Among these safe harbors is § 512(c), which provides protection against claims based on "information residing on [the service provider's] systems or networks at [the] direction of users."  17 U.S.C. § 512(c).  "[W]hat Congress intended in passing § 512(c) was to strike a compromise [between copyright owners and service providers] under which, in return for the obligation to take down infringing works promptly on receipt of notice of infringement from the owner, Internet service providers would be relieved of liability for user-posted infringements of which they were unaware, as well as of the obligation to scour matter posted on their services to ensure against copyright infringement."  *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 89-90 (2d Cir. 2016).

There can be no genuine dispute that the Contributor Image was uploaded to Shutterstock's website by a third-party contributor (SUF ¶ 36), putting this case squarely within the province of DMCA § 512(c).  As set forth below, Shutterstock meets every single requirement for protection under this safe harbor, and thus cannot be liable for copyright infringement as a matter of law.

## 1.   Shutterstock Meets the Threshold Requirements for DMCA Safe Harbor.

To qualify for any DMCA safe harbor, a party must (1) be a "service provider" within the statutory definition; (2) have adopted and reasonably implemented a policy for terminating repeat infringers; and (3) not interfere with "standard technical measures."  17 U.S.C. § 512(i); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 743 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014).  Shutterstock easily meets each of these threshold requirements.

### a)   Shutterstock Fits The Broad Definition Of A "Service Provider."

Shutterstock plainly qualifies as a "service provider," which is defined as "a provider of

online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(B).

"This definition encompasses a broad variety of Internet activities," *Wolk*, 840 F. Supp. 2d at 744,

including the operation of a website that permits third-party users to upload and share content. *See*

SUF ¶¶ 5-6; *cf. Wolk*, 840 F. Supp. 2d at 744 (website that "hosts and allows online sharing of

photos and videos at the direction of users" is a "service provider"); *Viacom Int'l Inc. v. YouTube,*

*Inc.*, 718 F. Supp. 2d 514, 518 (S.D.N.Y. 2010) ("YouTube is a service provider"), *aff'd in relevant*

*part*, 676 F.3d 19 (2d Cir. 2012); *Obodai v. Demand Media, Inc.*, No. 11 Civ. 2503 (PKC), 2012

WL 2189740, at *4 (S.D.N.Y. June 13, 2012) ("website that permits users to post and share

materials" is a "service provider"), *aff'd sub nom. Obodai v. Cracked Ent. Inc.*, 522 F. App'x 41

(2d Cir. 2013); *see also, e.g., Hendrickson v. Amazon.Com, Inc.*, 298 F. Supp. 2d 914 (C.D. Cal.

2003) (Amazon is a "service provider"). Indeed, one court stated that it has "trouble imagining

the existence of an online service that *would not* fall under the definition." *In re Aimster Copyright*

*Litig.*, 252 F. Supp. 2d 634 (N.D. Ill. 2002) (emphasis in original), *aff'd*, 334 F.3d 643 (7th Cir.

2003).

           b)      <u>Shutterstock Maintains A Repeat Infringer Policy.</u>

Shutterstock also meets the second threshold requirement, which requires that the service

provider (1) "adopt a policy that provides for the termination of service access for repeat copyright

infringers;" (2) "inform users of the [] policy;" and (3) "implement the policy in a reasonable

manner." *Wolk*, 840 F. Supp. 2d at 744 (requirement met where defendant had "a policy under

which copyright holders can submit a take-down notice," "made [it] available to the public on [its]

website," and in appropriate circumstances "acted to remove the infringing material" upon receipt

of takedown notices); *see also Capitol Records, Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 637

(S.D.N.Y. 2011) (service provider "reasonably implemented" policy where it had "a system for

responding to takedown notices," did "not interfere with the copyright owners' ability to issue notices," and "terminate[d] users who repeatedly or blatantly infringe copyrights").

Shutterstock's policy for terminating infringers' accounts is set forth in its Contributor Terms of Service, which is publicly-available on its website and to which all contributors must agree before uploading content.  *See* SUF ¶¶ 13, 17; *see also id.*, ¶ 18.  Shutterstock also has a DMCA Policy that sets forth the procedure for submitting takedown notices and provides contact information for its designated agent.  *Id.*, ¶¶ 19-20.  Copyright owners are encouraged to submit notices if they believe their rights have been infringed and, in appropriate circumstances (including for repeat infringement), Shutterstock has terminated contributors' accounts.  *Id.*, ¶¶ 21-23.

c)   <u>Shutterstock Does Not Interfere With Standard Technical Measures.</u>

Shutterstock indisputably does not interfere with any "standard technical measures . . . that are used by copyright owners to identify or protect copyrighted works" because, currently, none exist.  17 U.S.C. § 512(i)(2) (defining "standard technical measures" as those "developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process"); *cf.* Standard Technical Measures & Section 512: Notice of Inquiry, U.S. Copyright Office, 60 Fed. Reg. 25050 (Apr. 27, 2022) (seeking public comment given "observ[ation] that, in the two decades since the passage of the DMCA, no [standard technical measures] have been identified").  Thus, the final threshold requirement is satisfied.

