UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE STEINMETZ,

               Plaintiff,

    -against-

SHUTTERSTOCK, INC.,

               Defendant.

Case No. 1:21-cv-7100 (AKH)

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

MITCHELL SILBERBERG & KNUPP LLP
Eleanor M. Lackman (eml@msk.com)
Elaine Nguyen (eln@msk.com)
Samantha W. Frankel (swf@msk.com)
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendant Shutterstock, Inc.*

## <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page</u></div>

PRELIMINARY STATEMENT ............................................................................................. 1

SUMMARY OF RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.................. 2

    A.    Shutterstock's Website, Contributor Platform, and Copyright Policies .......................... 2

    B.    Shutterstock's API and Third-Party Websites ................................................................. 3

    C.    Plaintiff's Takedown Notice .......................................................................................... 3

    D.    Plaintiff's Complaint ...................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

I.    THE DMCA SHIELDS SHUTTERSTOCK FROM DIRECT AND SECONDARY COPYRIGHT INFRINGEMENT LIABILITY .................................................................... 5

    A.    Shutterstock Fits The Broad Definition of A "Service Provider." ................................... 5

    B.    Shutterstock Meets The Other Threshold Requirements For DMCA Safe Harbor........... 8

           1.    Shutterstock Reasonably Implements Its "Repeat Infringer" Policy. .................. 8

           2.    Shutterstock Does Not Interfere With Standard Technical Measures. .............. 10

    C.    Shutterstock Meets the Specific Conditions For § 512(c) Safe Harbor. ......................... 11

           1.    Shutterstock Stores Materials On Its System At The Direction of Users........... 11

           2.    Shutterstock Expeditiously Removed The Contributor Image Upon Review of Plaintiff's Takedown Notice And Was Not Required To Do More. ................. 13

           3.    Shutterstock Had No Right Or Ability To Control The Alleged Infringement And Did Not Financially Benefit From It............................................................. 16

           4.    Shutterstock Has Had A Designated DMCA Agent At All Relevant Times...... 18

    D.    Plaintiff's Failure To Follow Up In Response To An Objection Is Not "Discovery Misconduct" By The Other Side. .............................................................................. 19

II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK ON PLAINTIFF'S DIRECT COPYRIGHT INFRINGEMENT CLAIM ........................ 21

    A.    Shutterstock Cannot Be Directly Liable For Copyright Infringement Because It Did Not Engage In Any Volitional Conduct. ............................................................................. 21

           1.    Shutterstock Did Not Directly Infringe Plaintiff's Reproduction Right. ........... 23

           2.    Shutterstock Did Not Directly Infringe Plaintiff's Display Right..................... 23

           3.    Shutterstock Did Not Directly Infringe Plaintiff's Distribution Right. ............. 24

           4.    Shutterstock Did Not Directly Infringe Plaintiff's Right To Create Derivative Works....................................................................................................... 25

    B.    Shutterstock Cannot Be Held Liable For Copyright Infringement Because Its Display of The Image Is Protected Under The Fair Use Doctrine................................................. 26

<div align="center">i</div>

## <u>TABLE OF CONTENTS</u>
(continued)

<div align="right"><u>**Page**</u></div>

III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK ON PLAINTIFF'S SECONDARY COPYRIGHT INFRINGEMENT CLAIM ............. 27

      1.   Shutterstock Cannot Be Secondarily Liable Because There Is No Evidence That TinEye, HelloRF, or StockFresh Actually Infringed. ...................................... 27

      2.   Plaintiff's Vicarious Copyright Infringement Claim Must Fail. ...................... 28

      3.   Plaintiff's Contributory Copyright Infringement Claim Must Fail. .................. 29

IV.   THE COURT SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK ON PLAINTIFF'S COPYRIGHT MANAGEMENT INFORMATION CLAIM............ 30

V.   SHUTTERSTOCK DID NOT ACT WILLFULLY .......................................... 32

CONCLUSION.......................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

<div align="right"><u>Page(s)</u></div>

<div align="center">CASES</div>

*Agence France Presse v. Morel*,
   934 F. Supp. 2d 547 (S.D.N.Y. 2013)..................................................................6, 18

*APL Microscopic, LLC v. U.S.*,
   144 Fed. Cl. 489 (Fed. Cl. 2019) .........................................................................24

*Arista Recs. LLC v. Usenet.com, Inc.*,
   633 F. Supp. 2d 124 (S.D.N.Y. 2009).................................................................18

*Bell v. Wilmott Storage Servs., LLC*,
   12 F.4th 1065 (9th Cir. 2021) ..............................................................................22

*Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*,
   No. 18 Civ. 03384 (SAG), 2021 WL 5359671 (D. Md. Nov. 17, 2021) ................17

*BWP Media USA Inc. v. Hollywood Fan Sites LLC*,
   115 F. Supp. 3d 397 (S.D.N.Y. 2015)..................................................................19

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
   69 F. Supp. 3d 342 (S.D.N.Y. 2014)................................................................23, 29

*BWP Media USA Inc. v. Polyvore, Inc.*,
   922 F.3d 42 (2d Cir. 2019)..............................................................................11, 24

*Capitol Records, Inc. v. MP3tunes, LLC*,
   821 F. Supp. 2d 627 (S.D.N.Y. 2011).........................................................9, 13, 14

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
   536 F.3d 121 (2d Cir. 2008)..........................................................................21, 23

*Corbis Corp. v. Amazon.com, Inc.*,
   351 F. Supp. 2d 1090 (W.D. Wash. 2004)............................................................6, 7

*Costar Grp. Inc. v. Loopnet, Inc.*,
   164 F. Supp. 2d 688 (D. Md. 2001), *aff'd*, 373 F.3d 544 (4th Cir. 2004) ..............12

*CoStar Grp., Inc. v. LoopNet, Inc.*
   373 F.3d 544 (4th Cir. 2004) ..............................................................................22

*Disney Enters., Inc. v. Hotfile Corp.*,
   No. 11 Civ. 20427, 2013 WL 6336286 (S.D. Fla. Sept. 20, 2013).......................9, 19

*Disney Entersprises, Inc. v. Hotfile Corp.*,
   798 F. Supp. 2d 1303 (S.D. Fla. 2011) .......................................................22, 23, 25

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ...............................................................28

*Feingold v. RageOn, Inc.*,
    472 F. Supp. 3d 94 (S.D.N.Y. 2020)......................................................14

*Gardner v. CafePress Inc.*,
    13 Civ. 1108 (GPC), 2014 WL 794216 (S.D. Cal. Feb. 26, 2014)...........7

*Greg Young Publ'g, Inc. v. Zazzle, Inc.*,
    No. 16 Civ. 4587 (SVW) (KS), 2017 WL 2729584 (C.D. Cal. May 1, 2017) .................6, 7, 8

*Hamil American Inc. v. GFI*,
    193 F.3d 92 (2d Cir. 1999).....................................................................32

*Hartmann v. Amazon.com, Inc.*,
    No. 20 Civ. 4928 (PAE), 2021 WL 3683510 (S.D.N.Y. Aug. 19, 2021) ...............................27

*Hendrickson v. eBay, Inc.*,
    165 F. Supp. 2d 1082 (C.D. Cal. 2001) ..................................................6

*Hosseinzadeh v. Klein*,
    276 F. Supp. 3d 34 (S.D.N.Y. 2017).......................................................26

*Hydentra HLP Int. Ltd. v. Luchian*,
    No. 15 Civ. 22134 (UU), 2016 WL 5951808 (S.D. Fla. June 2, 2016) ..................29

*Interdonato v. Bae Systems, Inc.*,
    16 F. App'x 25 (2d Cir. 2001) ...............................................................19

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005)....................................................................32

*Krechmer v. Tantaros*,
    747 F. App'x 6 (2d Cir. 2018) ...............................................................30

*Livnat v. Lavi*,
    No. 96 Civ. 4967 (RWS), 1998 WL 43221 (S.D.N.Y. Feb. 2, 1998)......................30

*Mango v. BuzzFeed, Inc.*,
    356 F. Supp. 3d 368 (S.D.N.Y. 2019) *aff'd*, 970 F.3d 167 (2d Cir. 2020) .............................31

*Matthew Bender & Co. v. West Publ'g Co.*,
    158 F.3d 693 (2d Cir. 1998)................................................................27, 29

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Michael Grecco Prods., Inc. v. Alamy, Inc.*,
  372 F. Supp. 3d 131 (E.D.N.Y. 2019) ...................................................................31

*Microsoft Corp. v. Softicle.com*,
  No. 16 Civ. 2762, 2017 WL 5517379 (D. N.J. Sept. 29, 2017)...........................24

*Obodai v. Demand Media, Inc.*,
  No. 11 Civ. 2503 (PKC), 2012 WL 2189740 (S.D.N.Y. June 13, 2012),
  *aff'd sub nom. Obodai v. Cracked Ent. Inc.*, 522 F. App'x 41 (2d Cir. 2013) ...................5, 18

*Parker v. Google, Inc.*,
  242 F. App'x 833 (3d Cir. 2007) ..........................................................................22

*Parker v. Paypal, Inc.*,
  16 Civ. No. 4786, 2017 WL 3508759 (E.D. Pa. Aug. 16, 2017)..........................22

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ..............................................................................14

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  213 F. Supp. 2d 1146 (C.D. Cal. 2002) ..................................................................9

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ....................................................................22, 24, 25

*Playboy Entm't Grp. Inc. v. Happy Mutants, LLC*,
  17 Civ. 8140 (FMO), 2018 WL 2315936 (C.D. Cal. Feb. 14, 2018) ....................10

*Rosen v. Hosting Services, Inc.*,
  771 F. Supp. 2d 1219 (C.D. Cal. 2010) ..................................................................8

*Sid Avery & Assocs., Inc. v. Pixels.com, LLC*,
  479 F. Supp. 3d 859 (C.D. Cal. Aug. 18, 2020) ...................................................31

*Tom Hussey Photography, LLC v. BDG Media, Inc.*,
  No. 20 Civ. 404 (MN), 2020 WL 7481770 (D. Del. Dec. 18, 2020)......................24

*Totally Her Media, LLC v. BWP Media USA, Inc.*,
  No. 13 Civ. 8379 (ABP), 2015 WL 12659912 (C.D. Cal. Mar. 24, 2015)............29

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
  718 F.3d 1006 (9th Cir. 2013) ..............................................................................13

*Ventura Content, Ltd. v. Motherless, Inc.*,
  885 F.3d 597 (9th Cir. 2018) ....................................................................13, 16, 17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Ventura Content, Ltd. v. Motherless, Inc.,*
No. 11 Civ. 5912 (SVW) (FMO), 2013 WL 11237204
(C.D. Cal. July 3, 2013), *aff'd*, 885 F.3d 597 (9th Cir. 2018) ..............................................12

