**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Civil Action No.: 1:21-civ-7100-AKH

GEORGE STEINMETZ,

Plaintiff,

v.

SHUTTERSTOCK, INC.; et al.,

Defendants.

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

# <u>TABLE OF CONTENTS</u>

I.   Introduction ........................................................................................................ 1

II.  Legal standard .................................................................................................... 1

III. Attorneys' fees are not warranted ................................................................... 2

A.  Steinmetz's case was partially successful and not frivolous ............................. 2

B.  Steinmetz was properly motivated to protect his work .................................... 6

C.  Steinmetz's position is objectively reasonable    …………………………………10

    1.      Steinmetz's position was factually reasonable………………………………..11

    2.      Steinmetz's position was legally reasonable …………………………………12

        a.      Steinmetz's position regarding damages is supported by the
        Copyright Act……………………………………………………………14

        b.      Steinmetz's reliance on the DMCA and other case law was reasonable,
        particularly in light of Shutterstock's prior litigation………………………14

        c.      Steinmetz was reasonable in alleging Shutterstock failed to act
        expeditiously under relevant authority and continued to display Steinmetz's
        photograph …………………………………………………………………16

    3.      The instant action presented a novel question of law …………………………18

    4.      Shutterstock's authority illustrates that Steinmetz's position was
        reasonable……………………………………………………..…………………………19

D.  Awarding Shutterstock its fees would deter copyright owners from prosecuting
    lawful claims of infringement, frustrating the purpose of the Copyright Act,
    particularly in light of the parties' relative financial positions…………………...21

IV. Sanctions are not warranted under Section 1927 or inherent powers ...................... 24

V. Doniger / Burroughs should not be found jointly and severally liable………………26

VI. Shutterstock's fees are unreasonable ................................................................ 27

    A.  The number of hours sought are unproperly supported and
        unreasonable……………………………………………………………………...28

    B.  The hourly rates are not properly supported……………………………………29

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

**C.  The Court may reduce the amount of fees requested**……………………………31

**VII.      Conclusion** .................................................................................................... **32**

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*ABKCO Music, Inc. v. Sagan,*
   2022 WL 5237636 (2d Cir. Oct. 6, 2022) .............................................................. 13
*Agence France Presse v. Morel,*
   934 F. Supp. 2d 547 (S.D.N.Y. 2013) ................................................................... 15
*Agence France Presse v. Morel,*
   2015 WL 13021413 (S.D.N.Y. Mar. 23, 2015)...................................................... 18
*Am. Metro. Enters. of N.Y., Inc. v. Warner Bros. Records, Inc.,*
   389 F.2d 903 (2d Cir. 1968) .................................................................................. 23
*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of*
   *Elections,*
   522 F.3d 182 (2d Cir. 2008) ............................................................................ 28, 30
*Arista Recs., Inc. v. Mp3Board, Inc.,*
   2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002)......................................................... 9
*Arista Recs., LLC v. Launch Media, Inc.,*
   344 F. App'x 648 (2d Cir. 2009)...................................................................... 14, 18
*Baker v. Urb. Outfitters, Inc.,*
   431 F. Supp. 2d 351 (S.D.N.Y. 2006) ................................................................... 21
*Barclays Cap. Inc. v. Theflyonthewall.com,*
   2010 WL 2640095 (S.D.N.Y. June 30, 2010) ....................................................... 32
*Blum v. Stenson,*
   465 U.S. 886 (1984) ......................................................................................... 28, 30
*Bryant v. Media Right Prods., Inc.,*
   603 F.3d 135 (2d Cir.2010) ..................................................................................... 2
*Cablevision Sys. N.Y.C. Corp. v. Diaz,*
   2002 WL 31045855 (S.D.N.Y. July 10, 2002)....................................................... 28
*Canal+ Image UK Ltd. v. Lutvak,*
   792 F. Supp. 2d 675 (S.D.N.Y. 2011) ............................................................ 2, 6, 19
*Capitol Recs., Inc. v. MP3tunes, LLC,*
   48 F. Supp. 3d 703 (S.D.N.Y. 2014) ....................................................................... 8
*Capitol Recs., LLC v. Escape Media Grp., Inc.,*
   2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015)....................................................... 26
*Cartoon Network LP v. CSC Holdings, Inc.,*
   536 F.3d 121 (2d Cir. 2008) .................................................................................. 13
*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) .......................................................................................... 24, 25
*Chivalry Film Prods. v. NBC Universal, Inc.,*
   2007 WL 4190793 (S.D.N.Y. Nov. 27, 2007)............................................. 19, 20, 21
*Columbia Pictures Indus., Inc. v. Fung,*
   710 F.3d 1020 (9th Cir. 2013) ................................................................................. 9

iv

*Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers,*
   34 F.3d 1148 (2d Cir. 1994) ................................................................ 28
*De La Paz v. Rubin & Rothman, LLC,*
   2013 WL 6184425 (S.D.N.Y. Nov. 25, 2013) .................................. 29, 30
*Disney Enters., Inc.,*
   2013 WL 6336286 ................................................................................ 18
*D'Lil v. Best Western Encina Lodge & Suites,*
   538 F.3d 1031 (9th Cir. 2008) ............................................................... 7
*Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.,*
   782 F.2d 329 (2d Cir. 1986) ................................................................ 27
*Earth Flag Ltd. v. Alamo Flag Co.,*
   154 F.Supp.2d 663 (S.D.N.Y.2001) .................................................... 19
*Echevarria v. Insight Med., P.C.,*
   102 F. Supp. 3d 511 (S.D.N.Y. 2015) ................................................. 29
*EMI Christian Music Grp., Inc. v. MP3tunes, LLC,*
   840 F.3d 69 (2d Cir. 2016) .................................................................... 8
*EMI Christian Music Grp., Inc. v. MP3tunes, LLC,*
   844 F.3d 79 (2d Cir. 2016) .................................................................... 8
*Enmon v. Prospect Capital Corp.,*
   675 F.3d 138 (2d Cir. 2012) ................................................................ 27
*Ets-Hokin v. Skyy Spirits, Inc.,*
   323 F.3d 763 (9th Cir. 2003) ............................................................... 24
*Fantasy, Inc.,*
   94 F.3d ................................................................................................ 24
*Farbotko v. Clinton Cnty. of N.Y.,*
   433 F.3d 204 (2d Cir. 2005) ................................................................ 30
*Feingold v. RageOn, Inc.,*
   472 F. Supp. 3d 94 (S.D.N.Y. 2020) ................................................... 17
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340, 111 S.Ct. 1282 (1991) .................................................... 4
*Fogerty,*
   510 U.S. ........................................................................................... 6, 23
*Gardner v. CafePress Inc.,*
   2014 WL 794216, (S.D. Cal. Feb. 26, 2014) .................................. 15, 26
*Gollomp v. Spitzer,*
   568 F.3d 355 (2d Cir. 2009) ............................................................ 26, 27
*Greg Young Publ'g, Inc. v. Zazzle, Inc.,*
   2017 WL 2729584, (C.D. Cal. May 1, 2017) .................................. 15, 26
*Greg Young Publ'g, Inc. v. Zazzle, Inc.,*
   2020 WL 3871451 (C.D. Cal. July 9, 2020) ........................................ 11
*Hensley,*
   461 U.S. ............................................................................................... 29
*In re Arb. Between Okyere & Houslanger & Assocs., PLLC,*
   2015 WL 4366865 (S.D.N.Y. May 28, 2015) ...................................... 29
*Italian Book Corp. v. Am. Broad. Cos., Inc.,*
   458 F. Supp. 65 (S.D.N.Y. 1978) ........................................................ 24

*Johnson v. Kay*,
   742 F. Supp. 822 (S.D.N.Y. 1990) ................................................................. 28

*Jovani Fashion, Ltd. v. Cinderlla Divine, Inc.*,
   820 F. Supp. 2d 569 (S.D.N.Y. 2011) ............................................................ 11

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018) ............................................................................. 24

*Kinsley v. Udemy, Inc.*,
   2021 WL 1222489 (N.D. Cal. Mar. 31, 2021) ............................................... 17

*Kirsch v. Fleet St., Ltd.*,
   148 F.3d 149 (2d Cir. 1998) ........................................................................... 29

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   136 S. Ct. 1979 (2016) ............................................................................... 2, 11

*Knitwaves, Inc. v. Lollytogs Ltd.*,
   71 F.3d 996 (2d Cir. 1995) ............................................................................... 1

*LA Printex Indus., Inc. v. Belk, Inc.*,
   2011 WL 13213606 (C.D. Cal. Mar. 15, 2011) ............................................... 7

*Lieb v. Topstone Indus., Inc.*,
   788 F.2d 151,  (3d Cir.1986), 788 F.2d ....................................................... 23

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
   140 F.3d 70 (1st Cir.1998) ............................................................................. 19

*Mahan v. Roc Nation*, LLC,
   2015 WL 4388885 (S.D.N.Y. July 17, 2015) ............................................... 20

*Mango*,
   970 F.3d ................................................................................................... 15, 18

*Matthew Bender & Co. v. W. Pub. Co.*,
   240 F.3d 116 (2d Cir. 2001) ............................................................................. 2