2.   <u>Shutterstock Meets the Specific Conditions For § 512(c) Safe Harbor.</u>

Having met the threshold requirements, the DMCA § 512(c) safe harbor immunizes the service provider from copyright infringing liability "by reason of the storage at the direction of a

user of material that resides on a system or network controlled or operated by or for the service provider," as long as the service provider:

> (A)(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
>
> (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
>
> (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
>
> (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
>
> (C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1).  Shutterstock meets these specific conditions for safe harbor under § 512(c).

> a)  Shutterstock Had No Actual Or "Red Flag" Knowledge Of The Specific Alleged Infringement Prior to Plaintiff's Notice And Expeditiously Removed the Contributor Image.

First, for safe harbor under DMCA § 512(c), it must be the case that Shutterstock (i) had no "actual knowledge" of the alleged infringement; (ii) no "aware[ness] of facts or circumstances from which infringing activity [was] apparent;" or (iii) acted "expeditiously" to remove or disable access to infringing content when notified.  17 U.S.C. § 512(c)(1)(A); *see also id.* § 512(c)(1)(C). "[T]he burden falls on the copyright owner to demonstrate that the service provider acquired knowledge of the infringement, or of facts and circumstances from which infringing activity was obvious, and failed to promptly take down the infringing matter, thus forfeiting its right to the safe harbor."  *Vimeo*, 826 F.3d at 95.  Plaintiff cannot meet this burden.

Shutterstock had no "actual knowledge" of the specific alleged infringement at any point prior to Plaintiff's takedown notice.  *See* SUF ¶ 48; *Viacom*, 676 F.3d at 31 ("the actual knowledge

provision turns on whether the provider actually or 'subjectively' knew of specific infringement").
Plaintiff has not produced and cannot produce any evidence suggesting otherwise.

Nor is there any evidence from which it may be inferred that Shutterstock was aware of
"facts or circumstances" indicating that Contributor Image may infringe Plaintiff's alleged
copyright in the Image.  For the requisite "red flag knowledge," the record must establish that "the
provider was **subjectively aware** of facts that would have made [it] **'objectively' obvious** to a
reasonable person" that the **specific copyright** owned by the plaintiff was being infringed.  *Viacom*,
676 F.3d at 31 (emphasis added); *see also Ventura Content, Ltd. v. Motherless, Inc.*, No. 11 Civ.
912 (SVW) (FMO), 2013 WL 11237204, at *6 (C.D. Cal. July 3, 2013) (the question is "whether
the service provider 'deliberately proceeded in the face of blatant factors of which it was aware'"
or "turned a blind eye to red flags of obvious infringement") (citations omitted), *aff'd*, 885 F.3d
597 (9th Cir. 2018).  In this case, Shutterstock had no reason to so much as suspect the alleged
infringement.  *See* SUF ¶¶ 14-15, 37, 48-49.  Moreover, even if the Shutterstock employee who
briefly reviewed the Contributor Image (*see id.*, ¶¶ 38-39) somehow gleaned that it may contain
Plaintiff's copyrighted Image (of which there is no evidence),[2] this still "would be insufficient to
for many reasons to make infringement *obvious* to an ordinary reasonable person."  *Vimeo*, 826
F.3d at 94 (emphasis in original) (no red flag knowledge even if "an employee of the service
provider has viewed [allegedly infringing content]" containing "all or nearly all of a

---

[2] Shutterstock briefly reviews all contributor-supplied images for technical and quality issues (*e.g.*, pornography, hate speech), not for infringement.  *See* SUF ¶¶ 7-9.  Shutterstock cannot and need not review every image uploaded to its platform to determine whether it may be infringing.  *Id.*, ¶¶ 2-3, 7, 16.  This is standard for service providers and, statutorily and otherwise, cannot be considered as part of the DMCA inquiry. *See, e.g., MP3tunes*, 821 F. Supp. 2d at 644 ("The DMCA is explicit that safe harbor shall not be conditioned on a 'service provider monitoring its service or affirmatively seeking facts indicating infringing activity.'") (quoting 17 U.S.C. § 512(m)(1)); *Ventura*, 2013 WL 11237204, at *10 (similar; collecting cases).

['recognizable'] copyrighted [work]," because employee cannot be expected to know if the user "had authorization to use the copyrighted [work]" or to determine if the use is fair); *see also Ventura*, 2013 WL 11237204, at *10 (C.D. Cal. July 3, 2013), *aff'd*, 885 F.3d 597 (9th Cir. 2018).