*Viacom Int'l, Inc. v. YouTube, Inc.,*
676 F.3d 19 (2d Cir. 2012)...............................................................7, 12, 13, 17, 33

*Viacom Int'l Inc. v. YouTube, Inc.,*
718 F. Supp. 2d 514 (S.D.N.Y. 2010),
*aff'd in relevant part*, 676 F.3d 19 (2d Cir. 2012) ........................................5, 14, 15

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.,*
210 F. Supp. 2d 147 (E.D.N.Y. 2002), *aff'd sub nom.*
*Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*, 354 F.3d 112 (2d Cir. 2003) .......................25

*Wolk v. Kodak Imaging Network, Inc.,*
840 F. Supp. 2d 724 (S.D.N.Y. 2012),
*aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014)
........................................................................................................... *passim*

*Young-Wolff v. John Wiley & Sons, Inc.,*
12 Civ. 5230 (JPO), 2016 WL 154115 (S.D.N.Y. Jan. 12, 2016) ..........................................32

*Zuma Press, Inc. v. Getty Images (US), Inc.,*
349 F. Supp. 3d 369 (S.D.N.Y. 2018) (Hellerstein, J.),
*aff'd*, 845 F. App'x 54 (2d Cir. 2021) .......................................................................31

**STATUTES**

17 U.S.C. § 512(i) ..............................................................................................8, 10, 11

17 U.S.C. § 512(c) ..........................................................................................*passim*

17 U.S.C. § 512(k) ...............................................................................................5, 7

17 U.S.C. § 512(m) ...............................................................................................2, 7

17 U.S.C. § 1202.............................................................................................*passim*

**OTHER AUTHORITIES**

I. Portiz, *Copyright Metadata Ruling Prompts Licensing Warning to Artists*,
Bloomberg, Aug. 24, 2022, *available at*: https://news.bloomberglaw.com/ip-
law/copyright-metadata-ruling-prompts-licensing-warning-to-artists (last
visited Sept. 12, 2022) ..........................................................................................31

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>**Page(s)**</u>

1 Melville B. Nimmer, Nimmer on Copyright, Derivative and Collective Works §
  3.03[A] (2020) ...................................................................................................................26

E-Commerce and Internet Law, Definition of a Service Provider,
  § 4.12[2] (2020 update)........................................................................................................6

Cullins, *Has This Man Sued You? A "Copyright Troll" Takes on Hollywood*, The
  Hollywood Reporter (Apr. 6, 2018)
  https://www.hollywoodreporter.com/business/business-news/has-man-sued-
  you-a-copyright-troll-takes-hollywood-1099156/ ...............................................................10

H.R. Rep. No. 105–551, pt. 2 (1998).............................................................................................16

I. Portiz, *Copyright Metadata Ruling Prompts Licensing Warning to Artists*,
  Bloomberg, Aug. 24, 2022, *available at*: https://news.bloomberglaw.com/ip-
  law/copyright-metadata-ruling-prompts-licensing-warning-to-artists (last
  visited Sept. 12, 2022) ........................................................................................................31

## PRELIMINARY STATEMENT

Plaintiff George Steinmetz's ("Plaintiff") Motion for Summary Judgment (Dkt. No. 50) ("Motion" or "Mot.") reflects a misguided attempt to change longstanding, black-letter law that applies to this case and clearly moots Plaintiff's lawsuit.  Citing inapposite cases and unpersuasive authorities from outside this Circuit, Plaintiff puts forth arguments that suppose that the Digital Millennium Copyright Act ("DMCA") does not exist.  Indeed, his view would cause myriad other well-known platforms impossible to run without fear of exposure to liability—exactly the scenario that the DMCA was enacted to avoid.  Similarly, Plaintiff's overstuffed brief and lengthy statement of facts, based largely on material never produced before the Motion was filed, reveal a remarkable misunderstanding or misrepresentation of how Shutterstock's platform works, what Shutterstock is obligated to do, and what Shutterstock did here.  Yet even if the facts were true (and the evidence shows that many are not), Plaintiff cites nothing to indicate how those facts have anything to do with DMCA eligibility or compliance.  All that matters is: (1) content was uploaded by a third-party user of the platform, and (2) Shutterstock removed or disabled the content on its site at the specific location Plaintiff identified.

Far from entitling Plaintiff to summary judgment, Plaintiff's blinkered Motion confirms that judgment should be entered in favor of Shutterstock.  Under directly applicable statutory authority and binding law, Shutterstock plainly is a service provider under the DMCA that, per the law, took reasonable steps to remove the image from the identified URL upon receiving "DMCA notice" claiming that—of the over 415 million images on its site—one was uploaded without Plaintiff's authority.  Plaintiff's thin arguments that advocate for the application of traditional copyright claims, even though a defense plainly refutes them, become lost in tellingly desperate and unfounded rhetoric and attacks on Shutterstock and its employees.  Likewise, Plaintiff's only

claim of a violation of Section 1202 of the Copyright Act—the automatic application of a watermark on uploaded images, something that Plaintiff himself advocates—fails to meet any of the prongs of the test, much less all that are required.

As detailed below, this case involves standard operations of a platform that followed the law—indeed, taking steps above and beyond what the law requires. This included hunting down reference thumbnails at URLs that the Plaintiff *never* took steps to identify, despite being legally obligated to do so, including as a predicate for Plaintiff's challenge to the safe harbor as to copies maintained at such URLs. Plaintiff's arguments and pronouncements to the contrary reflect just another meritless moonshot at unraveling the law.  There is no basis for any claim that a copyright owner may foist its policing and enforcement responsibilities onto a platform; indeed, Section 512(m) of the DMCA expressly prohibits exactly what Plaintiff advocates.   Accordingly, Plaintiff's motion should be denied, and judgment should be entered in Shutterstock's favor.

## SUMMARY OF RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

A.   Shutterstock's Website, Contributor Platform, and Copyright Policies

Shutterstock operates a global online marketplace for images and other content at the website www.shutterstock.com.  *See* Def. SUF ¶ 1.  Shutterstock currently offers more than 415 million images for license and 200,000 images are added every day.  *Id.*, ¶ 2.  One way Shutterstock obtains images is through its over two million third-party "contributors."  *Id.*, ¶ 3. Anyone can sign up to be a contributor and upload content directly into Shutterstock's online marketplace (*id.*, ¶¶ 4-6), provided they agree to Shutterstock's "Contributor Terms of Service"

---

[1] Shutterstock's Counterstatement to Plaintiff's Rule 56.1(a) Statement is cited herein as "CSUF." To avoid duplication, Shutterstock also relies its Rule 56.1(a) Statement (Dkt. No. 52), which is cited herein as "Def. SUF," and the Declaration of Artur Zambrowski dated September 2, 2022 (Dkt. No. 53), which is cited herein as "Zambrowski MSJ Decl."

(*id.*, ¶ 13), which requires affirmation that the content "does not infringe the copyright or any other rights of any third party" (*id.*, ¶ 14), and indicates that Shutterstock "may suspend [their] Content and terminate [their] account" due to infringing activity (*id.*, ¶ 17). Shutterstock briefly reviews contributor-uploaded images and proposed titles and keywords for obvious technical and quality issues, but otherwise, the entire process—from upload to the issuance of any license—is fully automated, with no involvement by any person at Shutterstock. *See id.*, ¶¶ 8, 10; Declaration of Artur Zambrowski dated September 16, 2022 ("Zambrowski Opp. Decl."), ¶ 9.

B.      Shutterstock's API and Third-Party Websites

Shutterstock offers an "API" (or "application programming interface") that automatically provides access to—*not copies of*—its entire library of content, including millions of contributor-supplied images. *Id.*, ¶ 29. Shutterstock's API allows third parties to integrate the functionality of searching, accessing, licensing, and/or downloading the images in Shutterstock's library into their websites. *Id.*, ¶ 28. The API mirrors the content on Shutterstock's website. *Id.*, ¶ 31. When an image is removed from Shutterstock's website, it becomes totally unavailable for license, including through any third-party website that integrates Shutterstock's API. *Id.*

C.      Plaintiff's Takedown Notice

On April 1, 2021, Plaintiff sent a notice to Shutterstock indicating that his allegedly copyrighted image ("Image") had been posted on Shutterstock's website without his authorization. Def. SUF ¶¶ 30, 33, 45. He identified **one URL** and requested that it be removed. *Id.* ¶ 45; *see also id.*, ¶¶ 30-33; CSUF ¶ 73. The allegedly infringing image is a heavily cropped copy of Plaintiff's Image ("Contributor Image"), which was uploaded to Shutterstock's website by a third-party contributor in India named "Arun Lodhi" ("Contributor"). *Id.*, ¶¶ 36, 46-47; *see also* CSUF ¶ 71. Plaintiff's Image and the Contributor Image are shown side-by-side below, with the

Contributor Image including the watermark that Shutterstock applies to every image available for license on its website. *Id.*, ¶ 40.



| Plaintiff's Image | Contributor Image |
|---|---|

Upon review of Plaintiff's takedown notice, Shutterstock expeditiously removed the Contributor Image from the identified URL and de-indexed and and withdreww it from licensing. *Id.*, ¶¶ 22, 50; CSUF ¶ 70.   As of May 11, 2021, the Contributor Image was not visible at the identified URL and could not be accessed through its API.   *Id.*, ¶ 51; Zambrowski Opp. Decl., ¶¶ 31, 34.   In response to Plaintiff's vague claims that the Contributor Image was still up on Shutterstock's website, Shutterstock voluntarily searched and removed the thumbnails it found lingering on its edge cache servers.   Def. SUF ¶¶ 58-61.   By September 22, 2021, Shutterstock had removed all traces of the Contributor Image and terminated the Contributor's account.   *Id.*, ¶ 63. The Contributor Image was rarely viewed and never licensed; thus, the high-resolution, unwatermarked copy of the Contributor Image was never accessible or provided to anyone.   *Id.*, ¶¶ 43, 52-54; CSUF ¶ 69.

    D.    <u>Plaintiff's Complaint</u>

On October 6, 2021, Plaintiff filed the operative First Amended Complaint for (1) direct copyright infringement; (2) contributory and/or vicarious copyright infringement; and (3) falsification and/or removal of copyright management information ("CMI") under 17 U.S.C.

§ 1202.[2]  Dkt. No. 14.  Plaintiff and Shutterstock seek summary judgment on these claims (Dkt.

Nos. 50, 52), and the undisputed record establishes it should be granted in Shutterstock's favor.

## ARGUMENT

## I.  THE DMCA SHIELDS SHUTTERSTOCK FROM DIRECT AND SECONDARY COPYRIGHT INFRINGEMENT LIABILITY

As set forth in Shutterstock's brief in support of its Motion for Summary Judgment (Dkt.