*Mavrix Photographs, LLC v. Livejournal, Inc.*,
   873 F.3d 1045 (9th Cir. 2017) ....................................................................... 26

*Muller v. Twentieth Century Fox Film Corp.*,
   2011 WL 3678712 (S.D.N.Y. Aug. 22, 2011) ................................................. 2

*O.R. v. N.Y.C. Dep't of Educ.*,
   340 F. Supp. 3d 357 (S.D.N.Y. 2018) ........................................................... 30

*Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*,
   2013 WL 5988937 (S.D.N.Y. Nov. 12, 2013) ............................................... 11

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,
   2004 WL 728878 (S.D.N.Y. Apr. 6, 2004) ................................................... 12

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ....................................................................... 19

*Pickett v. Migos Touring, Inc.*,
   2020 WL 1853202 (S.D.N.Y. Feb. 25, 2020) ............................................... 27

*Porto v. Guirgis*,
   659 F. Supp. 2d 597 (S.D.N.Y. 2009) ........................................................... 20

*Proctor & Gamble Co. v. Colgate-Palmolive Co.*,
   1999 WL 504909 (S.D.N.Y. July 15, 1999) ................................................. 19

*Psihoyos v. John Wiley & Sons, Inc.*,
   2013 WL 1285153 (S.D.N.Y. Mar. 29, 2013) ............................................... 12

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

*Pyatt v. Raymond,*
  2012 WL 1668248 (S.D.N.Y. May 10, 2012) ...................................................... 20
*Ransmeier v. Mariani,*
  718 F.3d 64 (2d Cir. 2013) ............................................................................... 24
*Rodriguez ex rel. Kelly v. McLoughlin,*
  84 F. Supp. 2d 417 (S.D.N.Y. 1999) ................................................................ 29
*Schlaifer Nance & Co. v. Estate of Warhol,*
  194 F.3d 323 (2d Cir. 1999) ............................................................................ 27
*Seide v. Level-(1) Glob. Sols., LLC,*
  2016 WL 4206076,n.5 (N.D. Ill. Aug. 10, 2016) ............................................ 17
*Seltzer v. Green Day, Inc.,*
  725 F.3d 1170 (9th Cir. 2013) .......................................................................... 11
*Sequa,*
  156 F.3d ............................................................................................................ 29
*Shangold v. Walt Disney Co.,*
  2006 WL 2884925 (S.D.N.Y. Oct.11, 2006).................................................... 32
*Shepherd v. L. Offs. of Cohen & Slamowitz, LLP,*
  2010 WL 4922314 (S.D.N.Y. Nov. 29, 2010).................................................. 30
*Sony Corp. of Am. v. Universal City Studios, Inc.,*
  464 U.S. 417, 104 S.Ct. 774 (1984) ................................................................ 23
*Tatintsian,*
  2020 WL 2836718 ............................................................................................ 29
*Top Jet,*
  2022 WL 1184245 ............................................................................................ 30
*TufAmerica Inc. v. Diamond,*
  2016 WL 1029553 (S.D.N.Y. Mar. 9, 2016).................................................... 20
*UMG Recordings, Inc. v. Shelter Capital Partners*, LLC,
  667 F.3d 1022 (9th Cir.2011) .......................................................................... 26
*UMG Recordings, Inc.,*
  718 F.3d ............................................................................................................. 4
*United States v. Int'l Bhd. of Teamsters,*
  948 F.2d 1338 (2d Cir. 1991) .......................................................................... 27
*Venus Fashions, Inc. v. ContextLogic, Inc.,*
  2017 WL 2901695 (M.D. Fla. Jan. 17, 2017) ............................................... 4, 9
*Video–Cinema Films, Inc. v. Cable News Network, Inc.,*
  2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003).................................................. 23
*Webb v. Stallone,*
  2014 WL 2990295 (S.D.N.Y. June 30, 2014) .............................................. 2, 15
*Williams v. Crichton,*
  1995 WL 449068 (S.D.N.Y. July 26, 1995)..................................................... 32
*Wolk v. Kodak Imaging Network, Inc.,*
  840 F. Supp. 2d 724 (S.D.N.Y. 2012) ......................................................... 13, 14
*Yang v. Mic Network, Inc.,*
  2020 WL 6562403 (S.D.N.Y. Nov. 9, 2020)...................................................... 1
*Zalewski v. Cicero Builder Dev., Inc.,*
  754 F.3d 95 (2d Cir. 2014) ............................................................................... 11

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
  845 F. App'x 54 (2d Cir. 2021)..................................................................................... 10, 15, 21

Statutes

17 U.S.C. § 106................................................................................................................. 4
17 U.S.C. § 504(c)(1)...................................................................................................... 14
17 U.S.C. § 504(c)(2)...................................................................................................... 14
17 U.S.C. § 505.......................................................................................................... 1, 23
17 U.S.C. § 512.......................................................................................................... 4, 12
17 U.S.C. § 512(c)(1)(B) ................................................................................................. 4
17 U.S.C. § 512(j) ........................................................................................................... 3
28 U.S.C. § 1927................................................................................................... 24, 26, 27

## **DEFENDANT'S MOTION SHOULD BE DENIED**

### I.       **Introduction**

Plaintiff, George Steinmetz, discovered that a licensing company, Shutterstock, Inc., was selling licenses for his original photography. So, he sent a cease-and-desist letter asking Shutterstock to stop offering his photograph for license. When Shutterstock did not promptly remove his photograph, he was forced to file an infringement lawsuit. He was able to prove the two elements of infringement – ownership and copying – but did not prevail on his damages claim due to a particular technical defense available only to certain websites. His approach to the litigation was reasonable, and he should not be penalized with an award of attorneys' fees for attempting to protect his copyrights, which are his livelihood.

Fees are also inappropriate because Steinmetz was partially successful with his complaint. His complaint sought to force Shutterstock and its affiliates to remove his photograph from their platforms and only after filing his complaint was Steinmetz able to convince Shutterstock to remove his work from Shutterstock and its affiliates' sites.

Moreover, a ruling in Shutterstock's favor would have chilling effects on Steinmetz and other creators, forcing them to hesitate in addressing even clear cases of infringement if there is even a chance that a technical defense will be found viable. Given the good faith basis for Steinmetz's claim and the unsettled questions of law at issue, this Motion should be denied.

### II.      **Legal standard**

The Copyright Act provides courts discretion to award the prevailing party in an infringement action its costs, including reasonable attorney's fees. 17 U.S.C. § 505. An award of fees and costs is **not** automatic; rather, the district court has discretion to determine whether such assessment would be fair. *Yang v. Mic Network, Inc.*, 2020 WL 6562403, at *3 (S.D.N.Y. Nov. 9, 2020), aff'd, 2022 WL 906513 (2d Cir. Mar. 29, 2022), citing *Knitwaves, Inc. v. Lollytogs*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

*Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995) (emphasis added). While the broad statutory language "clearly connotes discretion" and "eschews any precise rule or formula for awarding fees," the Supreme Court has provided guidance in considering fee requests. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016)(citation omitted). A district court need not award attorneys' fees as a matter of course; rather, a court should make a more particularized, case-by-case assessment. Id. And "[t]he mere fact that defendants prevailed on summary judgment is not dispositive in determining whether to award attorneys' fees." *Webb v. Stallone*, 2014 WL 2990295, at *1 (S.D.N.Y. June 30, 2014), quoting *Muller v. Twentieth Century Fox Film Corp.*, 2011 WL 3678712, at *1 (S.D.N.Y. Aug. 22, 2011). The court should instead consider certain "nonexclusive" factors when deciding a fees motion: "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng*, 136 S. Ct. at 1986. And the court must "give substantial weight to the objective reasonableness of the losing party's position" while still providing "due consideration" to other factors. Id. at 1983. Other factors may be considered "so long as [they] are faithful to the purposes of the Copyright Act." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir.2010).

### III.   Attorneys' fees are not warranted

Steinmetz's claim, while not entirely successful, was not frivolous. It was instead objectively reasonable and driven by the proper motivation to protect his copyrights. Awarding fees against him would be unjust and contravene the aims of the Copyright Act.

#### A.   Steinmetz's case was partially successful and not frivolous

A frivolous case is one "lacking any plausible merit," and in such cases "an award of attorneys' fees may [be] an appropriate sanction." *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 687 (S.D.N.Y. 2011), citing *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116,

126 (2d Cir. 2001). Steinmetz's claims, though, had substantial merit and were defeated by the evocation of a technical and developing affirmative defense.

Steinmetz discovered that Shutterstock was selling licenses for an identical, cropped copy of one of his most famous photographs. Steinmetz had spent significant time and effort to create this photograph and was upset that this site was directly competing with him by offering it for license, without his consent. He was also concerned at the potential harms this unauthorized licensing could have on his livelihood and professional reputation. So, he sent a cease-and-desist letter to Shutterstock on April 1, 2021. Shutterstock did not promptly remove the work from its and its affiliates platforms but instead waited 40 days after notice to remove one use of his photograph from its site and left *numerous* other uses online on its own site and affiliated sites.