The only conclusion that the evidence permits is that Shutterstock first became aware of the alleged infringement through Plaintiff's takedown notice, which identified ***one*** URL at which the Contributor Image had been posted.  *See* SUF ¶ 45.  Because Shutterstock expeditiously removed the Contributor Image from the identified URL upon review of Plaintiff's notice (*id.*, ¶¶ 50-51),[3] Shutterstock qualifies for § 512(c) safe harbor.  *See Vimeo*, 826 F.3d at 95 (service provider "still qualif[ies] for the safe harbor if, after gaining the requisite mental state, it acted expeditiously to disable access to the infringing content"); *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1023 (9th Cir. 2013) (service provider who "promptly removed" material "when it became aware of specific instances of infringement" qualifies for safe harbor).

Importantly, Plaintiff's takedown notice did not trigger an obligation for Shutterstock to remove anything other than the one Contributor Image located at the identified URL.  Shutterstock had no obligation to proactively search for and/or remove other copies of the Contributor Image that may have existed elsewhere on its website.  *See Wolk*, 840 F. Supp. 2d at 747 (rejecting notion that "one notice of infringement would apply to all instances of that image appearing on the

---

[3] Shutterstock typically responds to DMCA takedown notices, and removes the material, within 5.5 days of receipt.  *See* SUF ¶ 22.  While still expeditious in its response, a software error delayed the time in which Plaintiff's takedown notice was assigned to a Shutterstock team member for review and response; once assigned and reviewed, Shutterstock responded and removed the Contributor Image within four business days.  *See* SUF ¶¶ 50-51; Declaration of Artur Zambrowski dated September 2, 2022, ¶¶ 35-36.  Notably, a defendant's "occasional delay in removing material identified in DMCA-compliant notices does not create a genuine issue of material fact as to whether Defendants are entitled to Section 512(c)'s safe harbor."  *Ventura*, 2013 WL 11237204, at *7 n.5.  In any event, Plaintiff's Image was never licensed, and was not viewed even once at the identified URL after the date of Plaintiff's takedown notice.  *See* SUF ¶¶ 52-54.

website"); *Viacom*, 718 F. Supp. 2d at 528 (rejecting complaint that defendant "remove[d] only the specific clips identified in the DMCA notices, and not other clips which infringe the same works"). Indeed, the "DMCA notification procedures place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007). While Plaintiff subsequently vaguely suggested to Shutterstock that the Contributor Image was still on its website, he never identified the specific location (in a DMCA-compliant takedown notice or otherwise). *See* SUF ¶¶ 57-58.[4] Nevertheless, Shutterstock conducted an investigation and removed all remaining traces of the Contributor Image, which consisted solely of thumbnails lingering as residual artifacts in cache servers, and terminated the Contributor's account even though this was the first complaint Shutterstock had ever received for this Contributor. *Id.*, ¶¶ 49, 59-60, 63. Shutterstock "cannot be held liable for its failure to [earlier] remove [the lingering thumbnails] for which [] Plaintiff failed to provide proper notice." *Wolk*, 840 F. Supp. 2d at 748 (defendant entitled to safe harbor where "whenever [plaintiff] had validly notified [defendant] of infringing activity, [defendant] acted promptly to take down the infringing material in an expeditious manner" and in "those instances where [plaintiff's] notices were non-DMCA compliant, [defendant] still acted to remove the material to the best of its ability").

       b)    <u>Shutterstock Had No Right Or Ability To Control The Alleged Infringement And Did Not Financially Benefit From It.</u>

Finally, to be entitled to § 512(c) safe harbor, a service provider must (1) "not receive a financial benefit directly attributable to the infringing activity" in a case where (2) it has "the right

---

[4] Plaintiff has also claimed that the Contributor Image is still available on TinEye, an image search and recognition company that is not controlled by Shutterstock. *See* SUF ¶¶ 66-67.

and ability to control such activity."  17 U.S.C. § 512(c)(1)(B).  Both elements must be met for the safe harbor to be denied on this basis.  Neither is met here.

To start, Shutterstock had no right or ability to control the allegedly infringing activity. While Shutterstock can (and does) remove infringing user-uploaded content from its website, this does *not* equate to the requisite "right and ability to control" the user's infringing activity.  *See Viacom*, 676 F.3d at 38 ("'right and ability to control' infringing activity under § 512(c)(1)(B) 'requires something more than the ability to remove or block access to materials posted on a service provider's website.'") (citation omitted).  Instead, such a "right and ability to control" requires that the "service provider [exert *substantial influence* on the activity of users," *id.* (emphasis added), and "must take the form of prescreening content, rendering extensive advice to users regarding content, and editing user content," *Wolk*, 840 F. Supp. 2d at 748.  Shutterstock does not and cannot exert any substantial influence on the activities of its over two million contributors.  *See* SUF ¶¶ 2-3, 7-9, 16; *Wolk*, 840 F. Supp. 2d at 748 ("considering that millions of images are uploaded [to defendant's website] daily, it is unlikely that [the] kind of prescreening [required for the 'right and ability to control'] is even feasible").  Shutterstock does not select, curate, or control the content uploaded by its contributors.  *See* SUF ¶ 7.  Nor does it prescreen or edit or the content.  *Id.*  It simply rejects those that contain obvious problems.  *Id.*, ¶¶ 8-9.