No. 51 (cited herein as "Moving Brief"), pp. 5-15), the undisputed evidence establishes that

Shutterstock meets every requirement for safe harbor under the DMCA, thus completely shielding

Shutterstock from liability on Plaintiff's claims for direct and secondary (and, certainly, willful)

copyright infringement.  Nothing that Plaintiff argues in his Motion requires a different outcome.

### A.  Shutterstock Fits The Broad Definition of A "Service Provider."

As set forth in Shutterstock's Moving Brief (pp. 6-7), Shutterstock plainly qualifies as a

"service provider" within the meaning of 17 U.S.C. § 512(k)(1)(B).  "This definition encompasses

a broad variety of Internet activities," *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724,

744 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir.

2014), including the operation of a website like Shutterstock's that allow users to upload and share

content.  Def. SUF ¶¶ 5-6; *see, e.g.*, *Wolk*, 840 F. Supp. 2d at 744 (website that "hosts and allows

online sharing of photos and videos at the direction of users" is a "service provider"); *Obodai v.

Demand Media, Inc.*, No. 11 Civ. 2503 (PKC), 2012 WL 2189740, at *4 (S.D.N.Y. June 13, 2012)

("website that permits users to post and share materials" is a "service provider"), *aff'd sub nom.

Obodai v. Cracked Ent. Inc.*, 522 F. App'x 41 (2d Cir. 2013); *Viacom Int'l Inc. v. YouTube, Inc.*,

718 F. Supp. 2d 514, 518 (S.D.N.Y. 2010) ("YouTube is a service provider"), *aff'd in relevant*

---

[2] Plaintiff's Motion (at pp. 23-25) makes clear that he is asserting violation of § 1202(a), not § 1202(b).

*part*, 676 F.3d 19 (2d Cir. 2012).  Plaintiff offers no valid reason why Shutterstock should be excluded from this definition, and his scattershot reasons are neither supported nor relevant.

*First*, Plaintiff argues that Shutterstock is not a "service provider" because it "directly license[s] copyrighted material" to the public. Mot., p. 29.  But this argument is premised on *Agence France Presse v. Morel*, 934 F. Supp. 2d 547 (S.D.N.Y. 2013), which is not only factually off-point, but recognized as an "outlier" and "wrongly decided."  *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, No. 16 Civ. 4587 (SVW) (KS), 2017 WL 2729584, at *6 (C.D. Cal. May 1, 2017) ("*Morel* is an outlier for a reason:  its analysis is not persuasive."); E-Commerce and Internet Law, Definition of a Service Provider, § 4.12[2] (2020 update) (*Morel* was "wrongly decided" and its "crimped definition of *service provider*" is "at odds with the plain terms of the statute," "the broad construction of the statute given by appellate courts," and "all prior court opinions construing the term").[3]  Other courts to address the issue have held, correctly, that websites that directly license content or sell products to the public qualify as "service providers" and thus for the § 512(c) safe harbor.  *See, e.g.*, *Zazzle*, 2017 WL 2729584, at *6 (website that "directly manufactur[es] and sell[s] physical products bearing the user-submitted images" is a "service provider"); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1088 (C.D. Cal. 2001) ("eBay clearly meets the DMCA's broad definition of online 'service provider'"); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1100 (W.D. Wash. 2004) (Amazon is a "service provider").

*Second*, and relatedly, Plaintiff argues that Shutterstock is not a "service provider" because

---

[3] *Morel* also is inapposite.  In *Morel*, the court suggested that a defendant would not be eligible for the safe harbor if the evidence showed that ***defendant itself*** uploaded the content at issue, *Morel*, 934 F. Supp. 2d at 567, whereas here, there is no dispute that the image at issue was uploaded by a third-party contributor (Def. SUF, ¶¶ 31, 33; *see also* CSUF ¶¶ 31, 33).  *See Zazzle*, 2017 WL 2729584, at *7 (distinguishing *Morel* on the ground that the images at issue in the case "where uploaded by third-party users").

it "directly sell[s] *its own products* in the form of subscriptions and licenses" with "no third party involved." Mot., p. 30. This is misleading. Shutterstock does not create any of its own content to sell on its contributor platform. *See* Zambrowski Opp. Decl., ¶ 5. It provides this platform as a service for *third parties to sell their content* to the public, who may choose from Shutterstock's various licensing models. CSUF ¶ 65. Of course, customers do not pay Shutterstock for subscriptions and licenses in the abstract: they pay for access to content uploaded by third parties. In any event, Plaintiff's argument that a direct seller is ineligible for safe harbor is not well-supported. He relies on *Gardner v. CafePress Inc.*, 13 Civ. 1108 (GPC), 2014 WL 794216 (S.D. Cal. Feb. 26, 2014), but in the same paragraph cites a case in which the court found *Gardner* to be "unpersuasive" and refused to "impose such a requirement." *Zazzle*, 2017 WL 2729584, at *7.

*Third*, Plaintiff points to the fact that Shutterstock is a "for-profit platform" that "make[s] money." Mot., p. 29. This does not exclude Shutterstock from "service provider" status. Even Amazon, one of the most profitable companies in the world, "fall[s] squarely within the broad scope of the § 512(k)(1)(B) definition of 'service provider.'" *Corbis*, 351 F. Supp. 2d at 1100.

*Fourth*, Plaintiff contends that Shutterstock is not a "service provider" because it "reviews, approves, publishes to its public site, copies, distributes, and licenses [user-uploaded] images." Mot., p. 30. But this theory would eviscerate the § 512(c) safe harbor. Not only does the DMCA expressly forbid conditioning the safe harbor on "a service provider monitoring its service," 17 U.S.C. § 512(m), but it is clear from every case cited above that what Plaintiff describes are classic "service provider" activities. *See, e.g.*, *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 41 (2d Cir. 2012); *Wolk*, 840 F. Supp. 2d at 744.

*Finally*, Plaintiff's contention that Shutterstock's third-party contributors are not "users" for DMCA purposes (Mot., p. 30) has no bearing on whether Shutterstock qualifies as a "service

provider." Indeed, the applicable definition of "service provider" does not even include the term "user." *Cf.* 17 U.S.C. § 512(k)(1)(B) ("As used in this section, other than subsection (a), the term 'service provider' means a provider of online services or network access, or the operator of facilities therefor"). In any event, it is clear that Shutterstock's contributors *are* "users." This term has been construed broadly and includes content creators (like Shutterstock's contributors) that store and/or distribute their content through a service provider's platform, regardless of whether they are paid. *See, e.g.*, *Rosen v. Hosting Services, Inc.*, 771 F. Supp. 2d 1219, 1221 (C.D. Cal. 2010) (photographer was "user" within the meaning of the DMCA); *Zazzle*, 2017 WL 2729584, at *1 (individuals who "upload images" to website and are "pa[id] a royalty" "[w]hen an order is placed" are "users"). Shutterstock's contributors are not "vetted" or "verified" (Mot., p. 30; *contra* Def. SUF ¶ 4; Zambrowski Opp. Decl., ¶ 18), and this, too, is immaterial and legally unsupported.

    B.    Shutterstock Meets The Other Threshold Requirements For DMCA Safe Harbor.

Having established itself as a "service provider," Shutterstock remains generally eligible for DMCA safe harbor protection as long as (1) it has adopted and reasonably implemented a policy for terminating repeat infringers; and (2) does not interfere with "standard technical measures." 17 U.S.C. § 512(i). As set forth in Shutterstock's Moving Brief (pp. 7-8), Shutterstock easily meets each of these requirements, and nothing in Plaintiff's Motion establishes otherwise.

        1.    Shutterstock Reasonably Implements Its "Repeat Infringer" Policy.

Shutterstock has adopted and reasonably implemented a policy for terminating repeat infringers in compliance with § 512(i)(1)(A). *See* Def. SUF ¶¶ 17-19. Plaintiff's contention that "Shutterstock has adduced no evidence of a sufficient 'repeat infringer' policy" (Mot., p. 32) is blatantly false. Shutterstock not only produced copies of its Contributor Terms of Service setting forth its policy for terminating infringers' accounts (Zambrowski MSJ Decl., Exs. A & B), but also

produced its policy for submitting DMCA takedown notices (*id.*, Ex. E) and proof that it terminates "repeat offender[s]" in appropriate circumstances (Lackman Opp. Decl., Ex. C, pp. 63:20-65:16), including the Contributor at issue, whose account Shutterstock terminated after just one notice (Def. SUF ¶ 63) . This is enough to establish that Shutterstock has met this requirement. *See, e.g.*, *Wolk*, 840 F. Supp. 2d at 744 (requirement met where defendant had "a policy under which copyright holders can submit a take-down notice," posted it "on [its] website," and "remove[d] the infringing material" when appropriate); *Capitol Records, Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 637 (S.D.N.Y. 2011) (same, where defendant had "a system for responding to takedown notices," did "not interfere with the copyright owners' ability to issue notices," and "terminate[d] users who repeatedly or blatantly infringe[d]"). Plaintiff submits no valid reason to hold otherwise.

*First*, unlike the cases that Plaintiff cites, Shutterstock keeps records sufficient to identify repeat infringers and regularly terminates contributors' accounts due to infringing activity. *See* Zambrowski Opp. Decl., ¶ 15; *contra* Mot., pp. 32-33 (citing *Capitol Recs., LLC v. Escape Media Grp., Inc.*, No. 12 Civ. 6646 (AJN), 2015 WL 1402049, at **6, 10 (S.D.N.Y. Mar. 25, 2015) (unlike Shutterstock, defendant "fail[ed] to keep adequate records of infringement" and "has not and will not terminate a repeat infringer's account regardless of the level of repeat infringement"); *Disney Enters., Inc. v. Hotfile Corp.*, No. 11 Civ. 20427, 2013 WL 6336286, at *24 (S.D. Fla. Sept. 20, 2013) (defendant "did not act on receipt of DMCA notices and failed to devise any actual policy of dealing with those offender"); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1178 (C.D. Cal. 2002) (defendant took "great pains to avoid shouldering the burdens of the copyright regime, all the while profiting from pirates")).

*Second*, Shutterstock's use of "fake names" when responding to takedown notices in no way "obfuscates [the implementation of] its DMCA policies." Mot., p. 33. In fact, Shutterstock

decided to use what Plaintiff aggressively dubs "fake names" (what Shutterstock's witness referred to as "aliases") not only to protect the privacy of its employees, but also to ensure that takedown notices are properly submitted to Shutterstock.  *See* Zambrowski Opp. Decl., ¶ 16.