When Steinmetz filed his complaint on August 23, 2021, Shutterstock was still displaying the work to the public on its own site in at least four locations, and via its proprietary API on affiliate sites such as TinEye, HelloRF, and StockFresh, at least one of which it partly owns. In his complaint, Steinmetz sought damages and injunctive relief in the form of "Defendants, their affiliates, agents, and employees" being enjoined from further infringing Steinmetz's copyrights in the photograph at issue, and Defendants being enjoined from any further use of the photograph at issues. See Dkt. #1., pgs. 10-11. While he did not successfully obtain damages, he did effectively obtain the injunctive relief sought in the complaint. And such relief is available even when the Section 512 safe harbor is applied. See 17 U.S.C. § 512(j)("the court may grant injunctive relief" including an "order restraining the service provider from providing access to infringing material[.]") Through this litigation, Steinmetz successfully forced Shutterstock and its affiliates to cease infringing his copyrights in the photograph at issue.

While it was ultimately unsuccessful, Steinmetz also made substantial progress on his claim for infringement damages. To prove this claim, he needed to first establish ownership of

the work and violation of his display right under 17 U.S.C. § 106. See *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282 (1991). He was able to prove that he created and owned the work and that Shutterstock had displayed the work on its website and offered it for licensing without his consent. Copyright infringement was thus established so long as an affirmative defense did not apply.

The Court, though, found that the "safe harbor" defense found at 17 U.S.C. § 512 of the Digital Millennium Copyright Act ("DMCA") applied, and in doing so analyzed a number of technical and emerging legal factors and decisions to reach its conclusion. There are no binding Second Circuit cases addressing whether licensing companies could claim the "safe harbor" and Steinmetz was reasonable in his belief that the safe harbor was not available to infringers who control the work on their website and financially benefit from their use of photography. *Venus Fashions, Inc. v. ContextLogic, Inc.*, 2017 WL 2901695, at *28 (M.D. Fla. Jan. 17, 2017), citing *UMG Recordings, Inc.*, 718 F.3d at 1026, quoting 17 U.S.C. § 512(c)(1)(B). Shutterstock had testified that it controlled the content on its website and financially benefited from its photography licensing. Dkt. #60-1 at 107:5-108:10. And other evidence, as discussed herein, casted doubt on whether the "safe harbor" was available, further establishing that Steinmetz was reasonable in bringing his claim.[1] The court, however, found the evidence to favor Shutterstock on these issues.

---

[1] Indeed, numerous other artists and their attorneys have filed similar claims against Shutterstock for the exact conduct at issue in this case, which further indicates a lack of frivolity. Indeed, Shutterstock has been sued for copyright infringement *at least nine times* since 2019, far more than its competitors. See *Tamara Williams v. Shutterstock, Inc., et al*; 1-21-cv-05784 (E.D.N.Y); *McGucken v. Shutterstock, Inc., et al*, 1:22-cv-00905 (S.D.N.Y.); *Cavanaugh v. Shutterstock, Inc., et al*, 1-21-cv-03796 (S.D.N.Y.); *Itasca Images, LLC et al v. Shutterstock, Inc., et al*, 0-21-cv-00287 (D.MN); *Lickerish, Ltd. v. Shutterstock Inc.*, 1-20-cv-05384 (S.D.N.Y.); *Penske Media Corporation v. Shutterstock, Inc.*, 1-20-cv-04583 (S.D.N.Y.); *Grossman Enterprises LLC v. Hubbard Broadcasting, Inc., et al.*, 1-20-cv-03023 (S.D.N.Y.); *Michael Grecco Productions,*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

The manner in which the evidence developed also favors a reasonableness finding. When Steinmetz filed his claim, he knew only that Shutterstock was a licensing company that was offering his photograph for a paid licenses without his consent. At the time of filing, he was unaware of how Shutterstock structured or implemented its DMCA policies, and certainly had no knowledge of the fact that Shutterstock would claim that, despite trying, it failed to sell licenses for his work to third parties. From the Court's order, it would appear that the decision might have been different had Shutterstock sold licenses for Shutterstock's photography, as opposed to just offering them for sale, but Steinmetz had no access to Shutterstock's sales records at the time he brought the claim. And while he requested an accounting in his April 1, 2021 demand letter, he did not receive one. (Declaration of Scott Alan Burroughs, "Burroughs Decl." ¶3, **Ex. 1**. Based on the evidence available to him, Steinmetz's claims were reasonable.

As further evidence of the merits of Steinmetz's claim, he achieved one aim of his complaint: the removal of his work from Shutterstock's and its affiliates' websites. It is beyond dispute that Shutterstock received notice of this infringement in April of 2021 and continued to display his work online on its own website until at least September of 2021 and on its partner sites and a secondary site that it partially owns until July of 2022. Only at the end of discovery did Shutterstock finally remove Steinmetz's photography from all outlets for which it was responsible. As Steinmetz was successful in forcing Shutterstock to remove his photography from the internet sites under its control, and had a substantial basis on which to make his infringement allegations, this motion should be denied.

---

*Inc. v. Rex Features, Ltd., et al.,* 2-20-cv-00787 (C.D.CA); *Michael Grecco Productions, Inc. v. Shutterstock, Inc*., et al., 2-19-cv-01153 (CD.CA). None of these cases have been adjudicated in Shutterstock's favor and the sheer volume of litigation indicates that many artists and law firms reasonably believe that Shutterstock can be held liable for copyright infringement.

**B.      Steinmetz was properly motivated to protect his work**

The "primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 686 (S.D.N.Y. 2011), citing *Fogerty*, 510 U.S. at 524 n. 19, 114 S.Ct. 1023. Here, Steinmetz filed a straightforward infringement action after discovering that Shutterstock was offering his photograph for licensing without his consent and refusing to remove it from the internet sites it controlled. And he took the steps necessary to ensure the works' removal. While he did not recover damages, Steinmetz should not be forced to pay Shutterstock's attorneys fees for attempting to enforce his copyright rights, which are integral to his livelihood.

Indeed, as Steinmetz testified, his ability to license his original photography is integral to his business as a photographer. And Steinmetz further testified that his business and reputation in the industry have been substantially harmed by Shutterstock's unauthorized exploitation of his copyrighted work. Dkt. #57 ¶ 9. Shutterstock takes issue with the fact that Steinmetz testified as to the reputational harm of his photography appearing on Shutterstock's website, but Shutterstock fails to recognize that such harm also impacts harm to Steinmetz's licensing business. Steinmetz should not be punished for attempting to protect both his business and his reputation.

Shutterstock's accusations of litigation impropriety, which are unsupported by any probative evidence, are not well taken, particularly in light of Shutterstock's own litigation history. The use of past litigation to cast doubt upon a litigant's present credibility warrants careful scrutiny. See *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) (involving repeat ADA claims), cert. denied, 129 S.Ct. 2824(2009). Here, Shutterstock has highlighted Steinmetz's prior litigation, but "[w]hile the proof of [p]laintiff's prior copyright

lawsuits may be consistent with [d]efendant[]'[s] theory of impropriety, it is equally consistent with [p]laintiff's being a successful [creator] that needs to protect [his] intellectual property from widespread infringement." *LA Printex Indus., Inc. v. Belk, Inc.*, 2011 WL 13213606, at *1 (C.D. Cal. Mar. 15, 2011). That is the case here – Steinmetz is an award-winning photographer whose work has unfortunately been repeatedly used on commercial contexts without his consent. He has no choice but to address the infringement.

Notably, Shutterstock fails to cite any other case that Steinmetz has lost or in which his claim has been found to be frivolous. Even here, Shutterstock does not argue that it had the legal right to use the Steinmetz photograph, only that it was insulated from liability by the DMCA. The other cases cited, as is evident from the dockets for each matter, appear to have been amicably resolved. Thus, Steinmetz's unrelated litigation is not probative of any material fact other than to show that his photography is appealing and that he has previously brought meritorious claims to vindicate his rights.