Likewise, Shutterstock received no "financial benefit directly attributable to the infringing activity."  Generally, a service provider may be found to have received such a financial benefit *only if* it promotes infringing activity to attract business and/or charges more for infringing content than for non-infringing content.  *See Viacom*, 718 F. Supp. 2d at 521; *see also Wolk*, 840 F. Supp. 2d at 748 ("where there is no evidence in the record that the service provider 'attracted or retained subscriptions because of the infringement or lost subscriptions because of its eventual obstruction

13

of the infringement,' no reasonable jury could conclude that the service provider received a direct financial benefit from providing access to the infringing material") (citation omitted).  Shutterstock does nothing of the sort.  *See* SUF ¶¶ 27-28.  Indeed, Shutterstock is committed to respecting intellectual property rights and operated its platform for nearly twenty years before ever being sued for copyright infringement.  *Id.*, ¶¶ 19-29.  Moreover, Shutterstock received no financial benefit whatsoever from the alleged infringement in this case.  *Id.*, ¶ 52.  There is no dispute that the Contributor Image was never even licensed and rarely even viewed.  *Id.*, ¶¶ 52-54. Shutterstock has only lost money by having to defend a claim that is objectively barred by the DMCA.

*      *      *

Because there is no genuine issue of material fact that Shutterstock is entitled to § 512(c) safe harbor protection in this case, Shutterstock has a complete defense to Plaintiff's direct copyright infringing claim, warranting summary judgment in Shutterstock's favor.[5]

B.   <u>Shutterstock Cannot Be Held Directly Liable For Copyright Infringement Because It Did Not Engage In Any Volitional Conduct.</u>

Plaintiff's direct copyright infringement claim also must fail for the simple reason that Shutterstock did not engage in any "volitional conduct" that caused the alleged infringement, which "is an important element of direct liability."  *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008); *see also Wolk*, 840 F. Supp. 2d at 742 ("Direct liability requires 'volitional conduct' that 'causes' the infringement.").  A defendant "that provides only a platform for third-party users to upload, download, and share content" has not engaged in sufficient "volitional conduct" to be directly liable; "it is the users who cause [such] infringement."  *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081 (9th Cir. 2021); *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 668 (9th Cir. 2017) ("passively storing material at the direction of

---

[5] As discussed *infra*, § 512(c) provides a complete defense to the secondary infringement claim.

users in order to make that material available to other users upon request" is not "volitional"). A defendant's "display of copyrighted images on [its] website does not demonstrate volition," either. *Wolk*, 842 F. Supp. 2d at 743-44 (citing *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (insufficient volition where defendant displayed copyrighted images posted by user)).

That is all Shutterstock has done here—*i.e.*, it provided a platform through which the third-party Contributor uploaded the Contributor Image issue, and then it passively stored and displayed automatically-created low-resolution, watermarked copies and/or thumbnails of that image on its website. *See* SUF ¶¶ 3-9, 36-40. Any reproduction or display of the Contributor Image by or on Shutterstock's website was the function of an automated process, initiated by the Contributor, with little to no intervention by any Shutterstock employee. *Id.*, ¶¶ 6-9; *cf. Disney Enters., Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1309 (S.D. Fla. 2011) ("courts have repeatedly held that the automated conduct of software, unaided by human intervention, is not 'volitional'"); *Cartoon Network*, 536 F.3d at 132 (providing "a system that automatically produces copies [of defendant-supplied content] on [customer's] command" is not "volitional"); *Wolk,* 840 F. Supp. 2d at 742 (automated reproduction, display, transmission of images, or copying of images onto products is not "volitional"). This is decidedly insufficient to hold Shutterstock directly liable in this case.

C.   Shutterstock Cannot Be Held Liable For Copyright Infringement Because Its Display Of The Image Is Protected Under The Fair Use Doctrine.

Additionally fatal to Plaintiff's copyright infringement claim, Shutterstock's alleged use of Plaintiff's Image constitutes a classic fair use. *See Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 41 (S.D.N.Y. 2017) ("Fair use is an affirmative defense to copyright infringement."). In determining whether a use is fair, courts must consider four non-exhaustive factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  No single factor is dispositive and "defendants need not establish that each of the factors [ ] weighs in their favor" to prevail.  *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014) (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477 (2d Cir. 2004)).  The Second Circuit has made clear that fair use may be decided on summary judgment where, as here, the material facts underlying the defense are not in dispute.  *See Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir. 2006) ("Although fair use is a mixed question of law and fact, [the Second Circuit] has on a number of occasions resolved fair use determinations at the summary judgment stage where . . . there are no genuine issues of material fact.").[6]

In this case, undisputed facts establish that each fair use factor weighs in Shutterstock's favor, warranting dismissal of Plaintiff's copyright infringement claim as a matter of law.