*Finally*, the handful of copyright infringement lawsuits brought against Shutterstock does not somehow "evidenc[e] [a] policy failure."  Mot., p. 33.  The various lawsuits cited either have nothing to do with the contributor platform or are part of an orchestrated campaign by Plaintiff's counsel to—as here—attempt to get courts to change the law in the face of express statutory language and Second Circuit (and other circuit) precedent to the contrary.  *See* CSUF ¶ 60.[4]

### 2.   Shutterstock Does Not Interfere With Standard Technical Measures.

As discussed in Shutterstock's Moving Brief (p. 8), Shutterstock cannot interfere with any "standard technical measures . . . used by copyright owners to identify or protect copyrighted works" because, currently, it is undisputed that none exist.  17 U.S.C. § 512(i)(2).[5]  Plaintiff nevertheless argues that Shutterstock "frustrated" a "standard technical measure" by "strip[ping] the metadata . . . from every photograph that it procures and approves for use on its site," thereby "obscur[ing] important author and copyright information."  Mot., p. 33.  This characterization is

---

[4] This is not uncommon for Plaintiff's counsel's firm, which proudly boasts about being the largest filer of copyright infringement suits in the country.  *See* Cullins, *Has This Man Sued You? A "Copyright Troll" Takes on Hollywood*, The Hollywood Reporter (Apr. 6, 2018) https://www.hollywoodreporter.com/business/business-news/has-man-sued-you-a-copyright-troll-takes-hollywood-1099156/ (placing firm in category with sanctioned, formerly-prolific copyright attorney Richard Liebowitz).  For example, the firm sought to challenge well-established copyright law on digital linking, which the court swiftly dismissed on the pleadings for failure to plead any facts other than the defendant provided the means for a third party "to accomplish an infringing activity."  *Playboy Entm't Grp. Inc. v. Happy Mutants, LLC*, 17 Civ. 8140 (FMO) (PLAx), 2018 WL 2315936, at *2 (C.D. Cal. Feb. 14, 2018).

[5] To meet the definition, the "technical measure" must "have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry *standards process*," *id.* (emphasis added), but such a "standards process" has never occurred.

misleading,[6] but does not render Shutterstock ineligible for safe harbor in any event because Plaintiff does not and cannot "come close to establishing that there is a broad consensus among copyright owners and service providers that preserving metadata should be [ ] considered [a 'standard technical measure']." *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 44 (2d Cir. 2019) (Walker, J. concurring) ("[plaintiff] has not shown that [defendant's] stripping of metadata disqualifies it from safe harbor protection"); *see also, e.g.*, *Wolk*, 840 F. Supp. 2d at 745 (no interference where defendant provided "tools that allow[ed] users to obliterate, hide or crop out the copyright watermarks on the electronic images uploaded").[7]   Notably, whether the allegedly "stripped" metadata may be CMI for § 1202 purposes is not relevant here.  *See Polyvore*, 922 F.3d at 57 ("there is no indication in § 512(i) that Congress intended that items that courts find to be 'copyright management information' for § 1202 purposes somehow count as 'standard technical measures' for § 512(i) purposes").  Thus, Shutterstock generally is eligible for safe harbor.

C.   Shutterstock Meets the Specific Conditions For § 512(c) Safe Harbor.

1.   Shutterstock Stores Materials On Its System At The Direction of Users.

The § 512(c) safe harbor is available when the alleged infringement occurs "by reason of the ***storage at the direction of a user*** of material that resides on a system or network controlled or operated by or for the service provider"  17 U.S.C. § 512(c) (emphasis added).  Plaintiff does not and cannot dispute that the Contributor Image was submitted to Shutterstock by the third-party Contributor.  *See* Def. SUF ¶ 36; *see also* Mot., p. 30 ("it is undisputed that Shutterstock's

---

[6] Shutterstock does not "strip" metadata; its automated system separates out any metadata embedded in contributor-supplied images during the ingestion process and, in any event, there was no CMI in the metadata associated with the Contributor Image when it was uploaded to Shutterstock's system.  *See* Zambrowski Opp. Decl., ¶ 11.

[7] "Although [Shutterstock] has the burden of proving its affirmative defense of its entitlement to the safe harbor of § 512(c), [Plaintiff], as the party asserting that metadata is a standard technical measure, has the burden of proving it."  *Polyvore*, 922 F.3d at 56 n.9 (internal citation omitted).

11

contributors submit photographs"). [8]  Instead, Plaintiff argues that Shutterstock is ineligible for the safe harbor because it "played a *major role* in reviewing, selecting, approving, modifying[,] and publishing the [Contributor Image] on its publicly available site." Mot., p. 3 (emphasis in original). Plaintiff is wrong on the facts and the law.

Plaintiff mischaracterizes the process by which images (including the Contributor Image) are uploaded to Shutterstock's contributor platform.  Shutterstock does ***not*** "select[]," "modify[]," "supervis[e]," "curat[e]," "control," or play any "major role" in the images uploaded by contributors.  Mot., p. 35; *contra* Zambrowski Opp. Decl., ¶ 4.  Rather, the thousands of images submitted per day are uploaded at the volition of the contributor and are subject to a mere screening by Shutterstock for obvious issues.  *See id.*, ¶¶ 4, 9.  This does not disqualify Shutterstock from § 512(c) safe harbor.  *See Viacom*, 676 F.3d at 35 (safe harbor not conditioned on service provider "monitoring its service or affirmatively seeking facts indicating infringing activity") (quoting 17 U.S.C. § 512(m)(1)); *see also, e.g., Ventura Content, Ltd. v. Motherless, Inc.,* No. 11 Civ. 5912 (SVW) (FMO), 2013 WL 11237204, at *2 (C.D. Cal. July 3, 2013) (defendant that "employs its own review process designed to ensure that uploaded content does not violate its terms of use" is eligible for § 512(c) safe harbor), *aff'd*, 885 F.3d 597 (9th Cir. 2018); *Costar Grp. Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 702 (D. Md. 2001) (defendant that reviews uploaded content "for obvious infringements" is eligible for § 512(c) safe harbor), *aff'd*, 373 F.3d 544 (4th Cir. 2004). [9]

---

[8] As discussed *infra*, Shutterstock's contributors are "users" for purposes of the DMCA.

[9] Of the three cases that Plaintiff cites for his argument that the Contributor Image was not "stored at the direction of the user," only one involves the DMCA—and it ***supports*** Shutterstock's position that it was.  *See* Mot. pp. 34-35 (citing *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1056 (9th Cir. 2017) (material "stored at the direction of the user" where, as here, "service provider carried out activities that were 'narrowly directed' towards enhancing the accessibility of the posts," including "screen[ing] for infringement or other harmful material like pornography")).

The alleged facts that Shutterstock "approve[d]," or that its system "publish[ed]" and "display[ed]" watermarked and/or thumbnail versions of the Contributor Image (which Plaintiff cannot dispute was itself never "published" or "displayed") on its website (Mot., p. 35), does not disqualify Shutterstock from the safe harbor, either.  "The reason one has a website is so that others may view it."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1017-19 (9th Cir. 2013); *accord Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 607 (9th Cir. 2018) ("'storage at the direction of a user' affords safe harbor protection to sites where users can look at other users' uploads") (collecting cases).  Thus, courts have made clear that service providers do not lose the protection of the § 512(c) safe harbor by engaging in activities that "facilitat[e] access to user-stored material." *Viacom*, 676 F.3d at 39 (defendant entitled to § 512(c) safe harbor even though it "copie[d]" user-submitted videos to make them "viewable to over the Internet" and "deliver[ed] copies . .  to a user's browser cache in response to a user request"); *accord UMG s*, 718 F.3d 1006 at 1017-19 (the § 512(c) safe harbor "includes activities that go beyond storage" such as "mak[ing]," "transmit[ting]," and "download[ing]" copies and "modify[ing] user-submitted material to facilitate storage and access").

2.   Shutterstock Expeditiously Removed The Contributor Image Upon Review of Plaintiff's Takedown Notice And Was Not Required To Do More.

Plaintiff concedes that Shutterstock had no "actual" or "red flag" knowledge of the specific alleged infringement prior to Plaintiff's takedown notice.  Thus, Shutterstock qualifies for the § 512(c) safe harbor as long as it acted "expeditiously to remove, or disable access to, the material that [Plaintiff] claimed to be infringing or to be the subject of infringing activity . . . upon notification of [the] claimed infringement." 17 U.S.C. § 512(c)(1)(C).  Importantly, "[s]ervice providers must take down the ***specific infringing material identified in the notice*** but are not required to search for and take down other material that may infringe the identified copyrighted

works." *MP3tunes*, 821 F. Supp. 2d at 642-43 (service provider is not obligated to remove allegedly infringing material unless the plaintiff "provide[s] sufficient information—namely, additional web addresses—for [the service provider] to locate [the] infringing material") (emphasis added and citation omitted) (citing *Viacom*, 718 F. Supp. 2d at 529 (no obligation to remove unless plaintiff provides "'information reasonably sufficient to permit the service provider to locate the material,'" such as the "(URL) (i.e., web site address)") (citations omitted)); *see also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) ("DMCA notification procedures place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright").

Plaintiff indisputably identified **one URL** in his takedown notice. *See* CSUF ¶¶ 67-68. Upon review, Shutterstock expeditiously took steps to remove the Contributor Image from the identified URL within four business days, and thus qualifies for safe harbor. *See* Def. SUF ¶¶ 22, 50. Indeed, there is no genuine dispute that, as of May 11, 2021, the Contributor Image no longer appeared at the identified URL. *Id.*, ¶ 51; CSUF ¶ 70.[10] Shutterstock had no obligation to do anything more.

---

[10] Plaintiff implies that this was not "expeditious" because he sent the notice on April 1, 2021. *See* Mot., p. 36. While a software error briefly delayed the assignment of Plaintiff's takedown notice to a Shutterstock employee, once assigned and reviewed, Shutterstock promptly removed the Contributor Image in compliance with the DMCA. *See* Def. SUF ¶¶ 50-51; Zambrowski MSJ Decl., ¶ 35. The Contributor Image was not licensed or even viewed once at the identified URL in the interim. *See* Def. SUF ¶¶ 51, 54. Moreover, Plaintiff never followed up with Shutterstock regarding the notice or otherwise took issue with the response thereto on or prior to May 11, 2021. *See* Zambrowski Opp. Decl., ¶ 21. Plaintiff's assertion that this renders Shutterstock ineligible for safe harbor is unsubstantiated. *See* Mot., p. 36 (citing *Kinsley v. Udemy, Inc.*, No. 19 Civ. 4334 (JSC), 2021 WL 1222489, at *5 (N.D. Cal. Mar. 31, 2021) ("Ninth Circuit has set no rule or standard governing what constitutes expeditiousness"); *Feingold v. RageOn, Inc.*, 472 F. Supp. 3d 94, 102 (S.D.N.Y. 2020) (unlike here, defendant responded to notice that it would remove infringing material in twenty-four hours, but did not do so for weeks and continued to sell)).