Shutterstock argues that Steinmetz had a more sinister motivation because "the image had already been removed so there was no need for an injunction; Shutterstock made no profits for Plaintiff to recover; and Plaintiff could not possibly have suffered any actual damages from the display of a low-resolution, watermarked, cropped copy of his image on Shutterstock's website, especially when it was viewed by a total of two people." But **all** of these assertions are false. Steinmetz's photograph had not been removed, it remained in full at numerous Shutterstock URLs, and Shutterstock's partners were using it to advertise Shutterstock's site through Shutterstock's API. Dkt. #61 at 21-22. Indeed, as Shutterstock's own witness testified, the image would have only been available on the affiliate sites if it was still live on Shutterstock's servers. Burroughs Decl. ¶ 8, **Ex. 12** at 177:20-179:17. Steinmetz's photograph was not removed from all sites under Shutterstock's control until July of 2022, well into discovery in this case.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

Shutterstock's claims as to the number of viewers the copies of Steinmetz's photograph received and the revenues it earned from these copies are also insufficient evidence for two reasons. First, Steinmetz had no access to this data at the time he filed his complaint. Second, that data is incomplete as it only reflects one site at which the Steinmetz photograph was displayed. At no point in this action has Shutterstock ever produced complete analytics for all four of the pages at which it displayed the photograph or the affiliate pages.  Despite being repeatedly informed that Steinmetz's photograph was accessible through at least four URLs associated with Shutterstock, Shutterstock failed to provide analytics information for all relevant URLs for the time period at issue. Burroughs Decl. ¶ 9, **Ex. 13**. Given Shutterstock's failure to provide all of the relevant information, there is a question as to the accuracy of Shutterstock's claim that it made no profits through its unauthorized use of Steinmetz's work and that only two individuals viewed the photograph at issue. But even if Shutterstock provided the information for the relevant time period, a "profit need not be realized"[2] and Steinmetz relied on authority holding that conduct that "increases a defendant's user base or otherwise acts as a draw for customers constitutes a direct financial interest." *Arista Recs., Inc. v. Mp3Board, Inc.*, 2002 WL 1997918, at *11 (S.D.N.Y. Aug. 29, 2002). Steinmetz also relied on authority holding that for infringers "who **charge for their services**," […] there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1044 (9th Cir. 2013)(emphasis added). Given that Shutterstock markets its

---

[2] *Capitol Recs., Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703, 712 (S.D.N.Y. 2014), aff'd in part, rev'd in part and remanded sub nom. *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 840 F.3d 69 (2d Cir. 2016), withdrawn from bound volume, and aff'd in part, rev'd in part and remanded sub nom. *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79 (2d Cir. 2016).

photography portfolio to the public to increase its user base and draw customers, it was reasonable for Steinmetz to believe that Shutterstock receives a financial benefit directly attributable to its use of the photography. Id.

In light of the evidence presented, it was also reasonable for Steinmetz to believe that Shutterstock "directly profits from its use of the infringing Images by contracting with third party providers such as [TinEye, HelloRF, and StockFresh], and by reproducing the allegedly infringing Images in its own promotional materials in an effort to draw customers to its website and 'app.'" *Venus Fashions, Inc. v. ContextLogic, Inc.*, 2017 WL 2901695, at *28 (M.D. Fla. Jan. 17, 2017), citing *Fung* at 1045 (9th Cir. 2013); see also Burroughs Decl. ¶ 11, **Ex. 15** at 50 (Shutterstock "also license[s] content to customers through third-party resellers. Third-party resellers sell [Shutterstock's] products directly to customers as the principal in those transactions."). Shutterstock's claims regarding its profits for the photograph at issue thus miss the mark, and Steinmetz's position was reasonable in light of the evidence on record and other authority.

Finally, Shutterstock claims that Steinmetz acted in bad faith because he could not have licensed "a low-resolution, watermarked, cropped copy of [the] image on Shutterstock's website" but Shutterstock offered Steinmetz's artwork for licensing in full size and resolution and in multiple formats and through its own site and partners. Burroughs Decl. ¶ 5, **Exs. 3-5**. Even if it hadn't, Shutterstock had no right to display or offer as part of a license package Steinmetz's work in any format.

Additionally, the facts establish that Shutterstock refused to either engage in meaningful settlement discussions or stop displaying Steinmetz's artwork such that Steinmetz had no choice but to file this action. Specifically, Steinmetz sent a cease-and-desist letter to Shutterstock on April 1, 2021. Burroughs Decl. ¶ 3, **Ex. 1**. Shutterstock acknowledged receipt of that letter on

May 11, 2021, but it failed to expeditiously remove Steinmetz's photograph. After discovering that his proprietary artwork was still available on the Shutterstock website, despite Shutterstock's representation that it had been removed, Steinmetz then filed the instant action. In an attempt to establish otherwise, Shutterstock falsely asserts that "Plaintiff plainly was seeking to drag out a claim because he knew it was cheaper for Shutterstock to settle it than fight it." (Motion, p. 15.) Not so. Steinmetz made reasonable settlement demands on October 19, 2021 and then again on April 26, 2022 reflecting his lost licensing fees, reasonable costs and attorneys fees, in light of his timely registration. Burroughs Decl. ¶ 6, **Exs. 6, 7**. Shutterstock declined these overtures without counter, and Steinmetz had no choice but to continue to litigate.

Shutterstock has not established that Steinmetz's motivations were improper. Indeed, other than claims that Steinmetz was "motivated by the prospect of unjustified statutory damages, [Shutterstock] points to little in the record to undermine the [position] that Plaintiff[] brought this action for proper motives." *Zuma Press, Inc. v. Getty Images (US), Inc.*, 845 F. App'x 54, 60 (2d Cir. 2021)(affirming denial of fee request). There is no evidence that Steinmetz has been motivated by anything other than a desire to protect the integrity of his copyright and prevent the unauthorized use of his photography The evidence establishes only that Steinmetz is an artist and wanted to protect his rights in his work. His motivation was proper.

### C.    Steinmetz's position is objectively reasonable

Steinmetz's position throughout this entire action has been objectively reasonable because he adduced evidence establishing that he owned the photograph at issue and that Shutterstock exploited it without his consent. He also adduced substantial evidence challenging Shutterstock's "safe harbor defense." While the court found against him, his case was objectively reasonable because it had "a reasonable basis in law and fact." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014); see also *Jovani Fashion, Ltd. v. Cinderlla Divine, Inc.*, 820

F. Supp. 2d 569, 573 (S.D.N.Y. 2011) (position is objectively unreasonable if it is "clearly without merit or otherwise patently devoid of legal or factual basis" (internal quotation omitted)). Courts should "give substantial weight to the objective reasonableness of the losing party's position[,]" *Kirtsaeng v. John Wiley & Sons, Inc*., 136 S.Ct. 1979, 1981-82 (2016),  and losing is not the same as unreasonableness. *Kirtsaeng* at 1988; see also *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013) ("[T]he mere fact that Seltzer lost cannot establish his objective unreasonability."). A claim is unreasonable only when the other party is "*clearly correct.*" *Greg Young Publ'g, Inc. v. Zazzle, Inc*., 2020 WL 3871451, at *8 (C.D. Cal. July 9, 2020), aff'd, 2021 WL 3702005 (9th Cir. Aug. 20, 2021), citing *Kirtsaeng*, 136 S.Ct. at 1986-87 (emphasis added by court). Here, the DMCA safe harbor issue was complex and novel and the evidence supported both parties' positions.

Notably, a "lack of success on the merits, without more, does not establish that the non-prevailing party's position was objectively unreasonable." *Yang v. Mic Network, Inc.*, at *3, citing *Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*, 2013 WL 5988937, at *2 (S.D.N.Y. Nov. 12, 2013); see also *Kirtsaeng*, 136 S. Ct. at 1988 ("No matter which side wins a case, the court must assess whether the other side's position was (un)reasonable[.]") Even though Steinmetz's claim was ultimately denied, his positions were supported by the Copyright Act, case law, evidence on record, and other litigation with Shutterstock, as follows.

### 1.    Steinmetz's position was factually reasonable

Steinmetz adduced the following evidence in litigation: (a) he created, owned, and registered the photograph at issue; (b) Shutterstock was exploiting his photograph online without his consent; (c) he provided notice of the infringement on April 1, 2021 and Shutterstock failed to remove the work from its system for months thereafter; (d) Shutterstock approved every photograph offered for licensing on its site, provided extensive advice to users of regarding

photography, and curated every photograph; and (e) Shutterstock financially benefitted from the photography on its site. Burroughs Decl. ¶¶ 3, 5, 8, 11; **Exs. 1, 3, 4, 5, 15, 12** at 49:17-50:13, 118:13-119:13. The foregoing facts established that Steinmetz could prove his copyright infringement claim, and liability would exist but for the court's adoption of an affirmative defense. And these facts presented a close question as to whether the affirmative defense available under 17 U.S.C. § 512 applied. As such, his claim was reasonable on the facts.

### 2.    Steinmetz's position was legally reasonable

It "will generally not promote the purposes of the Copyright Act to impose a fee award against a purported copyright holder when that copyright holder has not taken an objectively unreasonable litigation position." *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd*., 2004 WL 728878, at *5 (S.D.N.Y. Apr. 6, 2004)(citations omitted). Steinmetz's position was reasonable given the evidence of unlawful copying and the uncertainty regarding the DMCA defense.

Crucially here, a "party's good faith decision to litigate complex or undecided issues of law is not objectively unreasonable." *Psihoyos v. John Wiley & Sons, Inc*., 2013 WL 1285153, at *3 (S.D.N.Y. Mar. 29, 2013). The law interpreting the DMCA and which types of businesses may exploit its safe harbor is not yet well-settled, so Steinmetz's legal positions were reasonable regarding its application. Steinmetz alleged that Shutterstock was not eligible for the safe harbor because it had the "right and ability to control" what was on its site and engaged in "prescreening content, rendering extensive advice to users regarding content and editing user content." *Wolk v. Kodak Imaging Network, Inc*., 840 F. Supp. 2d 724, 748 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc*., 569 F. App'x 51 (2d Cir. 2014). Steinmetz adduced evidence in support of these allegations. But the Court did not find the evidence persuasive. That does not mean that

the position was unreasonable, particularly given the lack of binding precedent and  inconsistent state of the law.