1.  <u>Shutterstock's Alleged Use of The Image Is Highly Transformative.</u>

Although no factor is independently determinative, the heart of the fair use inquiry is the first factor—particularly, whether the use is "transformative."  *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 577 (1994); *accord Keeling v. Hars*, 809 F.3d 43, 53 (2d Cir. 2015).  While some transformative uses may change the original work, that is not necessary, as a "transformative use can also be one that serves an entirely different purpose."  *Authors Guild, Inc. v. HathiTrust*,

---

[6] *See also, e.g.*, *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014) (affirming grant of summary judgment to defendant on fair use issue where no genuine issues of material fact remained); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2d Cir. 2006) (same); *Wright v. Warner Books, Inc.*, 953 F.2d 731 (2d Cir. 1991) (same); *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109 (2d Cir. 1998) (same).

902 F. Supp. 2d 445, 460 (S.D.N.Y. 2012) (use of books was "transformative" because it "serve[d] an entirely different purpose") (citation omitted), *aff'd in part, vacated in part*, 755 F.3d 87 (2d Cir. 2014); *see also, e.g.*, *Bill Graham*, 448 F.3d at 609 (use of images for a purpose that "is plainly different from the original purpose for which they were created" is "transformative").

Shutterstock's display of a low-resolution, watermarked copy and thumbnails of the Contributor Image (*i.e.*, a cropped copy of Plaintiff's Image) is highly transformative. The purpose is to facilitate searching and to show customers the Contributor Image being offered for license, and the thumbnails are kept for informational, recordkeeping, and matching purposes, whereas Plaintiff's Image is ordinarily used to illustrate the rainforest. *See* SUF ¶ 34; *cf. Magnum Photos Int'l, Inc. v. Houk Gallery, Inc.*, No. 16 Civ. 7030 (VSB), 2018 WL 4538902, at *3 (S.D.N.Y. Sept. 21, 2018) (use of thumbnails to "identify the photographs" and "provide information to the art-seeking public" is "transformative"); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003) (use of thumbnails on internet search engine is transformative); *Rosen v. eBay, Inc.*, No. 13 Civ. 6801 (MWF) (EX), 2015 WL 1600081, at *15-20 (C.D. Cal. Jan. 16, 2015) (use of photos of magazines to show magazines for sale is fair use). This factor strongly favors fair use.[7]

### 2.    The Nature of Plaintiff's Image Favors Fair Use.

The second factor, which is "rarely found to be determinative," considers the "nature of the copyrighted work." *On Davis v. Gap, Inc.*, 246 F.3d 152, 173 (2d Cir. 2001). In general, a use is more likely to be fair when the copyrighted work is "factual or informational" in nature (rather than "expressive or creative") and was previously published. *Cariou*, 714 F.3d at 709-10.

---

[7] The first factor also considers the "commercial nature of the use," but this consideration is "properly discounted" when the use is "substantially transformative," *NXIVM*, 364 F.3d at 477-78, and is especially immaterial here given that Shutterstock captured no revenue whatsoever from the alleged infringement. *See* SUF ¶ 52; *Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013).

Here, Plaintiff's Image is more factual than it is creative insofar as it depicts a naturally-occurring scene. *See* SUF ¶ 30. But even if it is creative, the second factor still favors a finding of fair use because there is no dispute the Image was published before the alleged infringement (*id.*, ¶ 35) and, as discussed *supra*, Shutterstock used it in a transformative manner. *See Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992) (whether the work was published is "critical" under the second factor); *Bill Graham*, 448 F.3d at 612 (second factor is of "limited usefulness" where a "creative work" is "being used for a transformative purpose"); *see also, e.g.*, *Kelly*, 336 F.3d at 820 (second factor favored fair use where plaintiff's works "appeared on the internet" before being used in search engine); *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 546 (S.D.N.Y. 2019) (transformative use of a creative photo was fair; although the "classification [of a work as creative] cuts against a finding of fair use," this "has rarely played a significant role").

3.    <u>The Amount and Substantiality Used Favors Fair Use.</u>

The third factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). In general, "the more of a copyrighted work that is taken, the less likely the use is to be fair." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998). The reasonableness of the amount used also must be considered "in relation to the purpose of the copying." *Swatch Grp.*, 756 F.3d at 89. Even use all or substantially all of a copyrighted work may be fair if it is reasonably necessary to accomplish the transformative purpose. *See, e.g.*, *Bill Graham*, 448 F.3d at 613 ("copying [the entire work] does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image"); *HathiTrust*, 755 F.3d at 98-99 (third factor favored fair use because using entire copyrighted works was "reasonably necessary" to accomplish the transformative purpose).