Similar to the plaintiffs in the in-Circuit cases *MP3tunes* and *Viacom*, Plaintiff complains that Shutterstock removed only the specific copy of the Contributor Image identified in the takedown notice, and not other copies which purportedly infringe the same image until "over five months" later.  Mot., p. 36.  Plaintiff is referring to the thumbnails that Shutterstock discovered on its own and promptly removed from its edge cache servers in September 2021.  *See* Def. SUF ¶¶ 58-63.  Plaintiff admits that these thumbnails were located at "three different URLs" (Mot., p. 26), which he never identified in a DMCA-compliant takedown notice or otherwise.  *See* CSUF ¶¶ 35, 67-68; Zambrowski Opp. Decl., ¶¶ 22, 24.  These thumbnails were not linked to anything on Shutterstock's website and could not be found by the general public.  *Id.*, ¶ 24.  In any event, Shutterstock "cannot be held liable for its failure to [earlier] remove [these lingering thumbnails] for which [] Plaintiff failed to provide proper notice." *Wolk*, 840 F. Supp. 2d at 747 (rejecting notion that "one notice of infringement would apply to all instances of that image appearing on the website"); *see also, e.g.*, *Viacom*, 718 F. Supp. 2d at 528 (rejecting complaint that defendant "remove[d] only the specific clips identified in DMCA notices, and not other clips which infringe the same works").

Lastly, Plaintiff argues that Shutterstock is disqualified from safe harbor because it continued to "display[] and distribute[] the [Contributor Image] on its partner sites, like TinEye, HelloRF, and StockFresh, until at least July 13, 2022."  Mot., p. 36.  This argument fails as a matter of law because, as with the thumbnails, Plaintiff never sent Shutterstock a takedown notice that specifically identified the allegedly infringing uses on these so-called "partner sites."  *Cf.* CSUF ¶¶ 55-67; Zambrowski Opp. Decl., ¶ 22.[11]  Moreover, even if he did, Shutterstock would have no obligation nor any practical ability to comply.  *Id.*  In addition, Plaintiff has ***no evidence*** that the

---

[11] Tellingly, there is no evidence that Plaintiff sent takedown notices to any of these "partner sites."

Contributor Image was displayed on these "partner sites" via Shutterstock's API at any time after Plaintiff's takedown notice, let alone "fifteen months *after*."  Mot., p. 36 (citing Burroughs Decl., ¶ 6, Exs. 11-12, 21).[12]  In fact, Shutterstock's removal of the Contributor Image from its own website on May 11, 2021 automatically disabled HelloRF, StockFresh, and TinEye's access to same through Shutterstock's API.  *See* Zambrowski Opp. Decl., ¶¶ 31, 34.  To the extent the Contributor Image remained on these third-party websites after May 11, 2021, it is because the website created and/or maintained a thumbnail without Shutterstock's permission.  *Id.*, ¶¶ 35-36.

### 3.  Shutterstock Had No Right Or Ability To Control The Alleged Infringement And Did Not Financially Benefit From It.

As set forth in Shutterstock's Moving Brief (pp. 12-14), the undisputed facts establish that Shutterstock did "not receive a financial benefit directly attributable to" the Contributor Image, and does not have the requisite "right and ability to control" its users' infringing activities. 17 U.S.C. § 512(c)(1)(B).  Plaintiff misconstrues both elements beyond recognition.

*First*, Plaintiff contends that Shutterstock receives the requisite "financial benefit" because it "sells licenses and subscription packages for the photographs offered on its site" and "profits" from "contract[s] with third party providers such as [TinEye, HelloRF, and StockFresh]."  Mot., p. 37 (alteration in original and citation omitted).  But these are ***legitimate business*** activities that relate generally to Shutterstock's overall site.  To be disqualified from the § 512(c) safe harbor,

---

[12] These exhibits do not show the Contributor Image displayed via Shutterstock's API.  Exhibit 11 contains an undated screenshot of TinEye.com displaying an archival thumbnail of the Contributor Image that TinEye apparently created, relying on fair use, without Shutterstock's approval.  *See* Zambrowski Opp. Decl., ¶ 36.  Exhibit 12 contains an undated screenshot of StockFresh.com that does not show the Contributor Image, and even according to Plaintiff's counsel, shows, at most, "that the [Contributor Image] was displayed there" at some unidentified time.  Burroughs Decl., ¶ 6.  Exhibit 21 shows a thumbnail of the Contributor Image that apparently remained on HelloRF's servers due to HelloRF's failure to refresh their cache, which they are permitted to do for technological reasons, but are supposed to refresh routinely.  *See* Zambrowski Opp. Decl., ¶ 35.

Shutterstock must have received a "financial benefit" that is "directly attributable to the ***infringing activity***," 17 U.S.C. § 512(c)(1)(B) (emphasis added), including at least "some revenue [ ] distinctly attributable to the infringing material at issue," *Ventura*, 885 F.3d at 613. *See also* H.R. Rep. No. 105–551, pt. 2, at 54 (1998) ("In general, a service provider conducting a legitimate business would not be considered to receive a 'financial benefit directly attributable to the infringing activity' where the infringer makes the same kind of payment as non-infringing users of the provider's service."). This indisputably is not the case. Indeed, the record is clear that Shutterstock—whose platform has a rate of mere claims at below a fraction of a percent and does not tolerate infringement—does not charge more for or promote the availability of infringing content (Def. SUF ¶ 28), and made no money whatsoever from the Contributor Image, either directly or through any contractual relationship (*id.*, ¶ 52).[13] *See, e.g.*, *Wolk*, 840 F. Supp. 2d at 748 (defendant is entitled to § 512(c) safe harbor because its "profits are derived from the service [it] provide[s], not a particular infringement," and rejecting argument that it "receive[d] a financial benefit from infringements from a profit-sharing relationship with [another party]").

     *Second*, Plaintiff points to the fact that Shutterstock has the "right," "ability," and complete "discretion" to "approve," "remove," and "block access" to contributor-uploaded materials (Mot., pp. 37-38), but the Second Circuit has made it clear that more is required to establish the "right and ability to control" under § 512(c)(1)(B). *See Viacom*, 676 F.3d at 38 ("'right and ability to

---

[13] That "Shutterstock exploited the [Contributor Image] to draw customers" (Mot., p. 37) is a bold (and unsupportable) assertion considering only two people ever viewed it on Shutterstock's website. *See* Def. SUF ¶ 54. Even the one case that Plaintiff cites for this assertion concluded that there was no basis to find "that the availability of infringing photographs . . . drew customers to [the defendants'] websites." *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, No. 18 Civ. 03384 (SAG), 2021 WL 5359671, at *24 (D. Md. Nov. 17, 2021) (and citation omitted). Further, it is simply implausible if not absurd to believe that any customer would come to Shutterstock and pay a fee to license infringing content that could subject the customer to a claim.

control' infringing activity under § 512(c)(1)(B) 'requires something more than the ability to remove or block access to materials posted on a service provider's website'") (citation omitted); *accord Ventura*, 885 F.3d at 613 (no "right and ability to control" even though defendant "could take down all of [the website's] content, infringing or not, and bar any uploads, infringing or not"). Nothing in the record suggests that Shutterstock exerts any "substantial influence on the activities of [its contributors]," *Viacom*, 676 F.3d at 38, let alone that it "tells its [contributors] what to upload" or "heavily curates" uploaded content as Plaintiff asserts (Mot., p. 38). It is the contributor who decides what content to upload and, barring any obvious issues, it is automatically posted to Shutterstock's website for license. *See* Def. SUF ¶¶ 9-10; Zambrowski Opp. Decl., ¶ 4. Further, Shutterstock controls its API, but has no control over the activities of the third-party websites that access it (*e.g.*, TinEye, HelloRF, StockFresh). *Id.*, ¶¶ 27, 35-36; CSUF ¶ 72. Thus, this requirement is met.[14]

### 4.    Shutterstock Has Had A Designated DMCA Agent At All Relevant Times.

There can be no legitimate dispute that Shutterstock has had a designated agent for receiving takedown notices at all relevant times. *See* Def. SUF ¶ 19; 17 U.S.C. § 512(c)(2) (service provider must "mak[e] available . . . including on its website in a location accessible to the public, and by providing to the Copyright Office,  substantially" "the name, address, phone number, and electronic mail address of the agent"). Irrefutable document evidence establishes that Shutterstock provides contact information for its designated agent on its website (Zambrowski Opp. Decl., ¶ 14)

---

[14] Nearly all of the cases that Plaintiff cites for this requirement support Shutterstock's position. *See, e.g.*, Mot., pp. 36-38. The others are distinguishable. *See id.* (citing *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) (defendant ineligible for safe harbor where it marketed itself as a pirate site for free access to obviously infringing content); *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009) (discussing "direct financial benefit" for vicarious liability); *Morel*, 934 F. Supp. 2d at 575 (same)).

and that such information is listed in the Copyright Office's public directory (*id.*).  This is sufficient to satisfy § 512(c)(2) as a matter of law, *Obodai*, 2012 WL 2189740, at *9 (requirement met where "[a]s part of [the website's] 'Terms and Conditions,' the defendant list[ed] the physical and e-mail addresses of its copyright agent"),[15] even regardless of the purportedly (but actually not) inconsistent deposition testimony of Shutterstock's corporate representative.[16]

      D.     <u>Plaintiff's Failure To Follow Up In Response To An Objection Is Not "Discovery Misconduct" By The Other Side.</u>

Confronted with a demonstrably meritless claim, Plaintiff resorts to the desperate and disingenuous argument that Shutterstock should be precluded from offering any DMCA safe harbor defense due to its purported "discovery misconduct."  Mot., pp. 39-42.  Plaintiff's false assertion is not only overshadowed by his own counsel's actual discovery misconduct, it is easily refuted by the record.[17]

---

[15] The cases that Plaintiff cites for its argument that "Shutterstock failed to properly designate a DMCA agent" support Shutterstock's position or are distinguishable. Mot., p. 39 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, No. 05 Civ. 4753 (AHM) (SHx), 2009 WL 1334364, at *8 (C.D. Cal. May 12, 2009) (granting safe harbor); *Disney Enters.*, 2013 WL 6336286, at *26 (S.D. Fla. Sept. 20, 2013) (unlike Shutterstock, defendant did not register agent with the Copyright Office; *BWP Media USA Inc. v. Hollywood Fan Sites LLC*, 115 F. Supp. 3d 397, 402 (S.D.N.Y. 2015) (same)).