The law on this issue became more complex on October 6, 2022, after the summary judgment order issued, when the Second Circuit issued guidance that direct liability for copyright infringement for online infringement attaches to "the person who actually presses the button." *ABKCO Music, Inc. v. Sagan*, 2022 WL 5237636, at *8 (2d Cir. Oct. 6, 2022)(emphasis added), citing *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008). Here, it was Shutterstock, and not the contributor, who "pushed the button" to display the Steinmetz photograph on its website. As the party that makes available the material to the site is liable, it would be Shutterstock, not its contributor, who would be liable under this analysis. Id.

Finally, the primary case relied on by Shutterstock in support of its DMCA defense was *Wolk*, which involved a *pro se* plaintiff, and in which the court found that PhotoBucket could evoke the DMCA defense because "Photobucket offers a site that hosts and allows online sharing of photos and videos at the direction of users[.]" *Wolk*, 840 F. Supp. 2d at 744. Steinmetz pointed out the nonbinding nature of this case and its conflict with other precedent in this District and elsewhere, and further distinguished the case by pointing out that (a) while Photobucket "shared" photographs for free, Shutterstock sold paid licenses for the photographs; and (b) while Photobucket did not review and approve the photographs on its site, Shutterstock approved every single photograph on its site, meaning they were not displayed "at the direction of the user." *Wolk* also held that a site that engaged in "prescreening content, rendering extensive advice to users regarding content and editing user content" could not avail itself of the DMCA defense, and Steinmetz introduced evidence that Shutterstock prescreened content, rendered extensive advice to its contributors, and edited user content by adding watermarks. *Wolk*, 840 F. Supp. 2d

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

at 748. While the Court did not find this persuasive, it establishes the reasonableness of Steinmetz's position, and the close and novel question before the Court.

      a.      **Steinmetz's position regarding damages is supported by the Copyright Act**

      Steinmetz sought relief under the Copyright Act. If a factfinder concluded that infringement occurred, and the infringed party opted for statutory damages—an option that Steinmetz reserved in his operative complaint—then the infringer would be required to pay damages on a per work basis. See 17 U.S.C. § 504(c)(1). If the factfinder concluded the infringement was willful, the district court has discretion to increase the damage award to up to $150,000 per work. Id. § 504(c)(2). Steinmetz's statement of the relief available under Section 504 was an accurate statement as to available statutory damage provided for under 17 U.S.C. § 504(c)(2). *Arista Recs., LLC v. Launch Media, Inc.*, 344 F. App'x 648, 651 (2d Cir. 2009). When Steinmetz made settlement proposals in this case, he proposed only a small fraction of the available damages, as an opening position. Shutterstock never countered. As Steinmetz's opening settlement positions were merely a fraction (less than ten percent) of the maximum statutory award, without consideration of available attorneys fees, his position was objectively reasonable under the Copyright Act.

      b.      **Steinmetz's reliance on the DMCA and other case law was reasonable, particularly in light of Shutterstock's prior litigation**

      Steinmetz's position was also reasonable in light of the DMCA and other case law. Shutterstock argues that Steinmetz's position that Shutterstock is ineligible for the safe harbor because it is not a service provider is unreasonable, but no court has ever held that Shutterstock or a company with its business model was eligible for the safe harbor. To be sure, the cases addressing companies that directly sell copyrighted works, or licenses for copyrighted works, fall in Steinmetz's favor. He cited numerous cases supporting his position that companies that sell or

license the content on their website are ineligible for the safe harbor. See, e.g., *Agence France Presse v. Morel*, 934 F. Supp. 2d 547 (S.D.N.Y. 2013); *Greg Young Publ'g, Inc. v. Zazzle, Inc*., 2017 WL 2729584, (C.D. Cal. May 1, 2017);  *Gardner v. CafePress Inc.*, 2014 WL 794216, (S.D. Cal. Feb. 26, 2014). While the Court did not find these cases sufficient, they do establish that the claim was reasonably made.

Truly, the DMCA defense "concerned a complex set of facts," and at least a few courts had construed the law in a manner consistent with Steinmetz's position, which militates against an award of fees. *Zuma Press, Inc. v. Getty Images (US), Inc*., 845 F. App'x 54, 59 (2d Cir. 2021). This is particularly true here given that the issue of whether a licensing company or any company that engaged in direct sales could qualify for the DMCA defense had not been "construed in a precedential opinion[.]" Id. at 60, citing *Mango*, 970 F.3d at 174 (rejecting fee request on appeal "because the interpretation of Section 1202(b)(3) [was] a relatively novel issue and a question of first impression for this Court").

Shutterstock also takes issue with Steinmetz's argument that "Shutterstock failed to properly designate a DMCA agent" (Pl. Mot., p. 38), but Shutterstock's own witness testified that Shutterstock did not have a designated agent. Burroughs Decl. ¶ 8, **Ex. 12**, p. 85:13-16). In light of this testimony, Steinmetz's position was reasonable. And courts have found reliance on similar testimony to constitute objectively reasonable grounds. See *Webb v. Stallone*, No. 11-CV-7517 JSR, 2014 WL 2990295, at *1 (S.D.N.Y. June 30, 2014) (declining to award defendants' attorneys' fees after examining plaintiff's litigation conduct and defendant's prior testimony and finding that plaintiff pursued objectively reasonable grounds for relief.)

Steinmetz's assertions that Shutterstock did not adopt and implement a repeat infringer policy were also reasonable given the large number of lawsuits against Shutterstock, some of which included the same infringing contributor. For example, in *Itasca Images LLC, et al. v.*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

*Shutterstock, Inc.*, 0:21-cv-00287, United States District Court, District of Minnesota, another photographer alleged that Shutterstock committed copyright infringement by offering paid licenses for numerous original photographs allegedly supplied to Shutterstock by the contributor "Hane Street," the very same contributor alleged to have provided over one hundred photographs to Shutterstock in *McGucken v. Shutterstock, Inc., et al*, 1:22-cv-00905-GHW. Given its substantial copyright litigation history and the fact that Shutterstock continued to work with the same contributor and that multiple copyright infringement had arisen involving this same contributor, it was reasonable for Steinmetz to believe that Shutterstock did not adopt and implement a repeat infringer policy.

Finally, Shutterstock argues that Steinmetz's position regarding Shutterstock's scienter for Steinmetz's Section 1202 claims was unreasonable, but Steinmetz's position was supported by Shutterstock's own testimony and prior litigation. Shutterstock knew that it was removing copyright management information from works it was adding to its site and knew it was adding false copyright notices, in the form of "Shutterstock" watermarks, to those works.  Steinmetz's position was thus reasonable under the DMCA and other case law and based on Shutterstock's litigation history.

      **c.**     **Steinmetz was reasonable in alleging Shutterstock failed to act expeditiously under relevant authority and continued to display Steinmetz's photograph**

Steinmetz's belief that Shutterstock failed to act expeditiously in removing his photograph was objectively reasonable as it was grounded in existing case law. It took Shutterstock **40 days** to remove one use of Steinmetz's photograph from its site and much longer to remove all uses. As there is no bright line rule setting a time frame for expeditious removal following a DMCA notice, Steinmetz based his position on numerous cases holding that response times of **18 and 23 days** between notice and removal "cannot be considered

expeditious." *Feingold v. RageOn, Inc.*, 472 F. Supp. 3d 94, 102 (S.D.N.Y. 2020) (emphasis added); see also *Kinsley v. Udemy, Inc.*, 2021 WL 1222489, at \*5 (N.D. Cal. Mar. 31, 2021), citing *Seide v. Level-(1) Glob. Sols., LLC*, 2016 WL 4206076, at \*5 n.5 (N.D. Ill. Aug. 10, 2016) (collecting cases and holding that "response times to remove infringing material from entities' websites or systems ranging from **5 to 14 days** are expeditious.").

At least as early as April 1, 2021, Shutterstock had notice from Steinmetz that Shutterstock's exploitation of his work was infringing, but it failed to disable access until **forty days later**. Indeed, Shutterstock did not "suspend" access to Steinmetz's photograph until May 11, 2021, and did not "lock" or delete or disable public access to the disputed artwork on its own site until September 2021, after the complaint was filed and over five months after it first received notice. Burroughs Decl. ¶¶ 4, 5, **Exs. 1-5**. As this timing fell well outside that of the numerous authorities Steinmetz referenced, he reasonably believed it was not expeditious.

Additionally, Shutterstock admits that it failed to comply with its own DMCA guidelines. It conceded that "a software error delayed the time in which Steinmetz's takedown notice was assigned to a Shutterstock team member for review and response." (Dkt. #51, fn. 3.) But Shutterstock produced **no** evidence of any "software error" and that position does not appear well-taken. The evidence shows that Shutterstock failed to delete Steinmetz's photograph from its site for **at least five months**. Since courts have held that the safe harbor for "an innocent service provider disappears at the moment the service provider loses its innocence, i.e., at the moment it becomes aware that a third party is using its system to infringe", Steinmetz's position was thus reasonable and supported by authority. *Disney Enters., Inc.*, 2013 WL 6336286, at \*26-27 (internal quotation marks and citations omitted).