Here, Shutterstock displayed only a small portion of Plaintiff's Image, and did so in the form of lower-quality and often small thumbnail versions. *See* SUF ¶¶ 36, 39, 59; *Bill Graham*,

448 F.3d at 613 (defendant's "display[] [of] reduced versions of the [entire] original images" was fair).  Moreover, Shutterstock reasonably needed to display as much as it did in order to accomplish its transformative purpose of correctly identifying the Contributor Image.  *See* SUF ¶ 39. Accordingly, this factor favors fair use (and, at the very least, does not weigh against it).

### 4.    The Effect of the Use on The Potential Market Favors Fair Use

The fourth factor considers the "effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  "The focus here is on whether defendants are offering a market substitute for the original," *i.e.*, "whether the secondary use usurps the market of the original work."  *NXIVM*, 364 F.3d at 481-82; *see also Blanch*, 467 F.3d at 258 (concern is not whether use "suppresses or even destroys the market," but whether it "usurps" it).  "To defeat a claim of fair use, the copyright holder must point to market harm that results because the secondary use serves as a substitute for the original work."  *HathiTrust*, 755 F.3d at 96.  This factor ordinarily favors of fair use where, as here, the secondary use is transformative.  *See Bill Graham*, 448 F.3d at 614 ("transformatively different" use does not affect market for original); *Kelly*, 336 F.3d at 821 ("transformative work is less likely to have an adverse impact on the market of the original ").

This final factor favors Shutterstock because there is no evidence from which a jury could find that Shutterstock's limited use of a heavily cropped, low-resolution, watermarked copy and/or thumbnail usurped the traditional market for Plaintiff's Image.  *See Kelly*, 336 F.3d at 821 (concluding that thumbnails are not a substitute for full-size images).  There is no evidence that Plaintiff has ever licensed the Image at issue (or any other image) of this kind.  *See* SUF ¶ 68. Plaintiff also has not produced any evidence that it lost a single dollar of licensing revenue due to Shutterstock's alleged infringement.  *Id.*, ¶ 69.  He speculates that even though a maximum of two people (probably Plaintiff's lawyers) ever saw the Image, the alleged infringement caused some

form of reputational harm (*id.*, ¶ 70). But this factor concerns *market* harm, and in any event, Plaintiff cannot defeat summary judgment based on speculation or conjecture.

## III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK ON PLAINTIFF'S SECONDARY COPYRIGHT INFRINGEMENT CLAIM

Plaintiff has also asserted a secondary copyright infringement claim against Shutterstock based on contributory and vicarious liability.  *See* FAC ¶¶ 29-35.  The DMCA bars this claim for the reasons as discussed *supra*.  *See* H.R. Rep. No. 105-551, pt. 2, at 50 (safe harbor shields service provider from "all monetary relief for direct, vicarious, and contributory infringement"); *Wolk*, 840 F. Supp. at 749 ("Because [defendant] is afforded the protection of the DMCA's 'safe harbor' provision, [plaintiff's] secondary infringement claims are also dismissed.").  For the additional reasons below, Shutterstock is not secondarily liable for copyright infringement as a matter of law.

### A.   Shutterstock Cannot Be Secondarily Liable Absent Direct Infringement By A Third Party.

Plaintiff has not established that the Contributor or any third party directly infringed his alleged copyright in the Image.  Thus, Shutterstock is not secondarily liable as a matter of law. *See Hartmann v. Amazon.com, Inc.*, No. 20 Civ. 4928 (PAE), 2021 WL 3683510, at *6 (S.D.N.Y. Aug. 19, 2021) ("To establish secondary infringement claims under a theory of contributory or vicarious infringement, a plaintiff must first adequately allege direct infringement by a party *other than the defendant*.") (emphasis added); *Leonard v. Stemtech Health Scis., Inc.*, No. 08 Civ. 67 (LPS) (CJB), 2013 WL 5288266, at *10 (D. Del. Sept. 19, 2013) ("It is well-settled that in order to state a cause of action for contributory infringement or vicarious infringement, a plaintiff must identify another party who was responsible for the direct infringement (to which the defendant contributed in some way)."); *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d

Cir. 1998) (no secondary infringement where plaintiff "failed to identify any primary infringer").[8]

      B.      <u>The Evidence Does Not Support Plaintiff's Contributory Infringement Claim.</u>

"Assuming there is a class of primary infringers, then a party 'who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.'" *Matthew Bender*, 158 F.3d at 706 (citation omitted). To be liable for contributory infringement, the defendant "must have acted in concert with the direct infringer" and its "participation in the infringement must be substantial." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 356 (S.D.N.Y. 2014). Merely "provid[ing] the means to accomplish an infringing activity" is not sufficient. *Wolk*, 840 F. Supp. 2d at 550; *accord Livnat v. Lavi*, No. 96 Civ. 4967 (RWS), 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (citing *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 n.17 (1984)).