[16] The Court may disregard Plaintiff's attempt to construe Mr. Zambrowski's testimony as an admission by Shutterstock that it does not have a DMCA agent, especially given that the question posed was ambiguous. *See* Mot., p. 39 (citing Burroughs Decl., Ex 15, pp. 85:13-15, 84:12-85:7); *contra* Zambrowski Opp. Decl., ¶ 14; *Interdonato v. Bae Systems, Inc.*, 16 F. App'x 25, 27 (2d Cir. 2001) (district court properly considered affidavit on summary judgment despite claim that it contradicted deposition where there was independent corroborating evidence in the record).

[17] Their arguments are particularly misplaced given that if anyone engaged in discovery misconduct, it was the Plaintiff—*i.e.* (1) their refusal to respond to defense counsel regarding scheduling Plaintiff's deposition, requiring defense counsel to seek court intervention for a simple scheduling matter (Dkt. Nos. 27-29, 32); (2) their attempt to circumvent the Court's Order mandating that Plaintiff, who was apparently in Indonesia, be deposed in one day following Eastern Standard Time (Dkt. No. 41; *see also* Lackman Opp. Decl., Ex. A, pp. 24:8-22, 104:3-110:4, 104:12-105:8; 108:20-21); (3) their false representation that there was no agreement to produce between National Geographic and Plaintiff (an agreement under which Plaintiff took the image at issue, and was ultimately produced after the close of discovery after continued demands); and (4) their maintained position and refusal to produce correspondence with the Copyright Office

Indeed, Plaintiff's counsel's utter failure to follow-up in response to Shutterstock's discovery objections is hardly considered "discovery misconduct."  First, Shutterstock did not "defy" the subpoena to Sejal Patel Richbourg, the former Assistant General Counsel of IP and Litigation at Shutterstock, who left the company in July, 2021.  *See* Lackman Opp. Decl., Ex. D. Plaintiff sent a Subpoena to Ms. Richbourg on July 7, 2022.  *See* Burroughs Decl., Ex. 17.  On July 15, 2022, Defendants sent to Plaintiff's counsel its objections to the subpoena on behalf of Ms. Richbourg, on the grounds that, *inter alia*, any testimony would be privileged, and that as such, it was unnecessary, harassing, and disproportionate to the needs of the case.  *See* Lackman Opp. Decl., Ex. D.  Plaintiff's counsel never followed up, nor did they provide any information suggesting that the deposition was to move forward.  *Id.*, ¶ 4.[18]  Second, Plaintiff claims that Shutterstock engaged in misconduct by failing to produce the exhibits to the deposition transcript in another, unrelated action of a Shutterstock employee, Alexandra Zusman, based on an agreement between counsel that Plaintiff "receive the deposition transcript."  Burroughs Decl., Ex. 19, pp. 5-6.  Shutterstock provided the transcript, and Plaintiff's counsel complained that the exhibits were not included, when they were not asked for, now claiming that Plaintiff was somehow "refused access" to the exhibits.  *Id.*, pp. 2-5.  Lastly, counsel for Plaintiff did not request or follow up on the "content review guidelines" that Shutterstock's Rule 30(b)(6) witness referred to, did not request those documents during the deposition (or thereafter) or ask counsel if they were being withheld on any basis (assuming they were even written guidelines), despite there being

---

in connection with the copyright registration at issue despite continued demands, even though the certificate itself states that there indeed is correspondence.

[18] In another pending case on a similar schedule, Shutterstock offered a declaration from Ms. Richbourg. Counsel for Plaintiff (the same counsel in the other case) refused.  *Id.*, ¶ 4.

nearly two weeks before the discovery deadline.[19]  Lackman Opp. Decl., ¶ 5.  Instead, counsel for

Plaintiff deliberately chose *not* to follow-up nor seek court any court intervention so that *they* may

"sandbag" Shutterstock for their own failures.

## II.   THE COURT SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK ON PLAINTIFF'S DIRECT COPYRIGHT INFRINGEMENT CLAIM

As discussed *supra*, the DMCA immunizes Shutterstock from liability for direct copyright

infringement.  But assuming *arguendo* that the DMCA somehow does not apply, Plaintiff's direct

copyright infringement claim still fails as a matter of law for two independent reasons.  First,

Shutterstock did not undertake any volitional act that caused the alleged infringement, which is an

important element of direction liability.  Second, and addressed nowhere in Plaintiff's Motion,

Shutterstock's alleged use of Plaintiff's Image is a classic, non-infringing fair use.

### A.   Shutterstock Cannot Be Directly Liable For Copyright Infringement Because It Did Not Engage In Any Volitional Conduct.

As set forth in Shutterstock's Moving Brief (pp. 14-15), the record in this case establishes

that Shutterstock's role in the alleged infringement was too passive and attenuated to impose

liability for direct copyright infringement.  Like Cablevision in *Cartoon Network LP, LLLP v. CSC*

*Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) and Photobucket in *Wolk v. Kodak Imaging Network,*

*Inc.*, 840 F. Supp. 2d 724 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F.

App'x 51 (2d Cir. 2014), Shutterstock did not engage in any "volitional conduct" that "caused" the

alleged infringement, but merely provided a platform that automatically stored and copied, and

displayed thumbnail versions of, the Contributor Image at the direction of the Contributor and so

that it may be available to other users upon request.  *See* Def. SUF ¶¶ 3-9, 36-40; *Cartoon Network*,

---

[19] Indeed, counsel for Shutterstock made other belated requests for discovery on other issues, and that, too, was denied nearly entirely.  *See* Dkt. Nos. 45, 47, 49.

536 F.3d at 131 (rejecting direct copyright infringement claim due to lack of volitional conduct on summary judgment); *Wolk*, 840 F. Supp. 2d at 743 (same); *see also, e.g.*, *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) (finding insufficient "volitional conduct" to impose direct liability for copyright infringement, where defendant "passively stor[ed] material at the direction of users in order to make that material available to other users upon request"); *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081 (9th Cir. 2021) (same, where defendant "provid[ed] only a platform for third-party users to upload, download, and share content"); *CoStar Grp., Inc. v. LoopNet, Inc.* 373 F.3d 544, 550 (4th Cir. 2004) (same, where defendant displayed images posted by user); *Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007) (same, where defendant cached websites that stored infringing materials); *Parker v. Paypal, Inc.*, 16 Civ. No. 4786, 2017 WL 3508759, at *4 (E.D. Pa. Aug. 16, 2017) (same, where defendants stored infringing work on their cloud server).

As set forth below, every purportedly infringing act identified in Plaintiff's Motion is attributable to a fully automated process initiated by the Contributor and/or a user of Shutterstock's website. *See Disney Entersprises, Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1309 (S.D. Fla. 2011) ("courts have repeatedly held that the automatic conduct of software, unaided by human intervention, is not 'volitional.'") (collecting cases).[20]

---

[20] The fact that Shutterstock briefly "reviewed and approved" the Contributor Image prior to posting is inconsequential.  *See* CSUF ¶ 66; *CoStar Grp.*, 373 F.3d at 550 (insufficient volitional conduct for direct liability where defendant's employees reviewed user-submitted materials before posting to its website); *Giganews, Inc.*, 847 F.3d at 670 (same, where "[plaintiff] provide[d] no evidence showing [defendant] . . . selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution").

1.      Shutterstock Did Not Directly Infringe Plaintiff's Reproduction Right.

Plaintiff claims that Shutterstock directly violated his exclusive right to reproduce Plaintiff's Image by creating "multiple sizes" of the Contributor Image, adding "its '[S]hutterstock' watermark," and "publish[ing]" them on "multiple Shutterstock URLs," "its internal server," and "its third-party partner sites."  Mot., p. 17.  Putting aside Plaintiff's caricaturized description of Shutterstock's operations, all of what Shutterstock does in this regard is the function of an automated process that began with the ***Contributor's decision*** to upload the Contributor Image to Shutterstock's platform.[21]  *See* CSUF ¶¶ 65-66.  In making a contributor-supplied image available on Shutterstock's customer-facing website, Shutterstock's system automatically makes multiple-sized, watermarked copies of the image and assigns each copy a unique URL.  Zambrowski Opp. Decl., ¶¶ 12, 32.  Once posted to Shutterstock's website, the image automatically becomes available through Shutterstock's API, such that it may turn up in a search and be displayed (as a link) on any third-party websites that integrate Shutterstock's API.  Zambrowski Opp. Decl., ¶¶ 28-33.  None of this involves any "volitional conduct" on Shutterstock's part.  *See, e.g.*, *Cartoon Network*, 536 F.3d at 132 (insufficient volition to impose direct liability for copyright infringement where defendant provided "a system that automatically produces copies [of user-supplied content] on [customer's] command"); *Disney Enters.*, 798 F. Supp. 2d at 1306 (same, where defendant's servers automatically "ma[d]e five [ ] copies of the [user-]uploaded files" and gave "each copy [ ] a unique link").

2.      Shutterstock Did Not Directly Infringe Plaintiff's Display Right.

Plaintiff claims that Shutterstock directly violated his exclusive right to display Plaintiff's Image by "display[ing] the [Contributor Image] on its website at four URLs" and "directing third parties to display [it] on their websites."  Mot., p. 18.  However, "the display of [user-uploaded]

copyrighted images on a defendant's website does not demonstrate volition" where, as here, the defendant played no role in selecting the images for upload. *Wolk*, 840 F. Supp. 2d at 742-43; *accord Polyvore*, 922 F.3d at 50 ("the volitional conduct requirement is not satisfied when an ISP simply displays user-uploaded images and plays no role in selecting the images") (collecting cases). Plaintiff points to the fact that the Contributor Image was viewed on Shutterstock's website (a mere four times), but this is unavailing. *See Giganews, Inc.*, 847 F.3d at 668 (evidence "shows only that images and thumbnails were accessed through the [defendant's platform]," not "that [defendant]—as opposed to the user who called up the images—caused the images to be displayed"). Moreover, Shutterstock did not "direct" any third party to display the Contributor Image on its website; as discussed above, the Contributor Image was accessible—along with millions of other images—through Shutterstock's API. *See* CSUF ¶ 37.

          3.     <u>Shutterstock Did Not Directly Infringe Plaintiff's Distribution Right.</u>

Plaintiff claims that Shutterstock directly violated his exclusive right to distribute Plaintiff's Image by "transmitt[ing] its webpage—and the [Contributor Image] therein—to the public" (Mot., p. 18), but "[p]roviding a link to a website containing infringing material does not, as a matter of law, constitute direct copyright infringement." *Microsoft Corp. v. Softicle.com*, No. 16 Civ. 2762, 2017 WL 5517379, at *2 (D. N.J. Sept. 29, 2017) (collecting cases).[22] Plaintiff also

---

[21] As discussed *supra*, Shutterstock had no involvement whatsoever in the Contributor's selection and decision to upload the Contributor Image. *See* Zambrowski Opp. Decl., ¶ 4. Plaintiff's cases are distinguishable on this basis. Mot., pp. 17-18 (citing *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 181 (2d Cir. 2018) (defendant "decide[d] what audiovisual content to record [and] copie[d] that content"); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 355 (S.D.N.Y. 2014) ("[d]efendants themselves [allegedly] reproduced the photographs and created thumbnail images," which was enough to show volitional conduct on a motion to dismiss)).