Further supporting the reasonableness of Steinmetz's position on the lack of expeditious removal, Shutterstock continued to display and distribute Steinmetz's artwork on its partner sites,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

like TinEye, HelloRF, and StockFresh, until at least July 13, 2022, over fifteen months *after* it first received notice. Burroughs Decl. ¶ 7, **Exs. 9- 11**. And Shutterstock's own witness testified that this would not occur if the photograph had been removed entirely. Burroughs Decl. ¶ 8, **Ex. 12**. This does not reflect an expeditious removal, and Steinmetz's position that Shutterstock lost any safe harbor protection it may have been able to claim because of this was reasonable.

### 3.   The instant action presented a novel question of law

Whether Shutterstock can be considered a service provider presented a novel question of law. A legal position is "not frivolous or objectively unreasonable" when it addresses "a relatively novel issue" or "a question of first impression for this Court" *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 174 (2d Cir. 2020), citing *Agence France Presse v. Morel*, 2015 WL 13021413, at *4 (S.D.N.Y. Mar. 23, 2015), aff'd, 645 F. App'x 86 (2d Cir. 2016). Indeed, no other court has previously addressed whether Shutterstock or any other for-profit licenser of stock images is entitled to the DMCA safe harbor defense. The novelty of this question supports the objective reasonableness of Steinmetz's position. See *Arista Recs., LLC v. Launch Media, Inc.*, 344 F. App'x 648, 649 (2d Cir. 2009) ("The district court noted, as did the district judge before whom trial took place, that whether LAUNCHcast was an interactive service presented a 'novel question of law.'"). Thus, Steinmetz's position was objectively reasonable in light of the fact that this is a novel question of law.

Furthermore, courts regularly do not allow fee recovery when a defendant establishes a defense pursuant to Section 512 or other new media statutes. See *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) (court "did not abuse its discretion in weighing the interests of compensation and deterrence and denying costs and attorney's fees to defendants."). As this case presented a novel issue of first impression concerning a defense pursuant to Section 512, Shutterstock's motion should not be granted.

Additionally, "because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim." *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 683 (S.D.N.Y. 2011), citing *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir.1998). Hence "a court should not award attorneys' fees where the case is novel or close because such a litigation clarifies the boundaries of copyright law." Id., citing *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F.Supp.2d 663, 666 (S.D.N.Y.2001). Because this case addressed a novel issue, and Steinmetz offered ample evidence to support a reasonable decision in his favor absent the safe harbor defense, the Court should deny Shutterstock's request for attorneys' fees.

### 4. Shutterstock's authority illustrates that Steinmetz's position was reasonable

As stated in Shutterstock's own cited authority, a prevailing party, even one prevailing on summary judgment, is not inherently entitled to an award of attorneys fees. See *Chivalry Film Prods. v. NBC Universal, Inc.*, 2007 WL 4190793, at *2 (S.D.N.Y. Nov. 27, 2007). In granting an award of attorneys fees, "the question at hand is not whether there was sufficient basis for judgment in favor of defendants, but whether the factual and legal support for plaintiff's position was so lacking as to render its claim unreasonable." *Proctor & Gamble Co. v. Colgate-Palmolive Co.*, 1999 WL 504909, at *2 (S.D.N.Y. July 15, 1999). And as previously discussed, Steinmetz based his claims on the evidence on record, the Copyright Act, and relevant case law.

In an attempt to establish that it is entitled to fees, Shutterstock cites to a long string of cases without providing any information about these cases, other than that they were allegedly

"more complex" than the present matter.[3] But Shutterstock's cited authority is easily

distinguishable and wholly fails to establish that Shutterstock is entitled to attorneys fees. For

example:

- In *TufAmerica Inc. v. Diamond*, the court awarded fees where the plaintiff had no standing to bring a claim and added that in other cases "district courts are disinclined to award fees in cases that are close calls or which present novel legal issues or theories."[4] Here, there was no dispute that Steinmetz had proper standing to bring his suit and as discussed *supra*, the case presented a novel legal issue.
- In *Mahan v. Roc. Nation*, the court awarded fees because plaintiff's claims were plainly time barred, as the plaintiff had filed suit more than 10 years after his claim had accrued.[5] Conversely, Steinmetz's claim was timely filed.
- In *Pyatt v. Raymond*, the plaintiff filed a bad faith claim against 28 different defendants, basing his claim of infringement on a work the court found "shared no common elements" with the infringing work save for elements that were deemed not copyrightable as a matter of law.[6] In contrast, Steinmetz's suit concerned an exact reproduction of his own copyrighted photograph in multiple sizes.
- In *Porto v. Gurgis*, fees were awarded where plaintiff brought suit after being repeatedly warned by counsel that his suit, over facially unprotectable elements of a novel largely derived from the bible, was meritless, while, again, there is no dispute that Steinmetz's work was protectable in its entirety.[7]
- Finally, *Chivalry Film Prods. v. NBC Universal, Inc.*, concerned a claim of infringement where the works were deemed "so extraordinarily different" that the plaintiff based his claim on the absence of similarity," whereas Steinmetz's claim was based on two works which were virtually identical or at least strikingly similar.[8]

The above authority illustrates that Steinmetz's claims were objectively reasonable and

thus cannot justify an award of fees. Here, Steinmetz, a professional photographer, filed a timely

lawsuit concerning Shutterstock's multiple unauthorized displays of a photograph for which he

---

[3] Shutterstock fails to provide any explanation on how the alleged complexity of the matter impacts an entitlement to attorneys fees.

[4] *TufAmerica Inc. v. Diamond*, 2016 WL 1029553, at *2 (S.D.N.Y. Mar. 9, 2016), on reconsideration in part, 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018).

[5] *Mahan v. Roc Nation*, LLC, 2015 WL 4388885, at *2 (S.D.N.Y. July 17, 2015), aff'd, 634 F. App'x 329 (2d Cir. 2016).

[6] *Pyatt v. Raymond*, 2012 WL 1668248, at *3 (S.D.N.Y. May 10, 2012).

[7] *Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009).

[8] *Chivalry Film Prods. v. NBC Universal, Inc.*, 2007 WL 4190793, at *3 (S.D.N.Y. Nov. 27, 2007).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

owned a valid and properly registered copyright. And courts have declined to award fees in such cases. See *Zuma Press, Inc. v. Getty Images (US), Inc.*, 845 F. App'x 54, 59 (2d Cir. 2021) (holding that Plaintiffs' claims were objectively reasonable, non-frivolous, and properly motivated.) That Shutterstock prevailed on a novel position concerning a relatively new affirmative defense does not change the fact that Steinmetz's suit was the kind of copyright infringement claim contemplated and encouraged by the Copyright Act, and Shutterstock's cited authority supports this position.

Shutterstock also relies on *Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351 (S.D.N.Y. 2006), aff'd, 249 F. App'x 845 (2d Cir. 2007) to establish that it is entitled to fees, but that case is inapposite. In *Baker*, the plaintiff brought suit against defendant because defendant sold picture frames containing a paper insert of the plaintiff's photograph. The court found that the plaintiff acted in bad faith because plaintiff's complaint contained false allegations, and the record suggested that plaintiff (and his counsel) filed and maintained the suit in an attempt to extract a significant payment from perceived "deep pocketed" defendants (and in an attempt to garner publicity for plaintiff's agent and for his lawyer). Id. at 358. Conversely, no such evidence is on the record here. Rather, the record reflects that Steinmetz was motivated to protect his copyrights, that he pursued positions supported by relevant authority, and that he made reasonable demands in line with the Copyright Act and additional case law. Given that Shutterstock's authority tends to establish that Steinmetz's position was reasonable, Shutterstock's motion must be denied.

**D.    Awarding Shutterstock its fees would deter copyright owners from prosecuting lawful claims of infringement, frustrating the purpose of the Copyright Act, particularly in light of the parties' relative financial positions.**

There is no need in these particular circumstances to advance considerations of compensation or deterrence, and awarding Shutterstock its fees would deter copyright owners from prosecuting lawful claims of infringement, frustrating the purpose of the Copyright Act.

Shutterstock makes clear that it wants to deter Steinmetz and other artists from enforcing their copyrights. Shutterstock has offered this Court no evidence to support its assertion that Steinmetz attempted to extract a "nuisance settlement," or its contention that granting its potion will deter frivolous lawsuits.  It is, however, correct that granting this motion may deter Steinmetz and other creators from protecting their copyrights or pursuing meritorious claims. Indeed, given that Shutterstock failed to expeditiously remove the photograph at issue, stock photography companies will become emboldened to copy and exploit the photography of others to sell licenses, which will result in additional infringement and a disinclination of companies to invest in new artwork that will most likely be misappropriated by a competitor. In the end, more infringement will go unaddressed and less original artwork will be created—the exact opposite of what the Copyright Act was promulgated to accomplish.

Shutterstock was allowed to escape liability for its infringement by invoking the DMCA, but it does not deserve to be awarded its attorneys' fees, and Steinmetz does not deserve to be penalized with those fees. This would embolden stock photography licensors like Shutterstock to onboard as much photography as possible irrespective of provenance,  sell licenses for those photographs,  and simply claim the DMCA whenever it was caught selling licenses for photographs without the photographers' consent. This does not serve the Copyright Act.