Plaintiff cannot prove the basic elements of this claim. As discussed *supra*, the record is clear that Shutterstock had no knowledge of (nor any reason to suspect) any infringing activity when it made the Contributor Image at issue available on its platform or at any point prior to Plaintiff's takedown notice. SUF ¶¶ 14-15, 37, 48-49. Moreover, Shutterstock did not actively participate in the alleged infringement at all, let alone make a "substantial" contribution while working "in concert" with the Contributor. *Id.*, ¶¶ 6-9. 36-38. Instead, the evidence suggests—at most—that Shutterstock provided the platform through which the Contributor infringed upon Plaintiff's Image, and passively stored and made the Contributor Image available to its customers (at a time when it was unaware of the allegedly infringing nature). *Id.*, ¶¶ 3-9, 36-40. As such, Plaintiff has presented insufficient evidence to support a claim for contributory infringement.

---

[8] Shutterstock cannot be both directly and secondarily liable for copyright infringement based on the same conduct. *See Pickholtz v. Rainbow Techs., Inc.*, 260 F. Supp. 2d 980, 989-90 (N.D. Cal. 2003) (direct and indirect infringement are "mutually exclusive" when "based on the same act'").

C.     The Evidence Does Not Support Plaintiff's Vicarious Infringement Claim.

For vicarious liability, a plaintiff must show that the defendant has both:  (1) "the right and ability to supervise the infringing activity;" and (2) "a direct financial interest in such activities." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see also Viacom*, 676 F.3d at 36 (vicarious infringer must have "an obvious and direct financial interest" in infringing activity).  There must be a "causal relationship between the infringing activity and any financial benefit [the] defendant reaps." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011) (citation omitted).

Plaintiff cannot make this showing.  As discussed *supra*, Shutterstock had no right or ability to supervise the alleged infringing activity by the Contributor (SUF ¶¶ 2-3, 7-9, 16), and derived no financial benefit whatsoever therefrom (*id.*, ¶ 52).  *See, e.g.*, *Wolk*, 840 F. Supp. 2d at 751 (dismissing vicarious infringement claim based on same facts that rendered defendant eligible for safe harbor under § 512(c)).  Accordingly, Shutterstock cannot be a vicarious infringer.

**IV.     THE SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK ON PLAINTIFF'S COPYRIGHT MANAGEMENT INFORMATION CLAIM**

For its third and final claim, Plaintiff asserts that Shutterstock has "removed" and/or "added false copyright management information" to Plaintiff's Image, in violation of 17 U.S.C. § 1202(a) and (b).  *See* FAC ¶¶ 36-41.[9]  "Copyright management information" or "CMI" specifically includes, *inter alia*, the name of the copyright owner and the name of the author. 17 U.S.C. § 1202(c)(2), (c)(3).  Plaintiff cannot establish a violation under either provision.

---

[9] Although Plaintiff only cites § 1202(a), which concerns the "addition" of CMI, the references to "removing" CMI in the First Amended Complaint suggest that Plaintiff also intends to assert a violation of § 1202(b).  *See, e.g.*, FAC ¶¶ 38-39.

A.     Plaintiff Cannot Establish A Violation of § 1202(a).

Section 1202(a) addresses "false" CMI.  It provides, in relevant part, that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement . . . provide . . . or distribute . . . [CMI] that is false."  17 U.S.C. § 1202(a).  This provision is subject to a so-called "double scienter" requirement.  *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018).  In particular, for violation of § 1202(a), a plaintiff must establish that the defendant (1) "***knowingly*** provided false [CMI];" ***and*** (2) "did so with the ***intent to induce, enable, facilitate, or conceal an infringement***."  *Id.* (emphasis added).  Plaintiff cannot establish either element of this claim.

First, there is no evidence that Shutterstock provided or distributed any CMI that is false.  Plaintiff claims that Shutterstock violated § 1202(a) by "distribut[ing] and publish[ing] the [image at issue] via its website, under its own name" (FAC ¶ 39), but "courts have held that the mere appearance of an image on a website does not convey CMI for that image."  *Tomelleri v. Zazzle, Inc.*, No. 13 Civ. 02576 (EFC) (TJJ), 2015 WL 8375083, at *12 (D. Kan. Dec. 9, 2015) (granting summary judgment to defendant on § 1202(a) claim) (citing *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 928 (N.D. Ill. 2013)).  The only information that can conceivably be construed from the FAC as CMI is the "Shutterstock" watermark on the copy of the Contributor Image that had been posted to Shutterstock's website, but this information is not false.  *See* SUF ¶¶ 39-42.  Rather, it correctly identifies Shutterstock as the source or distributor of the image, which, moreover, does not fall within the statutory definition of CMI.  *Cf.* 17 U.S.C. § 1202(c).  The FAC is devoid of any other reference to added CMI alleged to violate § 1202(a).[10]