[22] Plaintiff relies exclusively on *APL Microscopic, LLC v. U.S.*, 144 Fed. Cl. 489 (Fed. Cl. 2019), but this case does not hold that a passive act of "distribution" alone satisfies the volitional conduct for infringement liability. *See id.* at 492 (defendant's acts of directly "upload[ing] the [infringing photograph]" to its server, "post[ing] the photograph on its webpage," and passively maintaining

claims that Shutterstock directly "distributed the [Contributor Image] to its paying customers, the public, and third-party sites including TinEye, HelloRF, and StockFresh." Mot., p. 18. However, the Contributor Image was never licensed; thus, the high-resolution, unwatermarked copy of the Contributor Image was never accessible or distributed to anyone (including by any of Shutterstock's so-called "third-party sites"). *See* Def. SUF ¶¶ 43, 52-55. The fact that Shutterstock made the Contributor Image available through its API such that it may be accessed and displayed (as a link) by certain "third-party sites" is not enough for direct liability. CSUF ¶ 39; *see, e.g.*, *Disney Enters.*, 798 F. Supp. 2d at 1306 (insufficient volitional conduct for direct liability where defendant made a profit by charging a membership fee for its site and "allow[ing] third-party sites to post a link that, when clicked, automatically begins to download the file [from the defendant's website]"); *Giganews, Inc.*, 847 F.3d at 669 (no volitional conduct for selling "access to [defendant's] servers, including [the] infringing [ ] images [at issue], for a monthly fee").

4. Shutterstock Did Not Directly Infringe Plaintiff's Right To Create Derivative Works.

Plaintiff contends that Shutterstock violated his "exclusive right to create and authorize derivative works" by "add[ing] a '[S]hutterstock' watermark" to the Contributor Image and distributing it "in multiple sizes and high-resolution."[23] Mot., p. 20. Not only is this placement of a watermark the function of an automated process (CSUF ¶ 32), but such minor, non-aesthetic changes are not enough to create a derivative work. *See Well-Made Toy Mfg. Corp. v. Goffa Int'l*

---

the photograph on display were enough to restart the statute of limitations); *see also Tom Hussey Photography, LLC v. BDG Media, Inc.*, No. 20 Civ. 404 (MN), 2020 WL 7481770, at *3 (D. Del. Dec. 18, 2020) (distinguishing *APL* and "disagree[ing] that a passive act of 'distribution' satisfies the volitional conduct requirement for infringement liability").

[23] As noted *supra*, Shutterstock never displayed or distributed the Contributor Image in high-resolution or without watermarks (except with respect to a very small, extremely low-resolution version of a thumbnail that could not support a watermark). *See also* Def. SUF ¶ 53.

*Corp.*, 210 F. Supp. 2d 147, 158 (E.D.N.Y. 2002) ("[A] work involving changes (such as reproduction in another medium) requiring only 'manufacturing' or 'physical' skill, as opposed to 'artistic' skill, does not merit protection as a derivative work."), *aff'd sub nom. Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*, 354 F.3d 112 (2d Cir. 2003); 1 Melville B. Nimmer, Nimmer on Copyright, Derivative and Collective Works § 3.03[A], 3-8 – 3-9 (2020) ("a change in . . . scale or size of a work . . . [has] been held to be too minimal" to constitute a derivative work).[24]

    B.    <u>Shutterstock Cannot Be Held Liable For Copyright Infringement Because Its Display of The Image Is Protected Under The Fair Use Doctrine.</u>

As set forth in Shutterstock's Moving Brief (pp. 15-20), Shutterstock's alleged use of Plaintiff's Image constitutes a classic fair use as a matter of law. *See Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 41 (S.D.N.Y. 2017) ("Fair use is an affirmative defense to copyright infringement."). Plaintiff does not address this affirmative defense in his Motion. And as discussed in detail in Shutterstock's briefing, it is independently fatal to his copyright infringement claims. Indeed, the undisputed facts establish that each of fair use factors, 17 U.S.C. § 107, weighs in Shutterstock's favor: (1) Shutterstock's purpose in displaying a low-resolution, watermarked copy and thumbnails of the Contributor Image was highly transformative; (2) Plaintiff's Image is more factual than it is creative insofar as it depicts a naturally-occurring scene, and there is no dispute that it was published before the alleged infringement; (3) Shutterstock displayed on a small portion of Plaintiff's Image, which was reasonably necessary in order to accomplish its transformative purpose; and (4) there is no evidence from which a jury could find that Shutterstock's limited use of a heavily cropped, low-resolution, watermarked copy and/or

---

[24] The one case that Plaintiff cites is plainly off-point, and in any event held that the allegedly infringing work was not a derivative work. *See* Mot., p. 20 (citing *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 539 (S.D.N.Y. 2008) (allegedly infringing encyclopedia of elements of its fantasy novel series was not a derivative work within meaning of the Copyright Act)).

thumbnail usurped the traditional market for Plaintiff's Image.  Accordingly, summary judgment should be granted in Shutterstock's favor.

## III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK ON PLAINTIFF'S SECONDARY COPYRIGHT INFRINGEMENT CLAIM

As discussed *supra*, the DMCA § 512(c) safe harbor is a shield not just from direct liability, but also from vicarious and contributory liability for copyright infringement.  For the additional reasons below, Shutterstock is not secondarily liable for copyright infringement as a matter of law.

> 1.    Shutterstock Cannot Be Secondarily Liable Because There Is No Evidence That TinEye, HelloRF, or StockFresh Actually Infringed.

In his Motion, Plaintiff makes clear that his vicarious and contributory copyright infringement claims are premised on "TinEye, HelloRF, and StockFresh's [alleged] exploitation of the [Plaintiff's Image]."  Mot., p. 21; *see also id.*, Mot., p. 23.[25]  But Plaintiff has not established that any of these third parties actually infringed his purported copyright, and thus, Shutterstock cannot be secondarily liable as a matter of law.  *See Hartmann v. Amazon.com, Inc.*, No. 20 Civ. 4928 (PAE), 2021 WL 3683510, at *6 (S.D.N.Y. Aug. 19, 2021); *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998).  Indeed, the ***only evidence*** that the Contributor Image was ever displayed on any of these third-party websites is a screenshot of reverse-image search on TinEye (Burroughs Decl. ¶ 6, Ex. 11), which apparently created an archival thumbnail copy without Shutterstock's knowledge, participation, or consent.  *See* CSUF ¶ 74. While these third-party websites had access to the Contributor Image (along with millions of other images) via Shutterstock's API, there is ***no evidence*** that the Contributor Image was ever displayed ***in any***

---

[25] As set forth in Plaintiff's Moving Brief (pp. 20-22), Plaintiff's vicarious and copyright infringement claims also must fail to the extent they are premised on the Contributor's activities. Further, Plaintiff has provided no evidence that the Contributor did not have permission to upload the Contributor Image, and Plaintiff never sought to add the Contributor as a defendant in this case.

*form* on HelloRF or StockFresh, and the only evidence as to TinEye is a cached thumbnail created without Shutterstock's approval. *Id.*, ¶¶ 55, 74.[26] Plaintiff's failure to establish direct infringement is futile to Plaintiff's secondary infringement claims.

<div align="center">

2.   Plaintiff's Vicarious Copyright Infringement Claim Must Fail.

</div>

Shutterstock cannot be vicariously liable vis-à-vis TinEye, HelloRF, and/or StockFresh as a matter of law because, as discussed *supra*, the undisputed evidence establishes that Shutterstock had no right or ability to supervise their alleged infringement, and derived no financial benefit whatsoever therefrom.   CSUF ¶ 38; *See, e.g., Wolk*, 840 F. Supp. 2d at 751 (dismissing vicarious infringement claim based on same facts that rendered defendant eligible for § 512(c) safe harbor). Moreover, Shutterstock operates a legitimate licensing market, and the existence of *one* allegedly infringing image among *hundreds of millions* of images accessible to thesee third-party websites via its API cannot plausibly have created a sufficient "draw" to warrant the imposition of vicarious liability.[27] *See Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (affirming summary judgment for service provider on vicarious liability; "the central question of the 'direct financial benefit' inquiry [for vicarious liability] is whether the infringing activity constitutes a draw for subscribers, not just an added benefit"); *see e.g., Totally Her Media, LLC v. BWP Media USA,*

---

[26] Plaintiff has produced a thumbnail of the Contributor Image that appears to have been captured from https://hellorfimg.zcool.cn/preview/260/1471786-26.jpg on July 14, 2022.  *See* Burroughs Decl., Ex. 21.  This appears to be a cached thumbnail on HelloRF's server, not on any page used to offer the image for license.  *See* Zambrowski Opp. Decl., ¶ 35.  HelloRF is supposed to clear its cache regularly, but Shutterstock has no control over whether or when it does so.  *Id.*  That said, refreshed or not, when an image is suspended from the Shutterstock platform, it is not available for license via any means, regardless of whether the prospective licensee comes in from HelloRF, StockFresh, TinEye, or any other referring party.  *Id.*, ¶ 31, 34-35.

[27] The case cited by Plaintiff supports Shutterstock's position on this point.  *See* Mot., p. 37 (citing *Brittney Gobble*, 2021 WL 5359671, at *24 (finding no direct financial benefit; "even if [plaintiff] is correct that Defendants receive advertising revenue on a per-impression basis, that fact does nothing to show that 'the availability of infringing photographs . . . drew customers to' Defendants' websites, or even that [plaintiff]'s photographs drew them to click on the articles at issue here")).

<div align="center">

</div>

*Inc.*, No. 13 Civ. 8379 (ABP) (LAx), 2015 WL 12659912, at \*\*9-10 (C.D. Cal. Mar. 24, 2015) (infringing content did not constitute a "draw" to plaintiff's website where there was no evidence that plaintiff "attracted or retained [users] *because of the infringement* or lost subscriptions because of [Plaintiffs] eventual obstruction of the infringement") (citation omitted; emphasis in original; ).