 The purpose of the Copyright Act is to promote the progress of the arts. Indeed, "the monopoly privileges that Congress has authorized, while 'intended to motivate the creative activity of authors and inventors by the provision of a special reward,' are limited in nature and must ultimately serve the public good." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526, 114 S. Ct.

1023, 1029(1994), quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429, 104 S.Ct. 774 (1984)).  The public good is not served by awarding Shutterstock its attorneys fees, especially because Steinmetz litigated his claims in good faith to protect his copyrights and pursued objectively reasonable grounds for relief.

This is particularly true here given that Steinmetz, as an independent artist who made only between $500 to $2,000 in connection with the photograph at issue (Dkt. #57-5; Burroughs Decl. ¶13, **Ex. 17**), cannot compete financially with Shutterstock, a publicly traded company with nearly $800 million in annual revenues.[9] A court should consider the relative finances of the parties when deciding a fees motion. See *Video–Cinema Films, Inc. v. Cable News Network, Inc.*, 2003 WL 1701904, at *5 (S.D.N.Y. Mar. 31, 2003) (considering the parties' relative financial strength as one among several factors in determining whether to award fees). At the very least, courts should consider financial positions when deciding on the amount of fees to award, as the "relative financial strength of the parties is a valid consideration" in determining what amount is reasonable under 17 U.S.C. § 505." *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir.1986), 788 F.2d at 156, citing *Am. Metro. Enters. of N.Y., Inc. v. Warner Bros. Records, Inc.*, 389 F.2d 903 (2d Cir. 1968); *Italian Book Corp. v. Am. Broad. Cos., Inc.*, 458 F. Supp. 65 (S.D.N.Y. 1978)(remaining citations omitted). Here, no fees should be awarded as it would chill Steinmetz's ability to pursue any possible appeal in this matter and enforce his rights in other actions. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003)("The Court may also consider "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff."), citing *Fantasy, Inc.*, 94 F.3d at 559-60.  And

---

[9] See "Shutterstock Reports Fourth Quarter and Full Year 2021 Financial Results" https://investor.shutterstock.com/news-releases/news-release-details/shutterstock-reports-fourth-quarter-and-full-year-2021-financial (last visited October 20, 2022).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

awarding fees will further chill other artists from taking steps to protect their rights against licensing companies and others who are exploiting their work online. Based on the foregoing, Steinmetz submits that considerations of compensation and deterrence require that Shutterstock's motion be denied.

### IV.    Sanctions are not warranted under Section 1927 or inherent powers

Shutterstock also argues that that the Court should award fees as a sanction. A Court may impose costs, expenses, and reasonable attorneys' fees against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. To impose sanctions under this statute, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (internal quotation marks and citation omitted). The Court may also impose sanctions under its inherent powers against a party or attorney "who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

Steinmetz and counsel are not subject to sanctions under Section 1927. They took reasonable positions throughout the litigation and at no time were they sanctioned or held to be in violation of the court rules. Instead, Steinmetz and his counsel went to great lengths to produce relevant evidence and make Steinmetz available for deposition while he was in Indonesia and conduct only the discovery necessary to investigate his claims. While the parties may have had disagreements, they were of the garden variety and certainly did not result in any sanctions from the court at any time during the litigation. The case was one that turned on a technical defense that had not previously been extended to licensing companies and Steinmetz reasonably pursued his claims.

Shutterstock has not put forward *any* evidence that Steinmetz acted in bad faith. See *Chambers v. NASCO*, 501 U.S. 32, 45–46 (1991). Indeed, Steinmetz's conduct in this litigation was not egregious or beyond the pale; to the contrary, Steinmetz consistently made reasonable arguments in support of his position. In an attempt to establish otherwise, Shutterstock points to issues with deposition scheduling, but those issues arose due to Shutterstock's own failure to timely issue a notice of deposition. The Court entered its scheduling order on January 28, 2022, setting the deadline to complete deposition as July 27, 2022. (Dkt. #19.) Steinmetz served an initial notice of deposition on February 11, 2022. Burroughs Decl. ¶ 12, **Ex. 16**. Yet Shutterstock did not issue a notice of deposition until June 28, 2022 at 6:26 PM for July 12, unilaterally calling for an in-person deposition of Steinmetz on a date on which Steinmetz had not been consulted, despite the fact that discovery had been open since January. (Dkt. #33-1). By the time Shutterstock decided it would like to depose Steinmetz, with less than one month of fact discovery remaining, Steinmetz already had a multi-country international trip planned in connection with his next book. Steinmetz left the United States on July 2 to begin travel in the rural areas of Indonesia. (Dkt. #33.) Despite the difficulties presented by Shutterstock's delay, Steinmetz made every effort to make himself available for remote deposition, and indeed was remotely deposed by Shutterstock. Shutterstock's attempt to mischaracterize these circumstances as an elaborate attempt by Steinmetz to draw out this case are unfounded.

Additionally, Shutterstock's issue with Steinmetz's reliance on *Agence* cannot constitute sanctionable behavior. And as discussed *supra*, *Agence* was not the only case Steinmetz relied on in support of his argument that Shutterstock was not entitled to protection under the DMCA's safe harbor provision. Dkt. #61, pg. 28-35, citing *UMG Recordings, Inc. v. Shelter Capital Partners*, LLC, 667 F.3d 1022, 1026, 1035 (9th Cir.2011); *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, 2017 WL 2729584 (C.D. Cal. May 1, 2017); *Gardner v. CafePress Inc.*, 2014 WL 794216

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

(S.D. Cal. Feb. 26, 2014*); Capitol Recs., LLC v. Escape Media Grp., Inc.*, 2015 WL 1402049

(S.D.N.Y. Mar. 25, 2015*); Mavrix Photographs, LLC v. Livejournal, Inc*., 873 F.3d 1045 (9th

Cir. 2017).

And as noted previously, Steinmetz attempted to resolve this matter with Shutterstock,

but to no avail. Burroughs Decl. ¶ 6. Indeed, rather than attempting to reach a resolution,

Shutterstock made a choice to keep litigating and driving up its own costs and fees.

The Court should thus deny Shutterstock's motion for sanctions. See *Gollomp v. Spitzer*,

568 F.3d 355, 368 (2d Cir. 2009) (court may award § 1927 sanctions only "when the attorney's

actions are so completely without merit as to require the conclusion that they must have been

undertaken for some improper purpose" (cleaned up))*; see also Yang v. Mic Network, Inc.*, at *5.

## V.    Doniger / Burroughs should not be found jointly and severally liable

There is no evidence that Doniger / Burroughs engaged in any sanctionable conduct in

this case. To the contrary, as noted above, Doniger / Burroughs took positions that were

supported by the record, the Copyright Act, and other case law and attempted to reach an

amicable resolution with Shutterstock prior to filing suit.

Under Section 1927, "the Court must look at Plaintiff's counsel's conduct subjectively"

and sanctions are inappropriate against counsel even if "plaintiff's counsel exercised bad

judgment and unreasonably stuck to her flawed legal theories in order to keep her client's case

alive, so long as counsel did not act in bad faith to vexatiously multiply the proceedings[.]"

*Pickett v. Migos Touring, Inc.*, 2020 WL 1853202, at *10 (S.D.N.Y. Feb. 25, 2020), report and

recommendation adopted in part, rejected in part, 2020 WL 2904864 (S.D.N.Y. June 3, 2020).

Such is the case here - Steinmetz's counsel challenged a defense arising from an unsettled area of

the law and, while unsuccessful, did not act in bad faith and certainly took no steps to

"vexatiously" multiply the proceedings. To be sure, the proceedings here were relatively streamlined and did not include any sanctions orders.

Further, to impose sanctions under Section 1927, a court must make factual findings with a "high degree of specificity[.]" *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986) (internal quotation marks omitted). And a court must find that "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks omitted); see *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("Bad faith is the touchstone of an award under [Section 1927]."). And bad faith can only be inferred when counsel's "actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (internal quotation marks omitted). And sanctions shuld not be imposed in a way that will deter lawyers from making legitimate submissions on behalf of clients out of apprehension that their conduct will erroneously be deemed improper. *Gollomp v. Spitzer*, 568 F.3d 355, 373 (2d Cir. 2009)(citation omitted). As noted previously, Steinmetz's position was reasonable and brought in good faith to protect his copyrights. His counsel made legitimate submissions, supported by authority, and such conducted cannot be considered improper. Because Steinmetz's litigation conduct was reasonable and properly motivated, sanctions are inappropriate in this instance.

## VI.     Shutterstock's fees are unreasonable

Shutterstock, as "the fee applicant[,] bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994). Shutterstock was required to provide affidavits from all attorneys working on the case to certify that their billing

was reconstructed from contemporaneous records, and to provide those records. *Johnson v. Kay*, 742 F. Supp. 822, 837 (S.D.N.Y. 1990). Motions that do not contain such material "should normally be disallowed." *Cablevision Sys. N.Y.C. Corp. v. Diaz*, 01 Civ. 4340 (GEL)(FM), 2002 WL 31045855 at *5 (S.D.N.Y. July 10, 2002) (citations omitted). Here, Shutterstock submits a single declaration from one attorney attesting to the hours spent and billing records created by five other attorneys and two paralegals. And there is no evidence that the attorney providing the affidavit had first-hand knowledge of these other attorneys' records. This is insufficient to discharge the burden.