_____

[10] Some thumbnails also included "Arun RaJpuT6621" in the watermark, which correctly identifies the Contributor who uploaded the image to Shutterstock's platform.  *See* SUF ¶¶ 37, 62.  Plaintiff does not claim that this is a violation of § 1202(a) (*see* FAC ¶¶ 36-41), but even if he had, the claim would fail for the same reasons applicable to the "Shutterstock" watermark.  Further,

Second, Shutterstock added the watermark to the Contributor Image with the intent to *prevent* infringement, not to "induce, enable, facilitate, or conceal" it.  Indeed, consistent with industry practice, Shutterstock puts a watermark on every piece of content displayed on its public-facing website in order to prevent third parties from using the content without a license.  SUF ¶¶ 40-41.  Plaintiff has not produced anything to suggest otherwise; in fact, he testified that he uses watermarks on his own photos when he is "concerned about it being reused without permission." *Id.*, ¶ 40.  Thus, even if Plaintiff could somehow prove that Shutterstock knowingly distributed false CMI (which he cannot), his § 1202(a) claim must fail.  *See, e.g., Zuma Press, Inc. v. Getty Images (US), Inc.*, 349 F. Supp. 3d 369, 375-76 (S.D.N.Y. 2018) (Hellerstein, J.) (granting summary judgment to defendant on § 1202(a) claim where defendant "appended watermarks and other copyright information" to the image because there was "no evidence that [it] intended to induce or facilitate infringement"), *aff'd*, 845 F. App'x 54 (2d Cir. 2021); *Sid Avery & Assocs., Inc. v. Pixels.com, LLC*, 479 F. Supp. 3d 859, 871 (C.D. Cal. Aug. 18, 2020) (same, even "[a]ssuming, for the sake of argument, that [defendant] could be liable for helping a contributor place the . . . watermark on the images at issue, there is no [evidence permitting a] reasonable inference that [it] acted with the requisite intent or knowledge"); *Tomelleri*, 2015 WL 8375083, at *12 (same, where plaintiff did not "come forward with any evidence" that defendant added "the phrase 'Image licensed to Zazzle Inc.' with the intent to induce infringement").

B.    Plaintiff Cannot Establish A Violation of § 1202(b).

Section 1202(b) addresses "alteration or removal" of CMI.  17 U.S.C. § 1202(b).  To establish a violation under § 1202(b)(1), a plaintiff must establish "(1) the existence of CMI on the

---

Shutterstock did not add this watermark; contributor names are supplied by the contributor and applied automatically to certain thumbnails for informational and recordkeeping purposes.  *See* SUF ¶¶ 61-62.

[plaintiff's work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 664 (S.D.N.Y. 2017) (citation omitted).  Alternatively, a defendant may be liable for "distribut[ing the plaintiff's work] . . . knowing that [CMI] has been removed or altered without authority of the copyright owner or the law."  17 U.S.C. § 1202(b)(3).  A similar "double scienter" requirement applies to this provision.  *Krechmer*, 747 F. App'x at 9.

Plaintiff's § 1202(b) claim fails at the start because there is no evidence that CMI ever existed on the cropped copy of Plaintiff's Image that Shutterstock received from the Contributor, leaving nothing for Shutterstock to "remove" or "alter."  *See* SUF ¶ 44; *cf. Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 338 (S.D.N.Y. 2019) (granting summary judgment to defendant on § 1202(b) claim where there was no "evidence suggesting whether there was CMI on the Photographs when Defendants obtained them").  Even assuming CMI originally existed, nothing in the evidentiary record indicates that Shutterstock either intentionally removed the CMI or had reason to know that Plaintiff's unspecified CMI had been improperly removed.  *See, e.g.*, *Grecco v. Age Fotostock Am., Inc.*, No. 21 Civ. 423 (JSR), 2021 WL 4555599, at *7 (S.D.N.Y. Oct. 5, 2021) (granting summary judgment to defendant on §§ 1202(b)(1) and (3) claims where there was no evidence that defendant "either intentionally removed the CMI or had reason to know that the CMI had been improperly removed" nor any evidence to suggest that the "[p]hotographs contained CMI when [defendant] obtained them from the two contributors").  Thus, the Court should grant summary judgment to Shutterstock on this claim.

## **CONCLUSION**

For the reasons set forth above, Shutterstock is entitled to summary judgment in its favor on all of Plaintiff's claims.

Respectfully submitted,

Dated: New York, New York             MITCHELL SILBERBERG & KNUPP LLP
       September 2, 2022

By:    /s/ Eleanor M. Lackman
       Eleanor M. Lackman (eml@msk.com)
       Elaine Nguyen (eln@msk.com)
       Samantha W. Frankel (swf@msk.com)
       437 Madison Avenue, 25th Floor
       New York, New York 10022
       Tel.: (212) 509-3900
       Fax: (212) 509-7239


       *Attorneys for Defendant Shutterstock, Inc.*