Shutterstock is not in the market for infringing content, and there is no evidence that Shutterstock attracted any customers to its website ***because of*** the allegedly infringing Contributor Image.  The advertising on TinEye is entirely agnostic—Shutterstock does not select or control what content its advertisements appear alongside.  In fact, the evidence shows TinEye displaying the same ad with legitimate, licensed content. *See* Zambrowski Opp. Decl., ¶ 36, Ex. A.  Plaintiff's argument that Shutterstock's advertising on TinEye, which happened to be displayed alongside the infringing Image, in order to market and draw customers to Shutterstock's website—a site that consists almost entirely of non-infringing content—was somehow attributable to the infringing Image is unsupported and contradicted by Shutterstock's evidence. *See Hydentra HLP Int. Ltd. v. Luchian*, No. 15 Civ. 22134 (UU), 2016 WL 5951808, at \*14 (S.D. Fla. June 2, 2016) (no direct financial benefit where "no evidence that Plaintiff's copyrighted videos drew additional traffic to Defendants' [w]ebsites").  Telling as to how much a draw the image was, nobody ever licensed it. Def. SUF ¶ 52.  For this additional reason, Plaintiff's claim for vicarious infringement must fail.

### 3.    Plaintiff's Contributory Copyright Infringement Claim Must Fail.

Shutterstock cannot be contributorily liable vis-à-vis TinEye, HelloRF, and/or StockFresh as a matter of law because there is no evidence that Shutterstock "acted in concert" with any of them or "participat[ed] in [their alleged] infringement" in any "substantial" way. *Hollywood Fan Sites*, 69 F. Supp. 3d at 357; *see also Matthew Bender*, 158 F.3d at 706 ("a party 'who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing

conduct of another, may be held liable as a 'contributory' infringer'").  The record at most establishes that the Contributor Image (along with millions of other images) was accessible to these websites through Shutterstock's API (Zambrowski Opp. Decl., ¶¶ 28-29, 31, 33; *see also* Mot., p. 23 (acknowledging images available "via its API")), which is simply insufficient for contributory liability.  *See Wolk*, 840 F. Supp. 2d at 750 (merely "provid[ing] the means to accomplish an infringing activity" is not sufficient); *accord Livnat v. Lavi*, No. 96 Civ. 4967 (RWS), 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 n.17 (1984)).  Moreover, there is no evidence that Shutterstock had knowledge of (or any reason to suspect) any specific infringing activity at any point prior to Plaintiff's takedown notice.  Def. SUF ¶¶ 48-49.  Accordingly, Plaintiff's claim for contributory copyright infringement must fail.

## IV.   THE COURT SHOULD GRANT SUMMARY JUDGMENT TO SHUTTERSTOCK ON PLAINTIFF'S COPYRIGHT MANAGEMENT INFORMATION CLAIM

As set forth in Shutterstock's Moving Brief (pp. 22-25), Plaintiff cannot prevail on his claim that Shutterstock "added false [CMI]" in violation of 17 U.S.C. § 1202(a) because undisputed facts establish that it neither (1) "knowingly provided *false* [CMI];" nor (2) do so "with the *intent to induce, enable, facilitate, or conceal an infringement*."  *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018) (emphasis added).  Nothing in Plaintiff's Motion warrants a different result.

Plaintiff confirms that his § 1202(a) claim is premised on the "Shutterstock" watermark. *See* Mot., pp. 23-25.  Shutterstock does not dispute that it added a "Shutterstock" watermark to the Contributor Image as displayed on its website, but nothing about this is "false."  The watermark *truthfully* conveys that Shutterstock is a source or distributor of the image.  Def. SUF ¶¶ 40-42. Moreover, like other online content licensing companies, Shutterstock's system automatically adds

the same watermark to all of the visible images on its customer-facing website with the intent to ***prevent*** infringement, not to "induce, enable, facilitate, or conceal" it. *Id.*, ¶¶ 39-41.[28] Even Plaintiff admits that he uses a watermark when he is "concerned about [his photo] being reused without permission." *Id.*, ¶ 40.[29] Because there is no evidence that Shutterstock acted with the requisite intent, Shutterstock is entitled to summary judgment. *See, e.g., Zuma Press, Inc. v. Getty Images (US), Inc.*, 349 F. Supp. 3d 369, 375-76 (S.D.N.Y. 2018) (Hellerstein, J.) (granting summary judgment to defendant on § 1202(a) claim where it added "watermarks and other [CMI]" because there was "no evidence that [it] intended to induce or facilitate infringement"), *aff'd*, 845 F. App'x 54 (2d Cir. 2021); *Sid Avery & Assocs., Inc. v. Pixels.com, LLC*, 479 F. Supp. 3d 859, 871 (C.D. Cal. Aug. 18, 2020) (even "[a]ssuming, for the sake of argument, that [defendant] could be liable for helping a contributor place the . . . watermark on the images at issue, there is no [evidence permitting a] reasonable inference that [it] acted with the requisite intent or knowledge").[30]

[28] Very small, extremely low-resolution thumbnails do not contain a watermark because they are too small to support one. But presumably, Plaintiff has no issue with the lack of a watermark, nor with the fact that certain-sized thumbnails also contained the contributor's account name, which is immaterial in any event for the reasons explained in Shutterstock's Moving Brief (p. 23, n.10).

[29] Plaintiff's counsel likewise gave a recent interview where he explained that watermarks are a tool to protect against infringement. *See* I. Portiz, *Copyright Metadata Ruling Prompts Licensing Warning to Artists*, Bloomberg, Aug. 24, 2022, *available at*: https://news.bloomberglaw.com/ip-law/copyright-metadata-ruling-prompts-licensing-warning-to-artists (last visited Sept. 12, 2022).

[30] The cases Plaintiff cites are distinguishable, including because they were decided on motions to dismiss, at which point, "intent and knowledge [need only] be alleged generally" and "district courts [must] be lenient." *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 139 (E.D.N.Y. 2019) (citation omitted); *see also* Mot., pp. 24-25 (citing multiple cases on motion to dismiss). Plaintiff also cites to *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368 (S.D.N.Y. 2019) *aff'd*, 970 F.3d 167 (2d Cir. 2020), which found a violation of § 1202(a) after trial based on highly distinguishable facts. *Id.*, at 373 (having received no response from Fisher & Taubenfeld to its request for a copy of and permission to use an image, defendant downloaded the image from a third-party source and used it in an article with a gutter credit listing "Fisher & Taubenfeld").

## V.    SHUTTERSTOCK DID NOT ACT WILLFULLY

Shutterstock is not an infringer, let alone a willful infringer.  In determining willfulness, "[t]he standard is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded that possibility."  *Hamil American Inc. v. GFI*, 193 F.3d 92, 97 (2d Cir. 1999) (cleaned up).  Summary judgment cannot be granted in Plaintiff's favor unless there is "conclusive proof" that Shutterstock acted willfully, which is a high bar that Plaintiff does not and cannot come close to meeting.  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263-64 (2d Cir. 2005) (even "where the non-moving party does not traverse the evidence suggesting constructive knowledge of infringement, but only disputes the inferences to be drawn from that evidence, our standard of review requires that we decide in favor of the non-moving party" and deny summary judgment) (citations omitted); *Young-Wolff v. John Wiley & Sons, Inc.*, 12 Civ. 5230 (JPO), 2016 WL 154115, at *10 (S.D.N.Y. Jan. 12, 2016) (denying summary judgment to plaintiff on issue of willfulness) (citations omitted).

*First*, Plaintiff contends that Shutterstock acted willfully because it did not "remove" the Contributor Image and "continued to exploit it on its own site at three different URLs until September 2021." Mot., p. 26.  This is misleading.  First, it is well-established that, as of May 11, 2021, Shutterstock had removed the Contributor Image from the URL identified in Plaintiff's takedown notice and stopped offering it for license.  *See* Def. SUF ¶ 51.[31]  Second, the fact that the never-identified thumbnails of the Contributor Image remained on Shutterstock's edge cache servers (but not visible, searchable, or licensable on its website) does not constitute infringement, let alone evidence "willful" intent.  *See* Def. SUF ¶¶ 59-61.  The only party who evidently could

---

[31] Plaintiff takes Mr. Zambrowski's use of the word "suspended" out of context.  *See* Mot., p. 26. Mr. Zambrowski explained that "suspended" in this context means "removed from [Shutterstock's] public facing [website]."  Lackman Opp. Decl., Ex. C pp. 58:17-59:6.

find it was Plaintiff's counsel, using the tools that they have as the largest filer of copyright lawsuits in the country, but not the classic "tool" of providing notice (with URLs) to permit Shutterstock to identify what Plaintiff's cryptic missives were about.  *Id.*, ¶ 58.  Indeed, Shutterstock first became aware of these thumbnails through a voluntary search in September 2022, at which point it removed all traces of the Contributor Image from its website and servers.  *Id.*, ¶¶ 59-63.

*Second*, Plaintiff invokes Shutterstock's purported failure to remove the Contributor Image from the websites of its so-called "third-party partners" as a basis for willfulness.  Mot., p. 26.  This, too, is misleading.  As discussed *supra*, Shutterstock's removal of the Contributor Image from its own website on May 11, 2021 automatically disabled TinEye, HelloRF, and StockFresh's ability to access the images through Shutterstock's API.  CSUF ¶ 36.  There **no evidence** that the Contributor Image was displayed on HelloRF or StockFresh at any point thereafter.  To the extent the Contributor Image remained available on TinEye (a website that Shutterstock does not control), it is because TinEye made a copy of a thumbnail without Shutterstock's permission for archival purposes.  *Id.*, ¶ 72.  Plaintiff was supposed to go directly to TinEye to seek removal, and it did not, for reasons he fails to explain.  *See* CSUF ¶ 73.  In any event, the Second Circuit has expressly rejected the idea that service providers like Shutterstock have an obligation to take steps to monitor its own website for infringing activity (let alone third-party websites), or that a failure to do so constitutes willfulness.  *See Viacom*, 676 F.3d at 35 (safe harbor shall not be conditioned on a service provider "monitoring its service or affirmatively seeking facts indicating infringing activity") (quoting 17 U.S.C. § 512(m)(1)).  Simply put, there is no evidence that Shutterstock was willful, much less any evidence that Plaintiff can establish as a matter of law that it was.[32]

---

[32] The cases cited by Plaintiff do not support a finding of willfulness.  *See, e.g.*, Mot., pp. 25 (citing *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 393 (S.D.N.Y. 2010) (denying summary judgment on willfulness for accounting of profits in a trademark infringement case)).

## **CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiff's Motion for Summary Judgment and grant summary judgment in Shutterstock's favor on all of Plaintiff's claims.

Respectfully submitted,

Dated: New York, New York          MITCHELL SILBERBERG & KNUPP LLP
        September 16, 2022


By:   /s/ Eleanor M. Lackman
      Eleanor M. Lackman (eml@msk.com)
      Elaine Nguyen (eln@msk.com)
      Samantha W. Frankel (swf@msk.com)
      437 Madison Avenue, 25th Floor
      New York, New York 10022
      Tel.: (212) 509-3900
      Fax: (212) 509-7239


*Attorneys for Defendant Shutterstock, Inc.*

34