Courts decide a presumptively reasonable fee by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate[.]" *Blum v. Stenson*, 465 U.S. 886, 888 (1984)(citation omitted); see also *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008). As discussed above, Shutterstock is not entitled to an award of attorneys fees or sanctions. Even if the Court found that Shutterstock was somehow entitled to its requested fees, a court may adjust the presumptively reasonable fee "as necessary in the particular case." *Blum*, 465 U.S. at 888. Shutterstock's requested number of hours and the requested rates are unreasonable and require adjustment, as follows.

**A.     The number of hours sought are unproperly supported and unreasonable**

Shutterstock asserts that it had at least seven attorneys and paralegals spend at least 612.5 hours on this matter, which is unreasonable given that the case involved a single photographer making copyright claims regarding one photograph. This court should consider compensating only the "reasonable hours" incurred in the case. *In re Arb. Between Okyere & Houslanger & Assocs., PLLC*, 2015 WL 4366865, at *9 (S.D.N.Y. May 28, 2015). "A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed, and

contemporaneous time records." *Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 516 (S.D.N.Y. 2015). "The critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *De La Paz v. Rubin & Rothman, LLC*, 2013 WL 6184425, at *13 (S.D.N.Y. Nov. 25, 2013) (internal quotation marks and citations omitted).

An award of attorneys' fees may only provide reimbursement for "hours reasonably expended on the litigation[,]" and not for hours "that are excessive, redundant, or otherwise unnecessary[.]" See *Hensley*, 461 U.S. at 433–34. Should the Court find that certain hours are excessive, the Court may deduct those hours, see, e.g., *Tatintsian*, 2020 WL 2836718, at *6, or, alternatively, "'the [C]ourt has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)); see *Sequa*, 156 F.3d at 148 ("[T]he determination of the reasonable value of the attorney's services is a matter within the sound discretion of the trial court.") (citation omitted).

Here, in a case involving one photographer and one photograph, Shutterstock claims to have needed five associates and three paralegals to staff the case and expended almost 612.5 hours. Shutterstock makes this claim despite the fact that limited discovery was conducted and each party took only one deposition and the only motions filed were at the summary judgment stage. In light of the activity in this case involving a single photograph taken by a single photographer, the number of hours requested is unreasonable.

### B.   The hourly rates are not properly supported

Shutterstock's requested hourly rates are also unreasonable. In setting the reasonable hourly rate, "a court must determine what a reasonable paying client would be willing to pay for

the legal services, in other words, the appropriate market rate for counsel over the course of the number of hours appropriately worked." *De La Paz v. Rubin & Rothman, LLC*, No. 11 Civ. 9625 (ER), 2013 WL 6184425, at *10 (S.D.N.Y. Nov. 25, 2013) (quotations omitted).  Courts should also consider that a reasonable client wishes to "spend the minimum necessary to litigate the case effectively." *Shepherd v. L. Offs. of Cohen & Slamowitz, LLP*, No. 08 Civ. 6199 (CM) (LMS), 2010 WL 4922314, at *2 (S.D.N.Y. Nov. 29, 2010), quoting *Arbor Hill*, 522 F.3d at 190. Determining the reasonable hourly rate requires "'a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicants counsel[,]'" which may "'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" *De La Paz*, 2013 WL 6184425, at *1, quoting *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005). In determining whether counsel's hourly rate is reasonable, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 367 (S.D.N.Y. 2018), quoting *Blum*, 465 U.S. at 895 n.11.

Here, Shutterstock failed to "provide information on all of the attorneys and staff whose time is included in the application." *Top Jet*, 2022 WL 1184245, at *3. Ms. Lackman simply points to her firm's website containing the associates' biographies to provide information about the timekeepers' experience, which is insufficient. Additionally, Ms. Lackman lacks firsthand knowledge of the two paralegals' and five associates' time, and the purported associates' fees appear duplicative. Ms. Lackman's declaration is the only proof of the hours spent by defense counsel on this case is further improper because Ms. Lackman lacks firsthand knowledge of the time other attorneys and paralegals spent on this case.

Specifically, Ms. Lackman represents that associates, including Rebecca Benyamin, who

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

is working in Los Angeles and did not certify her timekeeping, incurred costs related to this case. And Ms. Lackman's declaration includes hours sought for an associate, Leo Lichtman, who left the firm and did not certify his timekeeping. Ms. Lackman lacks firsthand knowledge to provide competent testimony as to the hours spent by others on this case. Her conclusory statements are insufficient and affidavits must be submitted for each alleged timekeeper to establish their experience, rates, and activities alleged. As such, even if the Court were to award Shutterstock its attorneys' fees, the purported fees charged by attorneys other than Ms. Lackman should be deducted from any such award as unfounded. Because the other timekeepers failed to submit affidavits concerning their billing in this case, , $118,913[10] should be deducted from the amount claimed. Thus, the Court should only consider Ms. Lackman's claims for $53,324, instead of the aggregate claim of $197,209.00.[11]

### C.   The Court may reduce the amount of fees requested

The court in its discretion may reduce the award to reflect the relative financial strength of the parties. See *Barclays Cap. Inc. v. Theflyonthewall.com*, 2010 WL 2640095, at *6 (S.D.N.Y. June 30, 2010) (holding that "even after the 'presumptively reasonable fee' is established, the final fee award may be adjusted downward based on the relative financial strength of the parties"); *Shangold v. Walt Disney Co.*, No. 03 Civ. 9522(WHP), 2006 WL 2884925, at *1 (S.D.N.Y. Oct.11, 2006) (reducing an award of $216,473.50 in fees plus $71,147

---

[10] This includes the $2,310 fees as requested for Ms. Moses; $1,965 fees as requested for Mr. Kniss; $14,240.50 fees as requested for Mr. Lichtman; $27,725 fees as requested for Ms. Nguyen; $30,132.50 fees as requested for Ms. Frankel; $10,505 fees as requested for Ms. Benyamin; and $32,035 fees as requested for Ms. Lewis.

[11] Shutterstock claims that it is seeking $197,209, but based on Shutterstock's claims that it is excluding certain individuals and certain matters from its billing, it seems that this amount should be $172,237 or less.  Notably, Shutterstock has failed to provide a proper analysis of the amount of fees it allegedly attributes to each attorney or paralegal. This lack of clarify further establishes that a reduction is proper.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

in costs to a total of $10,000 because "[p]laintiffs have submitted financial statements that demonstrate that they cannot pay the substantial, albeit reasonable fees and costs submitted by Defendants"); see also *Williams v. Crichton*, 1995 WL 449068, at *1 (S.D.N.Y. July 26, 1995) (holding that "the relative financial strength of the parties is so disproportionate," that "the purposes of the Copyright Act will be served by a relatively small award"). Here, Steinmetz is a single photographer, and Shutterstock in its own motion refers to itself as a "deep-pocketed" online service provider . (Motion, p. 10.) Given that Shutterstock is a multi-million dollar corporation with annual revenues in the hundreds of millions, Steinmetz should not be forced to pay Shutterstock's fees, especially since the evidence reflects that Steinmetz's motivations and litigation conduct were proper. All of the above failings justify the denial the Shutterstock's motion for attorneys' fees, or at the very least, a significant reduction of the amount requested.

### VII.    Conclusion

While Shutterstock established that its infringement should be excused under the DMCA's safe harbor, the analysis of that technical defense required a complex review of an unsettled area of law. Steinmetz's positions have been objectively reasonable throughout the litigation and he was successful in requiring Shutterstock to remove his photograph from its and its affiliates' websites. Awarding fees in this context would be unjust and would have a chilling effect on artists' enforcement of their rights. An award of fees, for example, would likely prejudice Steinmetz's ability to pursue his appeal in this case of the novel and complex issue of how to apply the DMCA to licensing companies. And it would prejudice his ability to pursue other infringers, particularly those that are well-funded, even when liability appears clear. Other photographers, too, will be deterred from pursuing meritorious claims by the specter of a six-figure penalty if an unsettled question of law is resolved against the artist. To the extent the Court is inclined to award fees,  those fees should be drastically reduced because Shutterstock

has not discharged its burden of proving the incurrence of those fees and the parties' respective

financial resources militate in favor of a small fee award, if any.

It is respectfully submitted that the motion be denied.

Respectfully submitted,

Dated: October 20, 2022                     By:     */s/ Scott Alan Burroughs*
New York, New York                                  Scott Alan Burroughs, Esq.
                                                    Laura M. Zaharia, Esq.
                                                    DONIGER / BURROUGHS
                                                    247 Water Street, First Floor
                                                    New York, New York 10038
                                                    scott@donigerlawfirm.com
                                                    lzaharia@donigerlawfirm.com
                                                    (310) 590-1820
                                                    Attorneys for Plaintiff
                                                    GEORGE STEINMETZ